Brian S. Kabateck (152054)
Lina Melidonian (245283)
Drew R. Ferrandini (285102)
**KABATECK BROWN KELLNER**
Engine Company No. 28 Building
644 South Figueroa Street
Los Angeles, CA 90017
Telephone: 213/217-5000
Facsimile: 213/217-5010
Email: bsk@kbklawyers.com
Email: lm@kbklawyers.com
Email: df@kbklawyers.com

*Counsel for Plaintiffs and the Putative Class*

[Additional Counsel On Signature Page]

### IN THE UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION – SANTA ANA

| | |
|---|---|
| JENNIFER GRAMMER, JODY PLA, DOUGLAS POWELL, SHANAH ZISHKA, JANICE TOLER, BOBBY YORK, MELANIE MUNNS, MATTHEW SIFFERMANN, ALBERT HEBER, JOSEPH and KIM LESKO, h/w, RAYMOND BENNETT and SHEILA FAULKNER, h/w, PENNY PORTER, JAMES DONOGHUE, LESLIE COCHRANE, COLE and SHANNON MICHAELIS, h/w, STEPHEN BOWLING, HEIDI BROWDER, and HEATHER and DAVID JOHNS, h/w, individually and on behalf of all others similarly situated, | Case No. 8:16-cv-01525-AG-JCG  **THIRD AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF** |
| Plaintiffs, | |
| v. | |
| TOYOTA MOTOR CORPORATION, TOYOTA MOTOR SALES, U.S.A., INC., and DOES 1-10, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION AND NATURE OF THE CASE ....................................1

II.    JURISDICTION AND VENUE............................................................................3

III.    PARTIES ...............................................................................................................4

    A.    California Plaintiffs ..................................................................................4

    B.    Colorado Plaintiff ....................................................................................8

    C.    Florida Plaintiff .....................................................................................11

    D.    Georgia Plaintiff ....................................................................................13

    E.    Idaho Plaintiff .......................................................................................15

    F.    Illinois Plaintiff .....................................................................................18

    G.    Indiana Plaintiffs ...................................................................................19

    H.    Maryland Plaintiffs ...............................................................................24

    I.    Nebraska Plaintiffs................................................................................26

    J.    New Jersey Plaintiffs............................................................................27

    K.    Oklahoma Plaintiff ................................................................................28

    L.    Oregon Plaintiffs...................................................................................29

    M.    Texas Plaintiffs .....................................................................................32

    N.    Washington Plaintiffs............................................................................36

    O.    Defendants.............................................................................................39

IV.    FACTUAL ALLEGATIONS..............................................................................41

    A.    The Defective Soy-/Bio-Based Materials within Class Vehicles........41

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

B.      Toyota's Knowledge of the Defect ....................................... 45

C.      Toyota's New Vehicle Limited Warranty ............................. 48

D.      Similar Experiences and Complaints by Consumers ........................... 50

V.      CLASS ACTION ALLEGATIONS ................................................ 58

VI.     CAUSES OF ACTION ................................................................... 65

A.      Nationwide ........................................................................... 65

COUNT I - VIOLATION OF THE MAGNUSON-MOSS
WARRANTY ACT 15 U.S.C. §§ 2301 et seq. ("MMWA")........................ 65

COUNT II - BREACH OF EXPRESS WARRANTY ................................ 68

COUNT III - BREACH OF THE IMPLIED
WARRANTY OF MERCHANTABILITY .................................. 70

COUNT IV - DECLARATORY RELIEF
(PLEADING IN THE ALTERNATIVE) ....................................... 71

B.      California............................................................................. 73

COUNT V - VIOLATIONS OF THE CALIFORNIA
UNFAIR COMPETITION LAW CAL. BUS. & PROF.
CODE §§ 17200, *et seq.* ("UCL").................................................... 73

COUNT VI - VIOLATION OF THE CALIFORNIA
CONSUMERS LEGAL REMEDIES ACT
(CAL. CIV. CODE §§ 1750, et seq.) ("CLRA") ........................... 76

COUNT VII - VIOLATION OF THE SONG-BEVERLY
CONSUMER WARRANTY ACT FOR BREACH OF EXPRESS
WARRANTIES CAL. CIV. CODE §§ 1791.2 & 1793.2 ("SBCWA") ........ 80

COUNT VIII - VIOLATION OF THE SONG-BEVERLY
CONSUMER WARRANTY ACT FOR BREACH OF THE
IMPLIED WARRANTY OF MERCHANTABILITY CAL.
CIV. CODE §§ 1791.1 & 1792 ("SBCWA") ................................. 82

COUNT IX - BREACH OF EXPRESS WARRANTY
CAL. COM. CODE § 2313 ...................................................................... 84

COUNT X - BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY CAL. COM. CODE § 2314 .................................. 88

COUNT XI - FRAUD/FRAUDULENT CONCEALMENT ........................ 88

C.     Colorado ............................................................................................ 90

COUNT XII - VIOLATIONS OF THE COLORADO
CONSUMER PROTECTION ACT COLO. REV.
STAT. §§ 6-1-101, et seq. ("CCPA") ........................................................ 90

COUNT XIII - BREACH OF EXPRESS WARRANTY
COLO. REV. STAT. §§ 4-2-313 & 4-2.5-210 .............................................. 93

COUNT XIV - BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY COLO. REV. STAT. §§ 4-2-314 & 4-2.5-212 ....... 97

COUNT XV - FRAUD/FRAUDULENT CONCEALMENT ...................... 99

COUNT XVI - UNJUST ENRICHMENT ................................................. 101

D.     Florida ............................................................................................... 101

COUNT XVII - VIOLATION OF THE FLORIDA DECEPTIVE
& UNFAIR TRADE PRACTICES ACT ("FDUTPA") ............................. 101

COUNT XVIII - BREACH OF EXPRESS WARRANTY
FLA. STAT. § 672.313 ............................................................................... 103

COUNT XIX - BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY FLA. STAT. § 672.314 ......................................... 105

COUNT XX - FRAUD/FRAUDULENT CONCEALMENT ..................... 106

COUNT XXI - UNJUST ENRICHMENT ................................................. 108

E.     Georgia ............................................................................................... 109

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

COUNT XXII - VIOLATION OF THE GEORGIA FAIR
BUSINESS PRACTICES ACT GA. CODE ANN.
§§ 10-1-390, *et seq.* ("GFBPA") ................................................................ 109

COUNT XXIII - VIOLATIONS OF THE GEORGIA UNIFORM
DECEPTIVE TRADE PRACTICES ACT GA. CODE ANN.
§§ 10-1-370, et seq. ("Georgia DTPA") ...................................................... 112

COUNT XXIV - BREACH OF EXPRESS WARRANTY
GA. CODE ANN. § 11-2-313 .......................................................................... 115

COUNT XXV - BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY GA. CODE ANN. § 11-2-314 .............................. 118

COUNT XXVI - FRAUD/FRAUDULENT CONCEALMENT ................. 119

COUNT XXVII - UNJUST ENRICHMENT ................................................ 121

COUNT XXVIII - BAD FAITH LITIGATION EXPENSES
GA. CODE ANN. § 13-6-11 ............................................................................ 122

F.      Idaho ................................................................................................ 122

COUNT XXIX - VIOLATION OF THE IDAHO CONSUMER
PROTECTION ACT IDAHO CODE §§ 48-601, et seq. ("IDCPA") ......... 122

COUNT XXX - BREACH OF EXPRESSS WARRANTY
IDAHO CODE § 28-2-313 ............................................................................. 126

COUNT XXXI - BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY IDAHO CODE § 28-2-314 ................................... 130

COUNT XXXII - FRAUD/FRAUDULENT CONCEALMENT ............... 131

COUNT XXXIII - UNJUST ENRICHMENT ............................................. 133

G.      Illinois ............................................................................................. 134

COUNT XXXIV - VIOLATION OF THE ILLINOIS CONSUMER
FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

815 ILL. COMP. STAT. §§ 505/1, *et seq.* ("Illinois CFA"). ...................... 134

COUNT XXXV - VIOLATIONS OF THE ILLINOIS UNIFORM
DECEPTIVE TRADE PRACTICES ACT
815 ILL. COMP. STAT. §§ 510/1, *et seq.* ("Illinois DTPA"). .................... 137

COUNT XXXVI - BREACH OF EXPRESS WARRANTY
810 ILL. COMP. STAT. § 5/2-313 ............................................................. 139

COUNT XXXVII - BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY 810 ILL. COMP. STAT. § 5/2-314 .................... 142

COUNT XXXVIII - FRAUD/FRAUDULENT CONCEALMENT .......... 144

COUNT XXXIX - UNJUST ENRICHMENT ........................................... 146

H.      Indiana ........................................................................................ 146

COUNT XL - VIOLATIONS OF THE INDIANA
DECEPTIVE CONSUMER SALES ACT IND. CODE
§§ 24-5-0.5-1, *et seq.* ("IDCSA") ................................................ 146

COUNT XLI - BREACH OF EXPRESS WARRANTY
IND. CODE § 26-1-2-313 ...................................................................... 149

COUNT XLII - BREACH OF THE IMPLIED WARRANTY
OF MERCHANTABILITY IND. CODE § 26-1-2-314 ............................. 152

COUNT XLIII - FRAUD/FRAUDULENT CONCEALMENT ................. 153

COUNT XLIV - UNJUST ENRICHMENT ............................................. 155

I.      Maryland ...................................................................................... 156

COUNT XLV - VIOLATIONS OF THE MARYLAND
CONSUMER PROTECTION ACT MD. CODE COM. LAW
§§ 13-101, *et seq.* ("MCPA") ......................................................... 156

COUNT XLVI - BREACH OF EXPRESS WARRANTY
MD. CODE COM. LAW § 2-313 ............................................................ 158

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

COUNT XLVII - BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY MD. CODE COM. LAW § 2-314 ........................ 161

COUNT XLVIII - FRAUD/FRAUDULENT CONCEALMENT.............. 163

COUNT XLIX - UNJUST ENRICHMENT ................................................ 164

J.      Nebraska.......................................................................................165

COUNT L- VIOLATION OF THE NEBRASKA CONSUMER
PROTECTION ACT (NEB. REV. STAT. §§ 59-1601, *et
seq.*).................................................................................................165

COUNT LI- BREACH OF EXPRESS WARRANTY
NEB. REV. STAT. §§ 2-313- and 2A-210...................................168

COUNT LII- BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY
NEB. REV. STAT. §§ 2-314 and 2A-212.......................................171

COUNT LIII- FRAUD/FRAUDULENT CONCEALMENT.....................172

COUNT LIV- UNJUST ENRICHMENT.....................................................174

K.      New Jersey..................................................................................175

COUNT LV- VIOLATIONS OF THE NEW JERSEY CONSUMER
FRAUD ACT. N.J.S.A.. §§ 56:8-1, *et seq*...................................175

COUNT LVI- BREACH OF EXPRESS WARRANTY
N.J.S.A. §§ 12A:2-313 and 2A-210.............................................177

COUNT LVII- BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY N.J.S.A. §§ 12A:2-314 and 2A-212.....................180

COUNT LVIII- FRAUD/FRAUDULENT CONCEALMENT...................181

COUNT LIX- UNJUST ENRICHMENT.....................................................182

L.      Oklahoma ...................................................................................183

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

COUNT LX- VIOLATION OF THE OKLAHOMA
CONSUMER PROTECTION ACT OKLA. STAT. tit. 15,
§§ 751, et seq. ("OCPA") ............................................................. 183

COUNT LXI - BREACH OF EXPRESS WARRANTY
OKLA. STAT. tit. 12A, § 2-313 ..................................................... 185

COUNT LXII - BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY OKLA. STAT. tit. 12A, § 2-314 .......................... 188

COUNT LXIII - FRAUD/FRAUDULENT CONCEALMENT ................. 190

COUNT LXIV - UNJUST ENRICHMENT ................................................ 191

M.      Oregon ............................................................................... 192

COUNT LXV - VIOLATIONS OF THE OREGON
UNLAWFUL TRADE PRACTICES ACT OR. REV.
STAT. §§ 646.607, et seq. ("OUTPA") .......................................... 192

COUNT LXVI - BREACH OF EXPRESS WARRANTY
OR. REV. STAT. § 72.3130 ........................................................... 195

COUNT LXVII - BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY OR. REV. STAT. § 72.3140 ................................. 198

COUNT LXVIII - FRAUD/FRAUDULENT CONCEALMENT .............. 199

COUNT LXIX - UNJUST ENRICHMENT ............................................... 201

N.      Texas ................................................................................... 202

COUNT LXX - VIOLATIONS OF THE TEXAS DECEPTIVE
TRADE PRACTICES ACT TEX. BUS. & COM. CODE
§§ 17.41, et seq. ("TDTPA") ........................................................ 202

COUNT LXXI - BREACH OF EXPRESS WARRANTY
TEX. BUS. & COM. CODE § 2.313 .............................................. 205

COUNT LXXII - BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY TEX. BUS. & COM. CODE § 2.314 .................. 208

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

1

2    COUNT LXXIII - FRAUD/FRAUDULENT CONCEALMENT ............... 210

3    COUNT LXXIV - UNJUST ENRICHMENT ............................................ 212

4    O.    Washington ....................................................................... 212

5

6    COUNT LXXV - VIOLATIONS OF THE WASHINGTON
     CONSUMER PROTECTION ACT WASH. REV.
7    CODE §§ 19.86.010 *et seq.* ("WCPA") ........................................... 212

8    COUNT LXXVI - BREACH OF EXPRESS WARRANTY
9    WASH. REV. CODE § 62A.2-313 ............................................... 214

10   COUNT LXXVII - BREACH OF THE IMPLIED WARRANTY OF
11   MERCHANTABILITY WASH. REV. CODE § 62A.2-314 ..................... 218

12   COUNT LXXVIII - FRAUD/FRAUDULENT CONCEALMENT ........... 219
13

14   COUNT LXXIX - UNJUST ENRICHMENT ............................................ 220

15   PRAYER FOR RELIEF ........................................................................ 221

16   DEMAND FOR JURY TRIAL ............................................................. 222
17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

Plaintiffs Jennifer Grammer, Jody Pla, Douglas Powell, Shanah Zishka, Janice Toler, Bobby York, Melanie Munns, Matthew Siffermann, Albert Heber, Joseph and Kim Lesko, h/w, Raymond Bennett and Sheila Faulkner, h/w, Penny Porter, James Donoghue, Leslie Cochrane, Cole and Shannon Michaelis, h/w, Stephen Bowling, Heidi Browder, and Heather and David Johns, h/w (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, bring this class action against Defendants Toyota Motor Corporation, Toyota Motor Sales, U.S.A., Inc. (collectively "Toyota"), and DOES 1 to 10, and in support thereof aver the following based upon personal information and the investigation of their counsel, and upon information and belief.

## I.    **INTRODUCTION AND NATURE OF THE CASE**

1.    This is a class action lawsuit brought by Plaintiffs on behalf of themselves and a class of current and former owners and lessees of certain Toyota vehicles containing soy- and/or bio-based wiring insulation, wiring coatings, and/or other parts and components (the "Class Vehicles"[1]). Plaintiffs seek redress on behalf of themselves and the class(es) defined herein for damage resulting from the inclusion of bio- or soy-based materials Class Vehicle wiring or wiring systems.

2.    Upon information and belief, Toyota incorporates soy- or bio-based ingredients in the wiring in Class Vehicle electrical wiring systems (as well as other parts of the Class Vehicles) that bait rodents – including rats, squirrels, and other animals – to the vehicles and that entices these pests to chew through, eat, or

---

[1] As used herein, the term "Class Vehicles" refers to at least the following Toyota vehicles, upon information and belief: 4Runner (2011-2016); Avalon (2013-2015) Camry Hybrid (2012-2013); Camry (2009-2016); Corolla (2014-2016); FJ Cruiser (2014); Highlander (2009-2016); Matrix (2009); Prius (2010-2015); Prius C (2012-2015); Prius V (2012-2015); Rav4 (2008-2016); Scion TC (2014-2016); Sequoia (2015); Sienna (2011-2016); Tacoma (2008-2015); Tundra (2007-2017); and Venza Ltd. (2010-2013). Plaintiffs reserve the right to amend or add to the vehicle models and model years included in the Class Vehicles after conducting discovery.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

otherwise damage and compromise the wiring (the "Defect"). Indeed, consumers (including Plaintiffs) have been informed by various Toyota dealerships and service stations that rodent damage to Class Vehicles relating to the Defect is a common problem experienced by consumers. Some Toyota representatives (discussed, *infra*) have even acknowledged that widespread problems with rodent damage to Class Vehicle wiring began a few years ago when Toyota introduced soy- or bio-based materials into Class Vehicle wiring. These accounts are independent of one another and have been made by Toyota technicians across the country.

3.     The Defect causes damage to the Class Vehicles' electrical and other operational systems and/or these systems cease to function, leaving the vehicles partially or completely inoperable.

4.     The accounts by Toyota service representatives are consistent with the numerous complaints posted on the National Highway Traffic Safety Administration ("NHTSA") website and other consumer resources which reveal that rodents and pests are uniquely attracted to the Defect in the Class Vehicles.

5.     The soy- or bio-based parts are purportedly more environmentally-friendly and less expensive than traditional wiring and other parts and components. However, current and former Class Vehicle owners and lessees should not be required to bear the costs associated with the Defect, nor should they be required to bear the risk of future out-of-warranty problems for animal-damaged wiring that results simply because Toyota made a cost-conscious decision to include cheaper bio-based or soy-based materials in Class Vehicles.

6.     Despite the fact that Toyota is aware (or should be aware) of the Defect and that resulting rodent or other animal damage is a widespread problem in Class Vehicles across the United States, Toyota has failed to disclose the Defect to Class Vehicle purchasers and lessees, and routinely refuses to repair the Class Vehicles

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

under its New Vehicle Limited Warranty (the "Warranty") that it issues with each Class Vehicle purchase or lease.

7.     Worse still, when Toyota repairs Defect-related damage at the expense of Class members, it simply incorporates new defective bio- or soy-based wiring parts or components, exposing Class Vehicles to the risk and likelihood of future rodent or animal damage which will necessitate additional repairs, all to be paid for by Class members.

8.     As if this is not bad enough, when Class members bring their Class Vehicles to Toyota's authorized dealers and/or service stations for Defect-related repairs, Toyota recommends that Class members, at their own cost, implement makeshift solutions to prevent further damage, including but not limited to using chemicals, sprays, traps, repellants, wrapping wires, and even using a high-frequency noise-emitting electronic devices (a device commonly known as MouseBlocker). However, if Toyota installs these preventive measures, it charges consumers for the costs associated therewith.

9.     As a result of the Defect and the monetary costs associated with repairs, as well as other out-of-pocket losses and diminished Class Vehicle values, Plaintiffs and Class Members have suffered injury in fact, incurred damages, and have otherwise been harmed by Toyota's conduct.

10.     As set forth below, Plaintiffs seek redress for Toyota's violations of various state consumer protection and state and federal warranty laws. Plaintiffs also seek recovery for monetary and equitable relief for Toyota's failure to implement or honor the terms of its Warranty, breaches of implied warranties, unjust enrichment, restitution, fraud/fraudulent concealment, and declaratory relief.

## II.     JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States and pursuant

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

to 28 U.S.C. § 1332(d) because: (i) there are 100 or more class members; (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs; and (iii) because at least one plaintiff and defendant are citizens of different states.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

12.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Toyota transacts business in this district, is subject to personal jurisdiction in this district, and is therefore deemed to be a citizen of this district.  Additionally, Toyota has advertised in this district and has received substantial revenue and profits from its sales and/or leasing of Class Vehicles in this district; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

13.    This Court has personal jurisdiction over Toyota because it has conducted substantial business in this judicial district and intentionally and purposefully placed Class Vehicles into the stream of commerce within this district and throughout the United States.

### III.    PARTIES

**A.    California Plaintiffs**

**Plaintiff Jennifer Grammer**

14.    Plaintiff Jennifer Grammer ("Plaintiff Grammer") is a citizen of California and currently resides in Carson, California.

15.    In June 2012, Plaintiff Grammer purchased a 2012 Toyota Corolla from South Bay Toyota, which is an authorized Toyota dealer in Gardena, California.

16.    Plaintiff Grammer uses her Class Vehicle for personal, family, and/or household uses

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

17.     In or about August 2016, Plaintiff Grammer was driving her Class Vehicle on the freeway when the check engine light came on and her Class Vehicle started to resist acceleration.

18.     In or about August 2016, Plaintiff Grammer had a service appointment at a repair shop in Torrance, California.   The technician advised Plaintiff Grammer that there were chew marks in the cables and rodent droppings in her Class Vehicle.

19.     Plaintiff Grammer's mechanic subsequently informed her that a rodent had chewed through the wiring that corresponds with the transmission speed sensor in her Class Vehicle.  Plaintiff Grammer paid out of pocket for her mechanic to repair and replace the wiring and the sensor.

20.     To date, Toyota has failed to remedy the Defect in Plaintiff Grammer's Class Vehicle or reimburse her for the rodent-related damage she paid to repair in her Class Vehicle and other out-of-pocket expenses.

21.     Plaintiff Grammer has suffered an ascertainable loss as a result of Toyota's omissions and/or misrepresentations associated with the Defect, including, but not limited to, out-of-pocket losses, future repairs, and diminished value of her Class Vehicle.

22.     Neither Toyota nor any of its agents, dealers, or other representatives informed Plaintiff Grammer of the existence and prevalence of the Defect prior to her purchase.

23.     Had Plaintiff Grammer known of the Defect, she would not have paid for her Class Vehicle, or would have paid significantly less than she did.

**Plaintiff Jody Pla**

24.     Plaintiff Jody Pla ("Plaintiff Pla") is a citizen of the state of California and currently resides in Santa Clarita, California.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

25.     On July 31, 2014, Plaintiff Pla purchased a new 2014 Toyota Tundra 2WD Truck from Frontier Toyota, which is an authorized Toyota dealer in Valencia, California.

26.     Plaintiff Pla uses her Class Vehicle for personal, family, and/or household uses. Her Class Vehicle bears the following VIN: 5TFSY5F12EX167215.

27.     On or about November 5, 2015, Plaintiff Pla drove her Class Vehicle to Crista Chevron Auto Spa in Santa Clarita, California for an oil change and inspection because her vehicle's check engine light had suddenly illuminated while she was driving. Upon inspection, the service technician indicated that there were rat feces on the engine cover, specifically stating "you have rats in here."  Plaintiff Pla immediately made an appointment at Frontier Toyota for further inspection of the problem. Prior to the time of her inspection at Frontier Toyota, numerous additional warning lights illuminated on the dashboard of her Class Vehicle.

28.     On November 9, 2015, Plaintiff Pla had a service appointment at Frontier Toyota. The mileage on Plaintiff Pla's Class Vehicle at the time of her service appointment was approximately 23,067 miles.

29.     Frontier Toyota initially assessed the problem as potential damage to the vehicle's wiring harness caused by rodents gnawing or eating the electrical wiring. Frontier Toyota indicated that this damage may require repairs costing upwards of $3,000.

30.     Later that day, Frontier Toyota called Plaintiff Pla to inform her that the damage was limited to the electrical wiring near the engine compartment and that repairs would cost $720. Plaintiff Pla paid for the repairs out-of-pocket, and Toyota did not cover the damage under the Warranty.

31.     The Defect-related damage to Plaintiff Pla's Class Vehicle left her Class Vehicle partially or wholly inoperable.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

32.     Notably, a Toyota service technician indicated to Plaintiff Pla that they have seen this issue with rodent damage and chewing on wires a number of times in the past.

33.     Over a year has passed since Plaintiff Pla paid for the repairs to her Class Vehicle, and her car still experiences rodent issues resulting from the Defect. At her own expense, Plaintiff Pla has tried multiple methods of eliminating the rodent issue, including hiring an exterminator and using rodent bait boxes; however, none of these approaches have resolved the issue.

34.     To date, Toyota has failed to remedy the Defect in Plaintiff Pla's Class Vehicle.

35.     Plaintiff Pla has suffered an ascertainable loss as a result of Toyota's omissions and/or misrepresentations associated with the Defect, including, but not limited to, out-of-pocket losses, future repairs, and diminished value of her Class Vehicle.

36.     Neither Toyota nor any of its agents, dealers, or other representatives informed Plaintiff Pla of the existence and prevalence of the Defect prior to her purchase.

37.     Had Plaintiff Pla known of the Defect, she would not have paid for her Class Vehicle, or would have paid significantly less than she did.

**Plaintiff Douglas Powell**

38.     Plaintiff Douglass Powell ("Plaintiff Powell") is a citizen of California and currently resides in Stockton, California.

39.     On July 26, 2016, Plaintiff Powell purchased a 2016 Toyota Rav4 from, Antioch Toyota, which is an authorized Toyota dealer in Antioch, California.

40.     Plaintiff Powell uses his Class Vehicle for personal, family and/or household uses. His Class Vehicle bears the following VIN: 2T3DFREV46W423629.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

41.     On or about September 12, 2016, Plaintiff Powell's Vehicle would not start.

42.     Plaintiff Powell then had his vehicle towed to the Stockton Toyota Town Dealership where he was informed that a rodent had damaged the main engine compartment resulting in damage to the electrical harness. The vehicle's electrical harness had to be replaced.

43.     The mileage on Plaintiff Powell's Class Vehicle at the time of the repair was approximately 3,776 miles.

44.     Plaintiff Powell's Class Vehicle was under warranty yet Toyota did not cover the damage and denied Plaintiff Powell's claim – he used his automobile insurance but had to pay a $250 deductible.

45.     To date, Toyota has failed to remedy the Defect in Plaintiff Powell's Class Vehicle or reimburse him for the rodent-relate damage he paid to repair in her Class Vehicle and other out-of-pocket expenses.

46.     Plaintiff Powell has suffered an ascertainable loss as a result of Toyota's omissions and/or misrepresentations associated with the Defect, including, but not limited to, out-of-pocket losses, future repairs, and diminished value of his Class Vehicle.

47.     Neither Toyota nor any of its agents, dealers, or other representatives informed Plaintiff Powell of the existence and prevalence of the Defect prior to his purchase.

48.     Had Plaintiff Powell known of the Defect, he would not have paid for his Class Vehicle, or would have paid significantly less than he did.

**B.     Colorado Plaintiff**

49.     Plaintiff Shanah Zishka ("Plaintiff Zishka") is a citizen of the state of Colorado and currently resides in Colorado Springs, Colorado.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

50.     On or about October 6, 2014, Plaintiff Zishka purchased a new 2015 Scion TC from Stevinson Toyota West, an authorized Toyota dealer in Lakewood, Colorado. Her Class Vehicle bears the following VIN: JTKJF5C79F3090709.

51.     Plaintiff uses her Class Vehicle for personal, family, and/or household uses.

52.     On or about August 22, 2016, Plaintiff noticed that her dashboard display for her transmission was not working.  As she drove her Class Vehicle home, she attempted to put the car in manual shift mode, but was unable to do so.

53.     The following morning, on August 23, the dashboard display and manual shift mode were still not working. On her drive to work that day, Plaintiff's check engine light came on and traction control shut off. She called her local Toyota dealer – Larry H. Miller Toyota – to arrange to drop off her car, which she did on August 31, 2016.

54.     The mileage on Plaintiff Zishka's Class Vehicle at the time of this issue was 15,633 miles.

55.     After a series of appointments with the dealer, Plaintiff received a call on September 12 indicating that the transmission range switch was damaged and needed to be replaced. Plaintiff opted to leave her car with the dealer until Friday, September 16, as the dealer was waiting for a part to arrive.

56.     On the morning of September 16, Plaintiff received a call from the dealer informing her that they had replaced the transmission range switch and the issue was still occurring.

57.     After further inspection, the Toyota dealer discovered that Plaintiff's wiring harness had been chewed by rodents.

58.     While the transmission range switch repair was covered under warranty, Plaintiff was charged $193.64 for service and repairs to the wiring harness.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

59.     Notably, when Plaintiff went to pick up her Class Vehicle, the dealer's service department technician verbally acknowledged that the wiring harness in her Class Vehicle is made of soy which attracts rodents. Plaintiff was also told that the wiring harness is near the exhaust pipe, which is appealing to rodents because the exhaust pipe is warm. The Toyota dealership technicians told Plaintiff Zishka that rodent and animal damage is a common issue with Toyota vehicles because pests find the soy materials appealing.

60.     Toyota, however, refused to cover any of the rodent damage to the wiring harness in Plaintiff Zishka's Class Vehicle.

61.     The damage to Plaintiff's Class Vehicles left her vehicle partially or completely inoperable.

62.     As a result of the damage to Plaintiff's wiring harness, she was required to incur out-of-pocket expenses and lost use of her vehicle for a number of days.

63.     Despite Plaintiff's request, Toyota refused to provide warranty coverage for the damage to Plaintiff's Class Vehicle, which Toyota contends was not covered under the Warranty. To date, Toyota has failed to remedy the Defect in Plaintiff Zishka's Class Vehicle or reimburse her for the rodent-related damage she paid to repair her Class Vehicle.

64.     Plaintiff Zishka has suffered an ascertainable loss as a result of Toyota's omissions and/or misrepresentations associated with the Defect, including, but not limited to, out-of-pocket losses, future repairs, and diminished value of her Class Vehicle.

65.     Neither Toyota nor any of its agents, dealers, or other representatives informed Plaintiff Zishka of the existence and prevalence of the Defect prior to her purchase.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

66.     Had Plaintiff Zishka known of the Defect, she would not have paid for her Class Vehicle, or would have paid significantly less than she did.

**C.     Florida Plaintiff**

67.     Plaintiff Janice Toler ("Plaintiff Toler") is a citizen of the state of Florida and currently resides in Clermont, Florida.

68.     On or about February 28, 2015, Plaintiff Toler purchased a brand new 2015 Toyota Rav4 XLE from Toyota of Clermont, which is an authorized Toyota dealer in Clermont, Florida. Her Class Vehicle bears the following VIN: JTMWFREV9FD051614.

69.     Plaintiff Toler uses her Class Vehicle for personal, family, and/or household uses.

70.     On or about October 7, 2016, Plaintiff Toler noticed that the ABS light and Swerve Protection light had illuminated on Plaintiff's Class Vehicle dashboard.

71.     On October 13, 2016, Plaintiff Toler had her Class Vehicle serviced at Toyota of Clermont to determine why the dashboard lights were illuminating.

72.     At the time she took her Class Vehicle in for service at Toyota of Clermont, Plaintiff Toler's Class Vehicle odometer displayed approximately 15,830 miles.

73.     At the dealership, a service consultant named Jimmy Mayo indicated that the car suffered extensive rodent damage. Mr. Mayo identified and showed the wires that the rodents had chewed through as well as rodent urine and feces located near the chewed wiring. Mr. Mayo informed Plaintiff that the car dashboard would need to be removed and that the car would require a total rewiring because rodents had chewed up almost every wire in the engine compartment.

74.     Also at the dealership, a service technician told Plaintiff Toler that he had seen a few other Toyota automobiles come through the dealership with the same problems, *i.e.* wires chewed by rodents.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

75.     That same day, Plaintiff Toler contacted her insurance carrier to open a claim for the rodent damage. Because the repairs were going to take a few days, Plaintiff arranged for a rental car.  Because of the damage to her Class Vehicle, Plaintiff Toler was forced to rent a car from Hertz for 12 days, for which she paid $183.11 out of pocket.

76.     The next day, Plaintiff Toler called the dealership to get an estimate on the damage to her Class Vehicle, and Mr. Mayo informed that the damage could be between $6,000-7,000.

77.     In the interim, Plaintiff Toler called Toyota's Customer Care number to discuss the issue and spoke with a Toyota employee who opened a case (no. 1610141571).

78.     After receiving no meaningful assistance from Toyota, Plaintiff called the Toyota Regional Office and spoke with a Customer Loyalty Specialist. During this call, Toyota's representative informed Plaintiff that Toyota is not responsible for rodents and rodent damage to Toyota vehicles. When Plaintiff Toler asked the Toyota Regional employee to open a case, he stated that it would be closed as quickly as it is opened because the rodent damage is "not Toyota's problem."

79.     Despite attempting to speak with multiple Toyota representatives and employees at various levels of the Toyota hierarchy, Plaintiff Toler was and has been unable to obtain a remedy for the rodent damage to and Defect in her Class Vehicle. Furthermore, Plaintiff Toler never heard anything back with respect to the case she opened up with Toyota.

80.     Plaintiff's insurance carrier ultimately denied full replacement of her Class Vehicle wiring system, and the carrier instead chose the cheaper option to pay to repair the extensively damaged and chewed wires. The rodent damage to Plaintiff Toler's Class Vehicle was repaired under insurance, net of a $500.00 deductible paid by Plaintiff Toler.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

81.     Plaintiff Toler drives her car with the concern that the mere repair of her Class Vehicle's wires (rather than actual replacement of the wires) has left her Class Vehicle in a dangerous state. Furthermore, to date Toyota has provided no solutions for preventing future rodent damage to Plaintiff's Class Vehicle.

82.     The damage to Plaintiff Toler's Class Vehicles left her vehicle partially or completely inoperable.

83.     As a result of the damage to Plaintiff Toler's wiring harness, she was required to incur out-of-pocket expenses and lost use of her vehicle for a number of days.

84.     Despite Plaintiff's request, Toyota refused to provide warranty coverage for the rodent damage to her Class Vehicle, which Toyota contends was not covered under the Warranty.

85.     To date, Toyota has failed to remedy the Defect in Plaintiff Toler's Class Vehicle or reimburse her for the rodent-relate damage she paid to repair in her Class Vehicle and other out-of-pocket expenses.

86.     Plaintiff Toler has suffered an ascertainable loss as a result of Toyota's omissions and/or misrepresentations associated with the Defect, including, but not limited to, out-of-pocket losses, future repairs, and diminished value of her Class Vehicle.

87.     Neither Toyota nor any of its agents, dealers, or other representatives informed Plaintiff Toler of the existence and prevalence of the Defect prior to her purchase.

88.     Had Plaintiff Toler known of the Defect, she would not have paid for her Class Vehicle, or would have paid significantly less than she did.

**D.     Georgia Plaintiff**

89.     Plaintiff Bobby York ("Plaintiff York") is a citizen of the state of Georgia and currently resides in Barnesville, Georgia.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

90.     On or about July 17, 2014, Plaintiff York purchased a new 2014 Toyota Highlander XLE from Toyota of McDonough, an authorized Toyota dealer in McDonough, Georgia. His Class Vehicle bears the following VIN: 5TDKKRFH6ES035814.

91.     Plaintiff York uses his Class Vehicle for personal, family, and/or household uses.

92.     On or about December 6, 2016, Plaintiff noticed his ABS warning light had illuminated on his Class Vehicle dashboard. Pursuant to the instructions in his Warranty manual, Plaintiff contacted the Toyota dealership immediately.

93.     On December 8, 2016, Plaintiff York took his Class Vehicle to Toyota of McDonough for a morning appointment.  Plaintiff was assisted by Seth Fort (service advisor) and Matthew Doss (service technician).

94.     At the time of this service appointment, Plaintiff York's Class Vehicle mileage was at 31,690 miles.

95.     After an hour of inspection, Mr. Fort informed Plaintiff that he found nothing wrong with the brakes, but that the ABS warning light had illuminated because rodents chewed through the vehicle wiring harness. Plaintiff York was told that the brakes would operate safely but that unless the wiring harness was repaired, the warning system would not operate in the event of an actual malfunction.

96.     When Plaintiff York inquired as to whether the damage was covered under his Class Vehicle Warranty, Mr. Fort informed him that Toyota's Warranty does not cover rodent damage.

97.     Plaintiff York paid $310.35 out-of-pocket to have his Class Vehicle's wiring harness repaired. This damage to Plaintiff York's Class Vehicle left the vehicle partially or completely inoperable.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

98.     As a result of the damage to Plaintiff's Class Vehicle, he was forced to incur out-of-pocket expenses, lost functionality of his Class Vehicle, and was unable to use his Class Vehicle for a number of days.

99.     Despite Plaintiff's request, Toyota refused to provide Warranty coverage for the rodent damage to his Class Vehicle, which Toyota contends was not covered under the Warranty.

100.     To date, Toyota has failed to remedy the Defect in Plaintiff York's Class Vehicle or reimburse him for the rodent-relate damage he paid to repair in his Class Vehicle.

101.     Neither Toyota nor any of its agents, dealers, or other representatives informed Plaintiff York of the existence and prevalence of the Defect prior to his purchase.

102.     Plaintiff York has suffered an ascertainable loss as a result of Toyota's omissions and/or misrepresentations associated with the Defect, including, but not limited to, out-of-pocket losses, future repairs, and diminished value of his Class Vehicle.

103.     Had Plaintiff York known of the Defect, he would not have paid for his Class Vehicle, or would have paid significantly less he did.

**E.     Idaho Plaintiff**

104.     Plaintiff Melanie Munns ("Plaintiff Munns") is a citizen of the state of Idaho and currently resides in Rexburg, Idaho.

105.     On or about May 21, 2015, Plaintiff Munns purchased a new 2015 Toyota Rav4 from Stone's Town & Country Motors, Inc., an authorized Toyota dealer in Rexburg, Idaho. Her Class Vehicle bears the following VIN: 2T3DFREV7FW329050.

106.     Plaintiff Munns uses her Class Vehicle for personal, family, and/or household uses.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

107.    In or about September 2015, Plaintiff Munn noticed that three warning lights had illuminated on her Class Vehicle dashboard: the AWD light, the skid light, and the ALB light. Pursuant to the instructions in her Warranty manual, Plaintiff contacted her Toyota dealership, Stone's Town & Country Motors, Inc., immediately to schedule a service appointment.

108.    On or about September 23, 2015, Stones diagnosed the Class Vehicle and determined that rodents had chewed a sensor wiring cover. At the time of this service appointment, Plaintiff Munns' Class Vehicle mileage was at 7,349 miles.

109.    Then, in or about February 2016, the same issue happened with Plaintiff's Class Vehicle. Again, Plaintiff Munns took her Class Vehicle to Stone's. The mileage on her Class Vehicle at this time was 11,003 miles.

110.    On both occasions, when Plaintiff Munns inquired as to whether the damage was covered under her Class Vehicle Warranty, she was informed that Toyota's Warranty does not cover rodent damage, calling this an "act of mother nature."

111.    As a result, Plaintiff Munns had to pay out-of-pocket to have her Class Vehicle sensor wiring repaired. Specifically, Plaintiff Munns paid $381.94 for the repairs and service received in September 2015, and $380.34 for the repairs and service received in February 2016. The damage to Plaintiff Munns' Class Vehicle left the vehicle partially or completely inoperable on both occasions.

112.    During one of Plaintiff Munns' service appointments, a service employee at Stone's indicated to Plaintiff that this problem is not unique to her Class Vehicle and that Stone's was having problems with other Toyota vehicles, including chipmunks eating Toyota wiring.

113.    Notably, during one of her service appointments at Stone's, Plaintiff Munns learned from another woman who was receiving service for her Toyota vehicle that she was having the same problem as Plaintiff Munns.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

114.    The Toyota dealer suggested that Plaintiff Munns use dryer sheets and 100% peppermint oil in her Class Vehicle wheel wells to try to ward off rodent attacks. Plaintiff purchased these items at her cost (roughly $20 for peppermint oil).

115.    In January 2017, Plaintiff Munns experienced the same problem with her dashboard illuminating as she was traveling about 45 miles from her home. Plaintiff believes her Class Vehicle wiring has once again been damaged by rodents, but she has not taken her Class Vehicle in for service because she cannot afford further repairs.

116.    As a result of the damage to Plaintiff's Class Vehicle, she was forced to incur out-of-pocket expenses, lost functionality of her Class Vehicle, and was unable to use her Class Vehicle for a number of days.

117.    Despite Plaintiff's request, Toyota refused to provide Warranty coverage for the rodent damage to her Class Vehicle, which Toyota contends was not covered under the Warranty.

118.    To date, Toyota has failed to remedy the Defect in Plaintiff Munns' Class Vehicle or to reimburse her for the rodent-related damage she paid to repair her Class Vehicle.

119.    Neither Toyota nor any of its agents, dealers, or other representatives informed Plaintiff Munns of the existence and prevalence of the Defect prior to her purchase.

120.    Plaintiff Munns has suffered an ascertainable loss as a result of Toyota's omissions and/or misrepresentations associated with the Defect, including, but not limited to, out-of-pocket losses, future repairs, and diminished value of her Class Vehicle.

121.    Had Plaintiff Munns known of the Defect, she would not have paid for her Class Vehicle, or would have paid significantly less than she did.

///

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

**F.     Illinois Plaintiff**

122.     Plaintiff Matthew Siffermann ("Plaintiff Siffermann") is a citizen of the state of Illinois and currently resides in Elmhurst, Illinois.

123.     In or about August, 2016, Plaintiff Siffermann purchased a new 2016 Toyota Sienna Limited AWD from Elmhurst Toyota, an authorized Toyota dealer in Elmhurst, Illinois. Plaintiff's Class Vehicle bears the following VIN: JNKAY01F08M655309.

124.     Plaintiff Siffermann uses his Class Vehicle for personal, family, and/or household uses.

125.     On or about October 2, 2016, Plaintiff was driving his Class Vehicle when he noticed that several dashboard warning lights had illuminated. The engine "lurched" and the vehicle's operation became choppy. At the time this occurred, Plaintiff's Class Vehicle was barely operable.

126.     On October 3, 2016, Plaintiff drove his Class Vehicle to Elmhurst Toyota for an assessment of the vehicle. After Plaintiff explained the issues that his Class Vehicle was experiencing, a service technician anticipated the nature of the damage, stating that it sounded like it might be rodent damage, and that if that was the case the damage would not be covered under the Toyota Warranty. His mileage at the time of this service appointment was 2,258 miles.

127.     Later that day, Plaintiff received a call from the dealer confirming that the service station had discovered rodent damage to the engine wiring in Plaintiff's Class Vehicle. Specifically, service technicians at the dealership found that rodents had chewed through wires leading to the injector. The technician reiterated that this damage would not be covered by the Warranty.

128.     The cost to repair Plaintiff's Class Vehicle was $860.26, all of which Plaintiff paid out of pocket.  The damage to Plaintiff Siffermann's Class Vehicle left the vehicle partially or completely inoperable.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

129.     As a result of the damage to Plaintiff's Class Vehicle, he was forced to incur out-of-pocket expenses and lost functionality of his Class Vehicle.

130.     Despite Plaintiff's request, Toyota refused to provide Warranty coverage for the rodent damage to his Class Vehicle, which Toyota contends was not covered under the Warranty.

131.     To date, Toyota has failed to remedy the Defect in Plaintiff Siffermann's Class Vehicle or reimburse him for the amount he paid to repair his Class Vehicle.

132.     Neither Toyota nor any of its agents, dealers, or other representatives informed Plaintiff Siffermann of the existence and prevalence of the Defect prior to his purchase.

133.     Plaintiff Siffermann has suffered an ascertainable loss as a result of Toyota's omissions and/or misrepresentations associated with the Defect, including, but not limited to, out-of-pocket losses, future repairs, and diminished value of his Class Vehicle.

134.     Had Plaintiff Siffermann known of the Defect, he would not have paid for his Class Vehicle, or would have paid significantly less than he did.

**G.     Indiana Plaintiffs**

        **Plaintiff Albert Heber**

135.   Plaintiff Albert Heber ("Plaintiff Heber") is a resident of Indiana, and the original owner of a 2012 Toyota Tundra, which he purchased on December 29, 2012 at Bob Rohrman Toyota, a Toyota-factory authorized dealership in Lafayette, Indiana.

136.     Plaintiff Heber uses his Class Vehicle for personal, family, and/or household uses. His Class Vehicle bears the following VIN: 5TFUM5F18CX034752.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

137.    In May 2013, Plaintiff Heber took his vehicle to the dealership when his check engine light turned on; the issue was deemed to be a loose plug and the dealership corrected the issue without cost to Plaintiff Heber.  Approximately two weeks later, Plaintiff Heber was back at the dealership as the check engine light had again illuminated.  At this time, it was determined that his Class Vehicle, which had less than 2,000 miles on it, had a leak in the emissions system, which again the dealership completed repairs without hesitation or cost to Plaintiff Heber.

138.    In less than four months, in October 2013, when Plaintiff Heber's Tundra had approximately 3,441 miles, he discovered that his Class Vehicle's check engine light was once again illuminated.  This warranted another trip to the dealership, wherein this time he was advised that rodents damaged the vapor fuel hose, which is part of the emissions system.  This time, however, Plaintiff Heber was advised by the Toyota Service Advisor that this repair would not be covered under warranty and that he would have to pay $1,183.82 out of pocket.  Plaintiff Heber chose not to repair the wiring at that time due to the cost he would incur.

139.    A short eight months later, in June 2014, Plaintiff Heber's Class Vehicle had approximately 5,714 miles on it; again numerous lights in the dashboard, including the check engine light illuminated, which warranted another trip to the dealership.  On this trip, the service technician found a chewed through wiring harness and ground straps.  Toyota refused to cover the damages under the Warranty and Plaintiff Heber was forced to pay for the damages out of his own pocket.  He paid a total of $381.96 on two trips to the Bob Rohrman Toyota Service Lane to fix his Class Vehicle wiring, but the vapor fuel hose damage diagnosed in October 2013 was left unrepaired due to the high cost.

140.    In or around June 2015, Plaintiff Heber returned to the Toyota dealership again complaining about rodents chewing through the wiring in his vehicle.  On this last instance, Plaintiff Heber chose not to complete the repairs at

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

the dealership after being told again that it would be an out-of-pocket expense. Instead, he took his vehicle to a third-party repair shop that a Toyota Service Advisor recommended; they repaired the wiring, but did not repair the vapor fuel tank hose per Plaintiff Heber's request. This time, Plaintiff Heber was charged $356.59 by the third-party service shop.

141.    More wiring damage from rodents occurred until multiple problems forced Plaintiff Heber to obtain repairs. The rodent damage causing the fuel gauge and the 4WD light to fail were repaired by the third-party repair shop on November 4, 2016 along with the vapor fuel tank hose. The total repair bill was $1,738.76. Plaintiff Heber's auto insurance policy provided a reimbursement of $1,488.76, but Plaintiff Heber had to pay the $250 deductible. Because of the damage and repairs, Plaintiff Heber lost use of his Class Vehicle for a number of days. The damage to the Plaintiff Heber's Class Vehicle left the vehicle partially or completely inoperable.

142.    As a result of the damage to Plaintiff Heber's Class Vehicle, he was forced to incur out-of-pocket expenses, lost functionality of his Class Vehicle, and was unable to use his Class Vehicle for a number of days.

143.    To date, Toyota has failed to remedy the Defect in Plaintiff Heber's Class Vehicle and has not reimbursed his out-of-pocket expenses.

144.    Plaintiff Heber has suffered an ascertainable loss as a result of Toyota's omissions and/or misrepresentations associated with the Defect, including, but not limited to, out-of-pocket losses, future repairs, and diminished value of his Class Vehicle.

145.    Neither Toyota nor any of its agents, dealers, or other representatives informed Plaintiff Heber of the existence and prevalence of the Defect prior to purchase.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

146.     Had Plaintiff Heber known of the Defect, he would not have paid for his Class Vehicle, or would have paid significantly less than he did.

**Plaintiffs Joseph and Kim Lesko**

147.     Plaintiffs Joseph and Kim Lesko (the "Lesko Plaintiffs") are citizens of the state of Indiana and currently reside in Trafalgar, Indiana.

148.     On or about June 8, 2016, the Lesko Plaintiffs purchased a new 2016 Toyota Tundra from O'Brien Toyota, an authorized Toyota dealer in Indianapolis, Indiana. Plaintiffs' Class Vehicle bears the following VIN: 1B7HF13Y4XJ597148.

149.     The Lesko Plaintiffs use their Class Vehicle for personal, family, and/or household uses.

150.     On or about December 30, 2016, Plaintiff Joe Lesko started his Class Vehicle and noticed that his engine light had illuminated on the dashboard and the display panel said that traction control was not operating.

151.     Plaintiff referred to his Class Vehicle manual to determine what the issue is and, in accordance with the manual's instructions, he contacted his dealership. Plaintiffs contacted Carver Toyota in Columbus, Indiana immediately. They scheduled a morning appointment for January 2, 2017.

152.     Plaintiffs dropped off their Class Vehicle at Carver Toyota. During the appointment, Plaintiffs were called and informed that rodents had eaten the materials that coat the electrical wiring in his Class Vehicle. Plaintiffs were also informed that Toyota would not cover this under the Warranty and that the loaner that he was provided would be treated as a rental car for which Plaintiffs might have to pay to use. At the time of this service appointment, the mileage on Plaintiffs' Class Vehicle was 3,426 miles.

153.     When Plaintiffs received the diagnosis, Plaintiff Kim Lesko called Carver Toyota and had a conversation with a service employee during which the employee stated that Toyota is having trouble with soy-based materials and in the

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

wiring and rodent damage. The service employee told Plaintiff that he had seen this issue before at another dealership, and that he knew the reason Toyota was making its wiring harnesses in smaller segments was to accommodate the ongoing rodent problem so that damage to one location on the wiring harness does not destroy the entire wiring harness. The Toyota service worker informed Plaintiff Kim Lesko that this was done to "save money" for consumers.

154.   The total repair cost for Plaintiffs' Class Vehicle was $599.67, which was covered by insurance, net of a $250 deductible paid by Plaintiffs. Insurance ultimately decided to pay for the Toyota rental car. However, because of the damage and repairs, Plaintiffs lost use of their Class Vehicle for a number of days. The damage to Plaintiffs' Class Vehicle left the vehicle partially or completely inoperable.

155.   As a result of the damage to Plaintiffs' Class Vehicle, they were forced to incur out-of-pocket expenses, lost functionality of their Class Vehicle, and were unable to use their Class Vehicle for a number of days.

156.   Despite Plaintiffs' request, Toyota refused to provide Warranty coverage for the rodent damage to the Class Vehicle, which Toyota contends was not covered under the Warranty.

157.   To date, Toyota has failed to remedy the Defect in Plaintiffs' Class Vehicle or reimburse them for the amount they paid to repair their Class Vehicle.

158.   Neither Toyota nor any of its agents, dealers, or other representatives informed the Lesko Plaintiffs of the existence and prevalence of the Defect prior to their purchase.

159.   The Lesko Plaintiffs have suffered an ascertainable loss as a result of Toyota's omissions and/or misrepresentations associated with the Defect, including, but not limited to, out-of-pocket losses, future repairs, and diminished value of their Class Vehicle.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

160.    Had the Lesko Plaintiffs known of the Defect, they would not have paid for their Class Vehicle, or would have paid significantly less.

**H.    Maryland Plaintiffs**

161.    Plaintiffs Raymond Bennett and Sheila Faulkner are a married couple and citizens of the state of Maryland, and currently reside in Galena, Maryland.

162.    On or about December 18, 2013, Plaintiffs Bennett and Faulkner purchased a brand new 2013 Toyota Camry XLE Hybrid vehicle from Fitzgerald Lakeforest Toyota, an authorized Toyota dealer in Gaithersburg, Maryland. Their Class Vehicle bears the following VIN: 4T1BD1FK4DU075578.

163.    Plaintiffs use their Class Vehicle for personal, family, and/or household uses.

164.    Plaintiffs have had three (3) episodes of rodent damage in their Class Vehicle.

165.    On August 1, 2014, Plaintiffs' Class Vehicle would not start. The vehicle had to be towed by a flatbed to Koons Toyota Service Department in Annapolis, Maryland. At Koons, a Toyota service representative concluded that the cause of the vehicle failure was rodent damage to the wiring connector at the vehicle's transmission shift position sensor. Toyota did not provide warranty coverage for this damage. The connectors were replaced and wiring was repaired out of pocket by Plaintiffs for $770.66. The mileage on Plaintiffs' Class Vehicle at the time of this damage was 15,470 miles.

166.    On February 23, 2016, Plaintiffs drove their Class Vehicle to the Koons service department once more after experiencing additional issues. There, Toyota's diagnosis was once again rodent damage. Specifically, rodents had damaged engine wire harness #4 between the inverter and the AC compressor. The wiring insulation had rodent bite marks, which caused voltage leaking in the high voltage AC circuit. The wiring harness was removed and replaced. Toyota did not

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

cover this damage under warranty. Plaintiffs paid $862.74 for the repairs out of pocket. The mileage on Plaintiffs' Class Vehicle at the time of this damage was 44,779 miles.

167.    Most recently, on April 1, 2016, the warning indicator "Check Hybrid System" came on in Plaintiffs' Class Vehicle. The car was again driven to Koons of Annapolis, where rodent damage was again diagnosed. This time the wiring harness to the hybrid transaxle was shorted and required replacement. Plaintiffs' Class Vehicle suffered damage to the wiring between the hybrid battery and the vehicle's drive train.  Having been denied warranty coverage once again, Plaintiffs were forced to pay out of pocket for the repairs, with a total cost (inclusive of labor) of $5,859.42. The mileage on Plaintiffs' Class Vehicle at the time of this damage was 46,589 miles. The technician working on the car took the following photograph of the vehicle damage prior to starting repairs:



168.    Toyota has been unwilling to cover any of the damage to Plaintiff Bennett's and Faulkner's Class Vehicle. Plaintiffs' insurance company provided insurance coverage for the first of the three episodes of rodent damage less a deductible of $500. Their insurer also provided coverage for the second and third episodes as one claim, less another deductible of $500 paid by Plaintiffs.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

169. The damage to Plaintiff Bennett's and Faulkner's Class Vehicle left the vehicle partially or completely inoperable.

170. Neither Toyota nor any of its agents, dealers, or other representatives informed Plaintiffs Faulkner and Bennett of the existence and prevalence of the Defect prior to purchase.

171. Despite Plaintiffs' requests, Toyota denied their warranty claims for rodent damage or refused to provide coverage for the damage, which Toyota contends was not covered under the Warranty.

172. As a result of the damage to Plaintiffs' Class Vehicle, they were forced to incur out-of-pocket expenses, their Class Vehicle sustained loss of certain functionality, and were unable to use their Class Vehicle for a number of days.

173. Had Plaintiffs known of the Defect, they would not have paid for their Class Vehicle.

**I. Nebraska Plaintiffs**

174. Plaintiff Penny Porter ("Plaintiff Porter") is a citizen of the state of Nebraska and currently resides in Ralston, Nebraska.

175. On October 1, 2013, Plaintiff Porter purchased a new 2014 Toyota Rav4 from Village Point Toyota, formerly called Old Mill Toyota, which is an authorized Toyota dealer in Omaha Nebraska.

176. Plaintiff Porter uses her Class Vehicle for personal, family, and/or household uses. Her Class Vehicle bears the following VIN: 2T3ZFREV7DW052712.

177. On April 11, 2014, Plaintiff Porter was driving on the interstate when all lights on dashboard came on. Front head lights went out, except for one high beam. And at one point the brakes locked up.

178. Plaintiff Porter had her Class Vehicle towed to Omaha where the dealership discovered that rodents ate through the all electrical wiring in her Class

Vehicle. The mileage on his Class Vehicle at the time of service was 8,4658 miles. As a result of this incident, Plaintiff Porter had to pay $1,680.00 in repairs.

179.   Toyota informed Plaintiff that the damage would not be covered under the Warranty because the damage was caused by "rodent damage"

180.   Plaintiff Porter had to use her automobile insurance to have the damage repaired and paid a $500.00 deductible.

181.   Plaintiff Porter has suffered an ascertainable loss as a result of Toyota's omissions and/or misrepresentations associated with the Defect, including, but not limited to, out-of-pocket losses, future repairs, and diminished value of his Class Vehicle.

182.   Neither Toyota nor any of its agents, dealers, or other representatives informed Plaintiff Porter of the existence and prevalence of the Defect prior to purchase.

183.   Had Plaintiff Porter known of the Defect, she would not have paid for her Class Vehicle, or would have paid significantly less.

**J.    New Jersey Plaintiff**

184.   Plaintiff James Donoghue ("Plaintiff Donoghue") is a citizen of the state of New Jersey and currently resides in Mt. Laurel, New Jersey.

185.   Plaintiff Donoghue purchased a 2013 Toyota Tacoma from an authorized Toyota dealer in New Jersey.

186.   Plaintiff Donoghue uses his Class Vehicle for personal, family, and/or household uses.

187.   In or about January 2017, Plaintiff experienced electrical wiring damage to his Class Vehicle as a result of rodents chewing or eating through the electrical wiring in his Class Vehicle.  Plaintiff Donoghue took his Class Vehicle to Holman Toyota for repair.  The repair would have cost $3,900, but Toyota refused to cover the repair under the Warranty.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

188.    Plaintiff Donoghue made a claim under his automobile insurance policy and had to pay $750 insurance deductible, and had to rent a vehicle while his Class Vehicle was being repaired.

189.    Despite Plaintiff Donoghue's request, Toyota refused to provide Warranty coverage for the rodent damage to the Class Vehicle, which Toyota contends was not covered under the Warranty.

190.    To date, Toyota has failed to remedy the Defect in Plaintiff Donoghue's Class Vehicle or reimburse him for the amount he paid to repair his Class Vehicle, or the out-of-pocket expenses he incurred as a result of the Defect.

191.    Neither Toyota nor any of its agents, dealers, or other representatives informed Plaintiff Donoghue of the existence and prevalence of the Defect prior to his purchase.

192.    Plaintiff Donoghue has suffered an ascertainable loss as a result of Toyota's omissions and/or misrepresentations associated with the Defect, including, but not limited to, out-of-pocket losses, future repairs, and diminished value of his Class Vehicle.

193.    Had Plaintiff Donoghue known of the Defect, he would not have paid for his Class Vehicle, or would have paid significantly less.

**K.    Oklahoma Plaintiff**

194.    Plaintiff Leslie Cochrane ("Plaintiff Cochrane") is a citizen of the state of Oklahoma and currently resides in Lexington, Oklahoma.

195.    On July 23, 2016, Plaintiff Cochrane leased a new 2016 Toyota Corolla from Fowler Toyota, which is an authorized Toyota dealer in Norman, Oklahoma.

196.    Plaintiff Cochrane uses his Class Vehicle for personal, family, and/or household uses.    His    Class    Vehicle    bears    the    following    VIN: 5YFBURHE5GP546634.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

197.    On August 8, 2016, Plaintiff Cochrane had to take a business trip and left his Class Vehicle parked in a carport at his home.   A few days later, after returning from his business trip, Plaintiff Cochrane was driving his Class Vehicle when suddenly the check engine light illuminated. When this occurred, he could not make the car accelerate, and the car horn would not function.

198.    Plaintiff Cochrane had his Class Vehicle towed to Fowler Toyota where the dealership discovered that rodents ate through the electrical wiring in his Class Vehicle. The mileage on his Class Vehicle at the time of service was 273 miles. As a result of this incident, Plaintiff Cochrane had to pay $623.97 in repairs.

199.    Toyota informed Plaintiff that the damage would not be covered under the Warranty because the damage was caused by "outside influences."

200.    When Plaintiff Cochrane attempted to inquire with the Toyota dealership about solutions for preventing rodent damage, the service manager never returned his calls.

201.    Plaintiff Cochrane was told by a Toyota service representative that Plaintiff should (at his own cost) use mouse traps in his Class Vehicle.

202.    To date, Toyota has failed to remedy the Defect in Plaintiff Cochrane's Class Vehicle.

203.    Plaintiff Cochrane has suffered an ascertainable loss as a result of Toyota's omissions and/or misrepresentations associated with the Defect, including, but not limited to, out-of-pocket losses, future repairs, and diminished value of his Class Vehicle.

204.    Neither Toyota nor any of its agents, dealers, or other representatives informed Plaintiff Cochrane of the existence and prevalence of the Defect prior to his purchase.

205.    Had Plaintiff known of the Defect, he would not have paid for his Class Vehicle, or would have paid significantly less.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

**L.      Oregon Plaintiffs**

206.    Plaintiffs Cole and Shannon Michaelis ("Plaintiffs Michaelis") are citizens of the state of Oregon and currently reside in Tillamook, Oregon.

207.    On or about January 8, 2016, Plaintiffs purchased a new 2016 Toyota Tacoma from Beaverton Toyota, an authorized Toyota dealer in Beaverton, Oregon. At the time of their purchase, Plaintiffs also purchased a Toyota Extra Care Platinum Package and Tire and Rim Damage Policy. Plaintiffs' Class Vehicle bears the following VIN: 3TMCZ5AN0GM011727.

208.    Plaintiffs Michaelis use their Class Vehicle for personal, family, and/or household uses.

209.    At the time of their purchase, Plaintiffs were told by a Toyota sales representative that their warranty coverages would cover any other unforeseen damages that the Class Vehicle might encounter, including but not limited to rodent damage.

210.    In or about November 2016, the check engine light and other lights illuminated on Plaintiffs' Class Vehicle dashboard.  Plaintiffs were driving on the highway at the time this occurred.  They stopped at the nearest dealer, Toyota of Newport in Newport, Oregon. There, the dealer ran a diagnosis test and determined that there was a rodent nest under the vehicle intake manifold and that a mouse had chewed through the wiring harness. The mileage on Plaintiffs' Class Vehicle at the time of this service was 24,230 miles. Plaintiffs were charged $47.25 for this assessment, and the dealer said Plaintiffs should take the Class Vehicle back to Beaverton Toyota, where they bought the vehicle.

211.    Beaverton Toyota refused to make the repairs under the Toyota Warranty, indicating that the damage was not covered. Plaintiffs submitted a claim to insurance and their Class Vehicle was repaired by Beaverton. The mileage on

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

Plaintiffs' Class Vehicle at the time of this service was 24,399 miles.  Plaintiffs had to pay a $500 deductible for the claim.

212.     Shortly after getting their repaired Class Vehicle back from the dealer, Plaintiffs took a trip to Portland, Oregon.  While driving, the accelerator in their Class Vehicle became stuck to the ground and the "brakes depressed" and "gas depressed" lights illuminated simultaneously on Plaintiffs' dashboard. The brake pedal would not operate and Plaintiffs' Class Vehicle began sliding off of the road. Fortunately, Plaintiffs were uninjured and their Class Vehicle suffered no damage.

213.     Plaintiffs called Beaverton Toyota again to have the vehicle inspected. Once again, rodent damage had caused the problems in Plaintiffs' Class Vehicle, necessitating a replacement of the wiring harness. After much back and forth with the general manager, Toyota once again declined to cover the damage under Toyota's warranty. Plaintiffs again had to pay another $500 deductible in conjunction with obtaining repairs through their insurance.

214.     A service employee at Beaverton Toyota named Andrew Blaine indicated that Plaintiffs' Class Vehicle was not the first they had seen with rodent damage; that they were seeing it become more of a common issue; and that on some days they had been having 10-15 episodes of rodent wiring damage a day.

215.     One service person indicated that the reason rodents are eating the wiring is because Toyota dips the wiring in some eco-friendly material and wraps their electrical wiring in a soy-based plastic that rodents and other pests like to eat.

216.     Plaintiffs had to pay two $500 deductibles (total of $1,000) for the two claims they submitted to insurance relating to rodent damage in their Class Vehicle. Because of the damage and repairs, Plaintiffs also lost use of their Class Vehicle for a number of days. Luckily, Plaintiffs avoided serious injury in an accident that was undoubtedly related to electrical failure resulting from rodent damage in their Class Vehicle.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

217.   Toyota service representatives recommended that Plaintiffs, at their own cost, use mouse traps to ward off attacks.

218.   The damage to Plaintiffs' Class Vehicle left the vehicle partially or completely inoperable.

219.   As a result of the damage to Plaintiffs' Class Vehicle, they were forced to incur out-of-pocket expenses, lost functionality of their Class Vehicle, and were unable to use their Class Vehicle for a number of days.

220.   Despite Plaintiffs' request, Toyota refused to provide Warranty coverage for the rodent damage to Plaintiffs' Class Vehicle, which Toyota contends was not covered under the Warranty.

221.   To date, Toyota has failed to remedy the Defect in Plaintiffs' Class Vehicle or reimburse them for the amount they paid to repair his Class Vehicle.

222.   Neither Toyota nor any of its agents, dealers, or other representatives informed Plaintiffs Michaelis of the existence and prevalence of the Defect prior to their purchase.

223.   Plaintiffs Michaelis have suffered an ascertainable loss as a result of Toyota's omissions and/or misrepresentations associated with the Defect, including, but not limited to, out-of-pocket losses, future repairs, and diminished value of their Class Vehicle.

224.   Had Plaintiffs Michaelis known of the Defect, they would not have paid for their Class Vehicle, or would have paid significantly less.

**M.   Texas Plaintiffs**

**Plaintiff Stephen Bowling**

225.   Plaintiff Stephen Bowling ("Plaintiff Bowling") is a citizen of the state of Texas and currently resides in Wimberley, Texas.

226.   On or about November 23, 2016, Plaintiff Bowling purchased a new 2017 Toyota Tundra 4WD from San Marcos Toyota, an authorized Toyota dealer in

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

San Marcos, Texas. Plaintiff's Class Vehicle bears the following VIN: 5TFAW5F1XHX594504.

227.   Plaintiff Bowling uses his Class Vehicle for personal, family, and/or household uses.

228.   Plaintiffs Class Vehicle experienced the Defect in or around December 2016. When Plaintiff took his Class Vehicle to San Marcos Toyota, Plaintiff spoke with Pat Fryer, an assistant service manager. Fryer informed Plaintiff that Toyota coats its wiring with materials that attract mice and that Toyota knows about the issue.

229.   At the dealership, Fryer told Plaintiff that Toyota coats the wiring with materials that are attractive to rodents or animals and that these pests are attracted to these materials in the wiring and wiring harnesses.  Plaintiff asked Fyer if Toyota knows about the issue, and Fryer stated that Toyota is aware and that the problem is essentially swept under the rug, stating "we don't really talk about [the issue] that much."

230.   The damage to Plaintiff's Class Vehicle left the vehicle partially or completely inoperable.

231.   Plaintiff had to pay out of pocket in connection with repairing his Class Vehicle. Specifically, he paid for an insurance deductible and the cost of a rental car.  Plaintiff paid a $500 insurance deductible and approximately $200 for the rental car. Because of the damage and repairs, Plaintiff also lost use of his Class Vehicle.

232.   Despite Plaintiff's request, Toyota refused to provide Warranty coverage for the rodent damage to the Class Vehicle, which Toyota contends was not covered under the Warranty.

233.   To date, Toyota has failed to remedy the Defect in Plaintiff's Class Vehicle or reimburse him for the amount he paid to repair his Class Vehicle.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

234.   Neither Toyota nor any of its agents, dealers, or other representatives informed Plaintiff Bowling of the existence and prevalence of the Defect prior to his purchase.

235.   Plaintiff Bowling has suffered an ascertainable loss as a result of Toyota's omissions and/or misrepresentations associated with the Defect, including, but not limited to, out-of-pocket losses, future repairs, and diminished value of his Class Vehicle.

236.   Had Plaintiff Bowling known of the Defect, he would not have paid for his Class Vehicle, or would have paid significantly less.

**Plaintiff Heidi Browder**

237.   Plaintiff Heidi Browder ("Plaintiff Browder") is a citizen of the state of Texas and currently resides in Burleson, Texas.

238.   In or about November 2015, Plaintiff Browder purchased a 2015 Toyota Avalon Hybrid from Family Toyota, an authorized Toyota dealer in Burleson, Texas. Her Class Vehicle bears the following VIN: 4T1BD1EB6FU045549.

239.   Plaintiff uses her Class Vehicle for personal, family, and/or household uses.

240.   On or about November 21, 2016, Plaintiff tried to start her Class Vehicle – which was parked in her garage, where she regularly parks her Class Vehicle – multiple times but the engine would not turn over and her Class Vehicle made no noise or sounds.  After Plaintiff and her husband were unable to start the car, Plaintiff Browder's husband lifted the hood of the car and observed a rodent scurry across the top of the engine.  They observed damage to the wires under the hood and took the following photograph:

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



19    241.    Plaintiff's husband contacted Family Toyota and they instructed him
20  to contact a roadside assistance company, which Plaintiff did. The roadside
21  assistance company came to Plaintiff's home and towed her Class Vehicle to Family
22  Toyota. The mileage on Plaintiff's Class Vehicle at the time of this service
23  appointment was 26,209 miles.

24    242.    A couple of hours later, a Family Toyota service technician named
25  Greg called Plaintiff to report that there was rodent damage to her Class Vehicle.
26  Greg instructed Plaintiff to contact her insurance company to see if they would cover
27  the rodent damage. Greg indicated that the damage would cost between $5,600 and
28  $6,000 to repair.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

243.    Plaintiff contacted her insurance carrier to make a claim, and her Class Vehicle was repaired under insurance; however Plaintiff was required to pay a $500 deductible.

244.    Plaintiff Browder later spoke to a service representative of Family Toyota named Richard. Plaintiff asked Richard if the rodent damage was covered under Toyota's Warranty and he simply said it was not covered because "any outside source of damage to the car" is not covered.

245.    Richard at Family Toyota also stated that rodent damage is "not uncommon" and that it "happens a lot" with Toyota vehicles. Family Toyota informed Plaintiff that she should purchase, at her own cost, a spray to deter rodent attacks.

246.    The damage caused to Plaintiff's Class Vehicles left her vehicle partially or completely inoperable.

247.    As a result of the damage to Plaintiff's wiring in her Class Vehicle, she was required to incur out-of-pocket expenses and lost use of her vehicle for a number of days.

248.    Prior to Plaintiff purchasing her Class Vehicle, neither Toyota nor any of its agents, dealers, or other representatives informed Plaintiff about how the soy- or bio-based insulated wiring encourages rodents, such as rats, squirrels, and other pests to chew the wiring.

249.    Despite Plaintiff's request, Toyota refused to provide Warranty coverage for the rodent damage to her Class Vehicle, which Toyota contends was not covered under the Warranty.

250.    To date, Toyota has failed to remedy the Defect in Plaintiff's Class Vehicle.

251.    Had Plaintiff known of the Defect, she would not have paid for her Class Vehicle, or would have paid significantly less.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

**N.     Washington Plaintiffs**

252.     Plaintiffs David and Heather Johns are a married couple and citizens of the state of Washington, and currently reside in Poulsbo, Washington.

253.     On or about February 21, 2016, Plaintiffs purchased a Toyota certified pre-owned 2014 Toyota 4Runner 4WD V6 Limited from Michael Toyota, an authorized Toyota dealer in Bellevue, Washington. Their Class Vehicle bears the following VIN: JTEBU5JR2E5153444.

254.     Plaintiffs use their Class Vehicle for personal, family, and/or household uses.

255.   Plaintiffs' Class Vehicle was accompanied by a Toyota Certified Used Vehicle Warranty. Toyota's Certified Used Vehicle Warranty "is an extension of the vehicle's original factor warranty" for 12 months or 12,000 miles.

256.     On or about October 9, 2016, Plaintiffs' Class Vehicle began vibrating aggressively when Plaintiffs attempted to start the vehicle. The check engine light had also illuminated on the Class Vehicle dashboard. Pursuant to the instructions in the Warranty manual, Plaintiffs contacted their Toyota dealership, and Toyota instructed Plaintiffs to have their Class Vehicle towed to the service station.

257.     Plaintiffs took their Class Vehicle to Heartland Toyota in Bremerton, Washington, where a service worker named Caesar informed that the damage was rodent-related and thus not covered under the Warranty. Specifically, Toyota found multiple wires that were damaged and chewed by rodents or other animals on both sides of the Class Vehicle's engine. Plaintiffs were forced to pay $750.03 out-of-pocket for repairs.

258.     On November 17, 2016, Plaintiffs attempted to start their Class Vehicle again and experienced the same vibrations. Toyota again instructed Plaintiffs to have their Class Vehicle towed to Heartland Toyota for inspection and service.  There, Toyota determined that there was rodent damage and once again

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

declined to fix the damage under the Warranty. A manager offered Plaintiffs a 10% discount on the repairs. During this service visit, Toyota also offered to buy back the Class Vehicle for less than what Plaintiffs owed on the vehicle, so Plaintiffs declined this offer. Plaintiffs were forced to pay $358.71 out-of-pocket for these repairs. The odometer reading at the time of this service was 24,964 miles.

259.    At the time Plaintiffs' Class Vehicle suffered wiring damage, the Class Vehicle was still within the Warranty.

260.    When Plaintiffs requested Warranty coverage, they were told that Toyota's Warranty does not cover rodent damage.

261.    Notably, when Plaintiffs returned to Heartland Toyota on December 13, 2016 to obtain copies of their repair documents, Toyota's employee named Caesar stated "since the last snow we have been flooded with customers that have had rodent damage to wiring." Caesar stated that this was a very common issue and that Toyota "would have been better off wrapping the wiring in carne asada." Caesar also stated that when Toyota started "using soy based wiring about 5 or 6 years ago," he and Toyota never expected that they would see so many separate instances of damage. Notably, while Plaintiffs were at the service station, a woman behind them in line for service was getting her fuel line and brake lines replaced because of rodent damage.

262.    The Toyota service station informed Plaintiffs that the service station has seen a large number of instances of rodent damage to Toyota automobile wiring. The tow truck company that towed Plaintiffs' Class Vehicle to Heartland Toyota even identified that Plaintiffs' Class Vehicle was the third Toyota they brought to the Toyota service station that week for the same problem.

263.    Plaintiffs have had to purchase and install a high-frequency noise-emitting device under the hood of their Class Vehicle in order to ward off further attacks.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

264.    The damage to Plaintiffs' Class Vehicle left their vehicle partially or completely inoperable.

265.    As a result of the damage to the wiring in Plaintiffs' Class Vehicle, Plaintiffs were forced to incur out-of-pocket expenses and lost functionality of their Class Vehicle.

266.    Neither Toyota nor any of its agents, dealers, or other representatives informed Plaintiffs prior to purchasing their Class Vehicle that the soy- or bio-based insulated wiring encourages rodents, such as rats, squirrels, and other animals or pests to chew the wiring.

267.    Despite Plaintiffs' request, Toyota refused to provide warranty coverage for the rodent damage to their Class Vehicle, which Toyota contends was not covered under its Warranties. Toyota knew or should have known of the aforesaid Defect at the time of sale, and it continues to have knowledge of the Defect and its breaches of its express Warranty. Yet, Toyota has intentionally failed to notify Plaintiffs and members of the Class about the Defect.

268.    To date, Toyota has failed to remedy and fully remove the Defect in Plaintiffs' Class Vehicle.

269.    Had Plaintiffs known of the Defect, they would not have paid for their Class Vehicle, or would have paid significantly less.

**O.    Defendants**

270.    Toyota Defendants are automobile design, manufacturing, distribution, and/or service corporations doing business within the United States. Furthermore, Toyota designs, develops, manufactures, distributes, markets, sells, leases, warrants, services, and repairs passenger vehicles including the Class Vehicles.

271.    Defendant Toyota Motor Corporation ("TMC") is a Japanese corporation.  TMC is the parent corporation of Toyota Motor Sales, U.S.A., Inc.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

TMC, through its various entities, designs, manufactures, markets, distributes and sells Toyota automobiles at numerous other locations across the United States.

272. Defendant Toyota Motor Sales, U.S.A., Inc. ("TMS") is incorporated and headquartered in California. TMS is TMC's United States sales and marketing division, which oversees sales and other operations across the United States. TMS distributes Toyota vehicles and sells these vehicles through its network of dealers that are agents of TMS and TMC. Money received from the purchase of Toyota vehicles from dealerships flows from dealers to TMS.

273. At all relevant times, a unity of ownership exists and has existed between TMS, TMC, and their agents such that any individuality or separateness between them has ceased and each of them is the alter ego of the others.

274. Upon information and belief, TMC communicates with TMS concerning virtually all aspects of the Toyota products it distributes within the United States.

275. Upon information and belief, the design, manufacture, distribution, service, repair, modification, installation of and decisions regarding the soy-covered or soy-/bio-based components and parts within the Class Vehicles were performed exclusively by TMS and TMC.

276. TMS and TMC are collectively referred to in this Complaint as "Toyota" or "Defendant" unless identified separately.

277. Toyota engages in continuous and substantial business in California. Defendant TMC is headquartered in Torrance, California.

278. Each of defendant DOES 1 through 10 is the agent, servant, partner, joint-venturer, co-venturer, principal, director, officer, manager, employee or shareholder of one or more of its codefendants who aided, abetted, controlled, and directed or conspired with and acted in furtherance of said conspiracy with one or more of its co-defendants in said codefendants performance of the acts and

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

omissions described herein. Plaintiffs sue each of these DOE defendants by these fictitious names because Plaintiffs do not know these defendants' true names and capacities at this time.

279.     Plaintiffs allege that at all times mentioned herein, each Defendant was acting as an agent and/or employee of each of the other Defendants, and at all times mentioned was acting within the course and scope of said agency and/or employment with the full knowledge, permission, and consent of the other Defendant.  In addition, each of the acts and/or omissions of each Defendant alleged herein were made known to, and ratified by, the other Defendant.

## IV.   FACTUAL ALLEGATIONS

### A.   The Defective Soy-/Bio-Based Materials within Class Vehicles

280.     Electrical wiring is ubiquitous in modern automobiles. A vehicle's electrical wiring connects the various critical, and non-critical, vehicle systems. The wire creates circuits that must stay intact in order for the vehicle to function as intended.

281.     Electrical systems in an automobile deliver and monitor electrical power to various devices and sensors in the vehicle. An automobile's electrical system is complex and is made up of many different components. The battery is the center of and powers the electrical system. The electrical system is made up of a web of connected wires, fuses, and relay systems. This wiring carries the current supplied by the car battery and directs it to various vehicle components. When an electrical component in an automobile is not working correctly, it is often caused by an open circuit, which can result from a broken or compromised wire or wire connection. When this occurs, vehicle functions that are imperative to safe vehicle operation – *e.g.* headlights, brake lights, windshield wipers, defrosters – may not work properly. This is because when electrical wiring is disconnected or compromised, circuits are broken causing systems to partially or completely fail.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

282.    Historically, automobile wiring was coated or covered with a glass, plastic or polymer-based insulation. However, over approximately the past decade, and especially in light of skyrocketing oil prices in the mid- to late-2000s, there has been a dramatic downshifting in automotive manufacturing which has spurred automobile manufacturers to explore new materials to decrease cost and make more parts recyclable. As a result, upon information and belief, Toyota and other automobile manufacturers migrated from petroleum-based wire insulation to a plant-, soy-, or other bio-based automobiles parts because it became considerably less expensive and is purportedly more environmentally-friendly, as it is biodegradable.

283.    The use of these bio-based materials in automobile manufacturing was recognized in a 2012 investigation by the United States Department of Agriculture, which specifically identified that many automobile manufacturers use soy- or bio-based materials in the manufacturing process.[2]

284.    Indeed, Toyota acknowledges that it uses bio-based materials or plastics in manufacturing Toyota automobiles.  Toyota website states: "We have been using bio-based plastics—plastics derived either wholly or in part from plant materials—in numerous parts and components for over a decade."[3]

285.    Wiring insulation is an imperative line of defense to protect the integrity of electrical wiring in automobile electrical systems.  But Toyota made the decision to incorporate in its wiring insulation and/or coatings (and other parts in Class Vehicles) soy- or bio-based material – which invite, rather than protect

---

[2] United States Department of Agriculture, *Biobased Automobile Parts Investigation, A report developed for the USDA Offices of Energy Policy and New Uses* (Sept. 2012), available at https://www.usda.gov/oce/reports/energy/Biobased%20Automobile%20Parts%20Investigation%20Report.pdf (last visited March 21, 2017).
[3] http://www.toyota.com/usa/environmentreport2012/green_innovation.html (last visited March 20, 2017).

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

against, electrical wiring issues and concerns, as set forth herein – and it did so not in the name of "going green" but rather in the name of profit and cost-cutting.

286.     Irrespective of Toyota's business justifications, the transition to soy- or bio-based wiring parts and other parts has created a bed and breakfast for rodents and other animals and pests under the hoods of Class Vehicles at the expense of Class members. Rodents and other animals are attracted to the soy- and bio-based materials in Class Vehicles, whether it is in the electrical wiring and wiring parts, seat cushion foam, air filters, or elsewhere in the Class Vehicles.

287.     The inclusion of these materials, especially in Class Vehicle electrical wiring and wiring components, attracts rodents and other animals that nest under the hoods of Class Vehicles and feast on the wires, thereby compromising the integrity of Class Vehicle electrical systems and rendering Class Vehicles fully or partially inoperable. Automobile electrical wiring does not have to be entirely chewed through to jeopardize the functionality of the wiring system: rather, mere exposure of the wires can make a vehicle unfit for use.

288.     The image below depicts substantial rodent damage to the main engine wiring harness in a 2014 Toyota 4Runner, which purportedly caused $5,500 in damage:[4]

---

[4] http://www.synlube.com/IncredibleEdibleCar1.htm (last visited Nov. 29, 2016).

PLAINTIFFS' THIRD AMENDED
                                                                    CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11



12   289.   The safety concerns raised by wiring damage (such as that depicted

13   above) and failures in automobile electrical systems are obvious, and Toyota's

14   continued use of soy- or bio-based materials, including wiring insulation and/or

15   wiring coatings, poses a legitimate threat to the safety of Plaintiffs, Class members,

16   prospective purchasers or lessees of Class Vehicles, and other drivers on the road.

17   290.   As the image above makes clear, soy- or bio-based wiring is not

18   suitable for its intended purpose – to protect vehicle wiring and circuitry in order to

19   keep vehicles operational and safe.

20   291.   Regardless of the precise composition of the materials used in Class

21   Vehicle wiring or wiring insulation, under the circumstances alleged herein – where

22   numerous consumers are routinely experiencing significant rodent/animal damage

23   to relatively new Class Vehicles through no fault of their own – Toyota should (a)

24   disclose this issue to prospective purchasers and lessees; (b) should not be excluding

25   repairs for rodent/animal related damage from coverage under the terms of Toyota's

26   Warranty; and (c) Toyota should be taking appropriate measures to modify the areas

27   surrounding the wires in such a way to prevent the ongoing intrusion from rodents

28

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

(such as, for example, incorporating rodent-deterrent materials, coatings, devices, meshes, etc.).

**B.    Toyota's Knowledge of the Defect**

292.    Toyota was aware or should have been aware of the Defect in Class Vehicles through (1) its own records of customers' complaints; (2) dealership repair records; (3) NHTSA records; (4) warranty and post-warranty claims; (5) internal durability testing; and (6) other various sources. Despite its knowledge, Toyota failed to notify consumers of the nature and extent of the Defect and/or provide any adequate remedy under the Warranty.

293.    Toyota is also aware or should have been aware of the Defect, because its agents, dealers, or other representatives routinely and consistently refuse to provide Warranty coverage for damage to Class Vehicles resulting from the Defect. Instead, Toyota, through its agents, dealers, or other representatives, compels consumers to either pay for repairs out-of-pocket or to make an insurance claim and pay an expensive deductible.

294.    Furthermore, the defective nature of the wiring has been widely publicized and known within the automotive industry generally and to Toyota specifically.

295.    A number of news stations across the United States have done consumer interest stories on soy or bio-based wiring in automobiles, reporting on how the inclusion of these materials or ingredients in automobiles attracts pests that cause extensive damage. One news media outlet that claims to be leading a nationwide investigation into this very issue reports (among other findings) the following:

> Many new vehicles now use wiring that has a soy-based coating, which is better for the environment and cheaper

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

to make than the traditional kind. But apparently, rodents love to gnaw on it, which can cause major electrical problems.[5]

296.    An investigator from that news station reported that he contacted Toyota about the soy wiring issue, to which a representative of Toyota – Amanda Rice, a Business Communications Specialist at Toyota Motor Sales, U.S.A., Inc. – responded by denying that a problem existed, stating that, "Rodent damage to vehicle wiring occurs across the industry and the issue is not brand- or model-specific.  We are not aware of any confirmed connection between wiring materials and rodent damage."[6]

297.    Consumer media websites have also tracked the propensity of soy-/bio-based wiring insulation and coatings to attract animals and result in damage.[7] Honda – one of Toyota's primary competitors – is supposedly "convinced" that there is a problem with its own insulation and reportedly made plans to introduce a spicy chemical to its wiring to stop rodents from eating it.[8]

_____

[5]  Jason Stoogenke, Action 9 leads national investigation into rodents chewing on vehicle wires, WSOCTV, Jun. 3, 2016, http://www.wsoctv.com/news/9-investigates/rodents-chewing-on-vehicle-wiring/235719735 (last visited Nov. 29, 2016).

[6] See id., embedded video, at 2:13.

[7] See, e.g., Jenn Strathman, Mechanics Say Soy In Car Wiring Attracts Munching Mice, So Honda Created A Solution, WPTV, Nov. 6, 2013, http://www.wptv.com/money/consumer/mechanics-say-soy-in-car-wiring-attracts-munching-mice-so-toyota-created-a-solution (last visited Nov. 29, 2016) (a Toyota Tundra purchaser experienced engine trouble due to rodent eating his wires); Jason Stoogenke, Action 9 Leads National Investigation Into Rodents Chewing On Vehicle Wires, WSOTV, updated June 3, 2016, http://www.wsoctv.com/web/wsoc/news/9-investigates/rodents-chewing-on-vehicle-wiring/235719735 (last visited  Nov. 29, 2016) (recounting the story of a purchaser of a brand new Toyota Camry who could not turn on her engine because rodents ate the soy wiring in her vehicle).

[8] Tim Esterdahl, Mice Eat Toyota Tundra Wires – True Story, Nov. 8, 2013, http://www.tundraheadquarters.com/blog/mice-eat-wires/  (last  visited  Nov. 29, 2016).

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

298. Upon information and belief, Honda has also introduced its own proprietary rodent tape (depicted below) which discourages or repels rodent attacks:



299. Unlike Honda, Toyota has not acknowledged that this issue plagues Class Vehicles and has done nothing to attempt to eliminate the problem. As it stands, Toyota has turned this Defect into another source of income for itself and its dealers by charging Class Vehicle owners and lessees for repairs (or charging for purchase and installation of repellants, traps, and other preventive measures) to deal with the adverse consequences of the Defect that Toyota should, itself, be covering under the Warranty.

300. Toyota has evaded and continues to evade its Warranty obligations by failing to tell consumers that their Class Vehicles are defective and by claiming that the susceptibility to rodent damage is "environmental" and not a result of the Defect which requires Warranty repairs or replacements.

301. However, as the consumer complaints below demonstrate, environmental conditions are not the root cause of the Defect – rather, upon information and belief, the environmentally-friendly and less expensive soy- or bio-based materials are the problem. While Class Vehicles are essentially being attacked by rodents and other animals, older vehicles manufactured without these

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

materials that are exposed to similar conditions do not experience rodent-caused damage.

302.    The prevalence of complaints across the country from Toyota lessees and owners and the high volume of media and consumer watchdog coverage of this issue highlight that Toyota knows or should have known of the Defect.

303.    Toyota has known (or it should have known) that soy-/bio-based materials, including wiring insulation and coating, attract rodents and other pests that damage Class Vehicles. In fact, employees at Toyota dealerships routinely inform consumers that rodent damage is very common, and have even acknowledged that it is the bio-based or soy-based materials in the automobiles that are attracting these pests. Yet, notwithstanding its knowledge of the Defect, Toyota consistently refuses to repair the Class Vehicles under the Warranty when the Defect manifests.

## C.    Toyota's New Vehicle Limited Warranty

304.    Despite Toyota's knowledge of the Defect, it refuses to honor its Warranty, which provides: "This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota, subject to the exceptions indicated under 'What Is Not Covered' . . . ." *See*, *e.g.* 2016 Toyota Corolla Warranty and Maintenance Guide, at p. 13, attached hereto as **Exhibit "A."[9]** Thus, the Warranty covers *any* defect unless the defect is listed as an exception.

305.    The Warranty exceptions, however, are not applicable to the Defect. The exceptions to the Warranty include: tires, normal wear and tear, maintenance expense, vehicles with altered odometers, salvage or total-loss vehicles, and incidental damages. *See* Ex. A, at p. 14-15. Toyota routinely cites to the "other

---

[9] The Warranty manuals accompany the sale and lease of Class Vehicles are substantially the same. Accordingly, Plaintiffs have not attached each of their Warranties as exhibits hereto.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

environmental conditions" exception in its Warranty to deny coverage for the Defect repairs. The Warranty specifically excludes damage from "[a]irborne chemicals, tree sap, road debris (including stone chips), rail dust, hail, floods, wind storms, lightning and other environmental conditions"; however, Toyota's voluntary inclusion of bio-based or soy-based materials in Class Vehicles does not constitute an environmental condition.

306.    Soy- or bio-based insulated wiring and wiring components are not an "environmental condition." Unlike the other environmental exclusions under the Warranty for conditions or occurrences that naturally exist or occur in the environment, Toyota created this problem by including soy materials in the manufacturing process for Class Vehicles. Thus, the Defect is not an independent environmental issue; rather, the Defect is the inclusion of soy-based materials in Class Vehicles and the intrinsic nature of the soy-based materials to attract rodents, and the Defect exists in Class Vehicles at the time of manufacturing and when Class Vehicles leave manufacturing locations.

307.    Furthermore, the Warranty does not expressly or impliedly disclaim Warranty coverage for rodent or other animal damage in Plaintiffs' Class Vehicles and the same is true for the Warranties that cover all Class Vehicles. If Toyota wanted to exclude rodent damage from Warranty coverage, it could have done so, just as it did for, *e.g.* tree sap damage. But Toyota did not exclude this damage. Toyota cannot now rely on the "other environmental conditions" language in its Warranty exclusions – language which clearly relates to and was intended to relate to other *weather- and climate-related* conditions that are not explicitly identified in that section (whereas hail, flood, wind, storms, lightning, etc., are identified) – to escape its Warranty obligations to consumers.

308.    Notwithstanding its obligation under its Warranties, Toyota has repeatedly denied Warranty coverage to Plaintiffs and Class members for Defect-

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

related damage. Toyota routinely informs consumers, *inter alia*, that rodent damage is an environmental condition that is not covered under the Warranty. Toyota is deflecting its obligations under the Warranty by labeling the Defect – which Toyota has knowledge of or should have knowledge of – as something it is not. Toyota has refused to cover the costs of repairs due to a problem that Toyota, alone, created. Thus, Plaintiffs and Class members were and are forced to pay out of pocket for repairs and services (and other out of pockets) that should have been covered under Toyota's Warranty.

**D.      Similar Experiences and Complaints by Consumers**

309.    Plaintiffs' experiences are by no means isolated or outlying occurrences.  Indeed, the Internet is replete with examples from blogs and other websites where Toyota consumers have complained of rodents chewing through their Class Vehicles' wiring insulation, sometimes on multiple occasions.

310.    For example:

- From May 3, 2013, user HauKrazee posted on http://www.toyota-4runner.org/5th-gen-t4rs/141251-broken-2010-4runner-rodents.html#post1371287, (last visited on July 27, 2016):

---

**Broken 4Runner - Rodents**

Alright, two days ago I come home from the store and my 4Runner was parked for less than 2 hours at my parents home. It was snowing after a day of 70 degree weather. I go outside and 4Runner starts up, but idles very rough as if the engine was constantly misfiring. I leave my car there overnight and call the tow truck in the morning.

When the tow truck arrives in the morning, I try and start the 4Runner and move it for the tow truck... the engine fails and shuts off as black smoke comes out of the exhaust... the 4Runner dies. The tow truck takes it to the nearest dealership because I thought at the time it was something wrong that could have been covered under warranty since it is still under 36 months or 30,000 miles.

The dealership checks it out and approx 4 wires have been chewed up by some rodent (Pictures attached)... not covered under warranty.

---

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT



- From March 3, 2012, user ChristyMcCool posted on http://www.customtacos.com/forum/22-off-topic/155429-squirrels-rats-chewing-tacoma-wiring.html, (last visited on July 27, 2016):

**Squirrels & rats chewing Tacoma wiring!**

The entire wiring harness on my Toyota Tacoma has been replaced twice in the last month from squirrels chewing up the wiring. The cost is enormous--$3400 each time. Insurance covered it both times, but said they wouldn't a third time.

311.    Complaints on the NHTSA website reveals that many consumers have experienced wire damage as a result of rodents and other animals chewing the wiring in multiple Toyota models.

312.    The consumer complaints to NHTSA are evidence of a widespread problem. Representative examples of complaints on the NHTSA website regarding the Class Vehicles are included below (with emphasis supplied in capitalized bold, underlined letters):[10]

---

[10] The foregoing complaints are reproduced as they appear on the NHTSA website. Any typographical errors are attributable to the original authors of the complaints.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

1

2
**Date of Incident:** 06/02/2016
**Date Complaint Filed:** 06/05/2016
3
**NHTSA/ODI ID:** 10872591
4
**Model:** 2015 Tacoma
5    SUMMARY:
     MY TRUCK WAS RECENTLY DAMAGED FROM RODENTS, THEY
6    BUILT A NEST BY ENGINE AND CHEWED WIRES. AFTER FURTHER
     RESEARCH I FOUND THAT AUTO MANUFACTURERS IN ORDER TO
7    GO GREEN ARE USING SOY BASED PRODUCTS ON WIRES
     INSTEAD OF PETROLEUM. THEY ARE USING SUGAR IN THERE
8    PLASTICS. RICE HUSKS IN THERE INTERIORS. ALL THIS STUFF
9    ATTRACTS RODENTS. THIS IS UNACCEPTABLE! **MY DEALERSHIP**
     **SAID THEY ARE SEEING AT LEAST 2 RODENT DAMAGED**
10   **VEHICLES A WEEK.** MY TRUCK IS DRIVEN DAILY AND SITS NO
     LONGER THAN 8 HOURS. **THE TOTAL DAMAGE ON A BRAND**
11   **NEW TRUCK WITH EXTENDED WARRANTY WAS 2700 OUT OF**
12   **POCKET, THIS DAMAGE WAS NO COVERED BY WARRANTY.**

13

14
**Date of Incident:** 04/17/16
15
**Date Complaint Filed:** 04/17/2016
16   **NHTSA/ODI ID:** 10859964
     **Model:** 2012 4Runner
17      SUMMARY:
18      SQUIRRELS KEEP EATING MY ELECTRICAL WIRING AND THE
        WIRING HARNESS. THEY ACCESS THE ENGINE BAY THROUGH
19      THE OPENINGS IN THE WHEEL WELLS AFTER JUMPING ON TOP
        OF THE TIRES. THE RESULTS HAVE DISABLED MY ABS, 4WD,
20      LIMITED SLIP, ETC. **I'VE TRIED RODENT REPELLENT, FOX**
21      **URINE, AND PARKING IN THE GARAGE. NOTHING HELPS.**
        TOYOTA NEEDS TO STOP USING SOY BASED WIRING, AND THEY
22      NEED TO CLOSE THE HOLES IN THE WHEEL WELLS.
23

24
**Date of Incident:** 3/01/2016
25
**Date Complaint Filed:** 03/03/2016
26   **NHTSA/ODI ID:** 10839755
     **Model:** 2014 FJ Cruiser
27      SUMMARY:

28

PLAINTIFFS' THIRD AMENDED
                                               CLASS ACTION COMPLAINT

KNOWN PROBLEM BY MANUFACTURERS. **EXTREME DAMAGE TO WIRING HARNESS AND COMPONENTS WITHIN ENGINE COMPARTMENT BY RODENT.** VEHICLE HAS 13,837 MILES ONLY. NEW WIRING STANDARDS REPORTEDLY DRAW RODENTS AND/OR INCREASE AMOUNT OF DAMAGE TO VEHICLE SYSTEMS. VEHICLE WAS PARKED LESS THAN 7 HOURS AND WHEN TURNED IGNITION TO VEHICLE, INSTRUMENT PANEL ILLUMINATED EVERY SAFETY WARNING TO INCLUDE ENGINE LIGHT FLASHING. ENGINE SPUTTERED AND REQUIRED TOW. **INSURANCE COMPANY REPORTS HIGH NUMBER OF CLAIMS ESPECIALLY RELATED TO NEWER CARS WITH WIRING. DAMAGE TO WIRING IF DRIVEN COULD CAUSE VEHICLE SYSTEMS TO FAIL, FIRE AND COULD CAUSE GRAVE RISK OF INJURY OR DEATH TO OPERATOR AND PASSENGERS. MANUFACTURER DOES NOT COVER IN WARRANTY NOR PROVIDES PREVENTIVE REMEDY TO ISSUE.**

**Date of Incident:** 10/30/2015
**Date Complaint Filed:** 10/30/2015
**NHTSA/ODI ID:** 10787185
**Model:** 2012 Sienna
    SUMMARY:
ALL UNDERWOOD COMPONENTS ARE NOT ONLY VULNERABLE, BUT ATTRACTIVE TO RODENTS. WHILE PARKED OVERNIGHT **ON 4 CONSECUTIVE NIGHTS, RODENTS HAVE CHEWED THROUGH WIRES DESPITE ATTRACTIVE RODENT POISON IN THE ENGINE BAY, THE POISON IS UNTOUCHED AND THE WIRES ARE ATTACKED EVERY NIGHT.** TO DATE INJECTOR WIRES, SENSOR SIRES, FUEL PUMP WIRES HAVE BEEN COMPROMISED, INCLUDING SENSORS FOR THE STABILITY CONTROL SYSTEM, WHICH IS DISABLED. **I REPAIRED DAMAGE BY RUNNING NEW WIRES, CLEARING NESTS AND SET TRAPS AND POISON, BUT NOW THE THE FUEL SYSTEM HAS BEEN ATTACKED AND THE FUEL PUMP DOES NOT ACTIVATE. 3 OTHER CARS PARKED IN THE SAME LOCATION FOR THE PAST 5 MONTHS ARE UNTOUCHED. SAFETY SYSTEMS ARE LIKELY TO BE COMPROMISED FOR ANY PERSON WHO MUST PARK THESE OUTDOORS.**

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

**Date of Incident:** 10/26/2015
**Date Complaint Filed:** 10/27/2015
**NHTSA/ODI ID:** 10786504
**Model:** 2014 Rav4
    SUMMARY:
    THE ELECTRICAL WIRING WAS EATEN BY A RODENT. THE
RODENT MADE A NEST IN THE ENGINE AREA AFTER EATING THE
WIRES. **THE REPAIR OF THE VEHICLE IS COSTING US $1510
PLUS A RENTAL CAR.**


**Date of Incident:** 09/30/2015
**Date Complaint Filed:** 10/05/2015
**NHTSA/ODI ID:** 10779880
**Model:** 2015 Rav4
    SUMMARY:
    **AFTER 10 DAYS OF OWNING THE CAR AND LESS THAN 600
MILES THE CAR WOULDN'T RUN AND WE HAD TO HAVE IT
TOWED TO THE DEALERSHIP.** THEY SAID IT WAS **NOT UNDER
WARRANTY** AND THAT **THE DAMAGE WAS CAUSED BY A
RODENT.** LATER THAT SAME EVENING OUR SALESMAN CALLED
AND INFORMED US THAT COMPONENTS IN THE CAR ARE
"GREEN" AND MADE OF SOYBEAN AND TO KEEP OUR CAR IN
THE GARAGE (WHICH WE DON'T HAVE). I HAVE SINCE CAUGHT A
MOUSE UNDER THE HOOD OF THE VEHICLE WITH A GLUE TRAP
AND FOUND HAIR AND MOUSE DROPPINGS. THE BEST OFFER
THEY HAVE GIVEN ME IS TO GIVE ME A DIFFERENT TOYOTA
VEHICLE AT COST (AND TAKE THE LOSS ON MY CURRENT
VEHICLE). I HAVE COMPLAINED TO BOTH THE DEALERSHIP AND
TO TOYOTA. **I HAVE HAD TWO OTHER VEHICLES PARKED IN
WITHIN THE SAME PROXIMITY FOR OVER TWO YEARS. I
HAVE NEVER HAD RODENT ISSUES WITH EITHER OF THEM
AND I RUN INTO ISSUES WITHIN THE FIRST 10 DAYS WITH A
NEW VEHICLE. I AM CONCERNED FOR THE SAFETY OF MY
WIFE AND TWO YEAR OLD CHILD.** IF THERE ARE MICE LIVING
INSIDE THE CAR, THEY COULD BE LEAVING RAT DROPPINGS
THAT COULD BE HARMFUL TO BOTH OF THEM. I AM ANGRY AND
CONCERNED AND DON'T UNDERSTAND WHY, WHEN OTHER
VEHICLES PARKED IN THE SAME LOCATION AREN'T
EXPERIENCING THE SAME PROBLEM, THIS ISN'T A VALID
REASON TO RETURN THE CAR. HERE ARE TWO ARTICLES THAT

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

DETAIL THE PROBLEM MYSELF AND OTHER TOYOTA OWNERS HAVE HAD - HTTP://CTWATCHDOG.COM/FINANCE/RODENTS-DAMAGE-CARS-BY-CHEWING-ELECTRICAL-CONNECTIONS-TIPS-ON-HOW-TO-AVOID-COSTLY-REPAIRS, HTTP://WWW.SYNLUBE.COM/INCREDIBLEEDIBLECAR1.HTM

**Date of Incident:** 09/04/2015
**Date Complaint Filed:** 09/13/2015
**NHTSA/ODI ID:** 10763422
**Model:** 2015 4Runner
    **SUMMARY:**
RODENT CHEWED THROUGH INJECTOR 3 WIRE. 4 DAYS LATER, AFTER I PAID FOR THE FIRST REPAIR...SEVERAL OTHER WIRES WERE CHEWED THROUGH. THE PREVIOUS CONNECTOR REPAIRED WITH "RODENT DETERRENT TAPE" WAS NOT DAMAGED.

**Date of Incident:** 03/12/2015
**Date Complaint Filed:** 03/14/2015
**NHTSA ID/ODI:** 10694252
**Model:** 2011 Tundra
    **SUMMARY:**
MY VEHICLE FIRST HAD ITS WIRING HARNESS DESTROYED BY A RODENT OF SOME SORT A COUPLE OF WEEKS AGO. AFTER SENDING IT TO THE REPAIR SHOP AND **$7000 DOLLARS LATER**, I BROUGHT MY TRUCK HOME AND EVERYTHING WORKED FINE. I TRIED MANY REMEDIES TO DISCOURAGE THE RODENTS FROM RETURNING BUT NOTHING SEEMS TO DETER THEM FROM THE SOY BASED INSULATION ON MY TRUCKS WIRING HARNESS. **I NOW HAVE TO SEND MY TRUCK BACK FOR REPAIRS TO THE SAME WIRING HARNESS ($7000) AS BEFORE**, AND ALSO ANOTHER WIRING HARNESS WHICH WILL PROBABLY COST CLOSE TO THE SAME. HOW CAN TOYOTA GET AWAY WITH MAKING INSULATION OUT OF RODENT FOOD WHEN THESE WIRES OPERATE THE ABS BRAKING SYSTEM? **THIS PRACTICE NOT ONLY PUTS A FINANCIAL BURDEN ON THE OWNER BUT ALSO COMPROMISES THEIR SAFETY**. *TR

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

**Date of Incident:** 11/07/2012
**Date Complaint Filed:** 11/08/2012
**NHTSA/ODI ID:** 10483685
**Model:** 2010 Prius
   SUMMARY:
   2010 TOYOTA PRIUS AT DEALERSHIP FOR 25000 MILE SERVICE.
   ON 11/07/2012 AT 1700 THE **DEALERSHIP CALLED AND
   REPORTED THAT THE CAR IS "INFESTED WITH RODENTS."**
   STATED THAT HEADLINER IS SATURATED WITH URINE/ FECES,
   AIR AND CABIN AIR FILTERS DESTROYED, WIRES CHEWED,
   RODENTS FOUND TO BE LIVING IN DASHBOARD, IN DOOR
   INTERIORS, AND OTHER AREAS. REPORTED THAT THIS WAS
   "THE WORST CASE WE'VE SEEN." CAR IS OWNED BY TWO
   PROFESSIONALS- NO CHILDREN WHO WOULD HAVE DROPPED
   FOOD AND NO FOOD EVER EATEN IN VEHICLE. PURCHASED NEW
   FROM THIS SAME DEALERSHIP 01/02/2011. **DEALERSHIP NOW
   REPORTS THAT THE CAR IS A HEALTH/ SAFETY HAZARD AND
   COULD COST "THOUSANDS" TO REPAIR**. OUR INTERNET
   RESEARCH REVEALED THAT RODENT INFESTATION IS COMMON
   IN THE TOYOTA PRIUS, REPORTEDLY BECAUSE RODENTS ARE
   ABLE TO GAIN EASY ACCESS THROUGH THE CAR'S
   VENTILATION SYSTEM. OWNERS REPORTED CONTACTING
   TOYOTA, WHO DENIED LIABILITY AND DENIED REQUEST FOR
   ASSISTANCE. *TR


**Date of Incident:** 08/24/2012
**Date Complaint Filed:** 04/30/2013
**NHTSA/ODI ID:** 10510017
**Model:** 2012 Prius V
   SUMMARY:
   I AM FILING A CLAIM TO NOTIFY OTHER CONSUMERS ABOUT AN
   ONGOING ISSUE I'VE EXPERIENCED WITH MY 2012 TOYOTA
   PRIUS V. WE PURCHASED THE CAR IN JANUARY 2012 AND **SINCE
   THEN WE'VE HAD 3 INCIDENTS (THAT WE KNOW OF) IN
   WHICH RODENTS HAVE INFESTED OUR VEHICLE**. . THE FIRST
   INCIDENT OCCURRED (AUGUST 2012), WE BROUGHT IT TO THE
   DEALERS ATTENTION AND WERE TOLD THERE WAS NOTHING
   THEY COULD DO BUT WE COULD CONTACT TOYOTA
   HEADQUARTERS. THE DEALER DETERMINED THAT THE RODENT
   HAD CLIMBED IN TO THE REAR OF THE VEHICLE THROUGH AN

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

AIR VENT, AND CHEWED THE WIRES OF THE REAR HARNESS SYSTEM (THE WIRING SYSTEM THAT AFFECTS THE HYBRID TECHNOLOGY). THE ESTIMATED REPAIR WAS $2 - 3K. AFTER CONTACTING TOYOTA HEADQUARTERS, I WAS TOLD TOYOTA DOES NOT CONSIDER THIS TO BE A DEFECT IN THE DESIGN OF THE CAR OR A SAFETY ISSUE. **I WAS TOLD IT WAS AN ENVIRONMENTAL ISSUE AND I NEEDED TO DO SOMETHING TO CORRECT MY SURROUNDINGS.** THEY ADVISED THAT I OPEN A CLAIM WITH MY INSURANCE PROVIDER TO COVER THE COSTS FOR THE REAR HARNESS WIRING DAMAGE. AFTER RESEARCHING THIS, IT APPEARS THERE ARE 6 OPENINGS/GAPS WITHIN THE VEHICLE THAT RATS CAN GET INTO TO ACCESS THE INTERIOR CABIN. **NEITHER TOYOTA OR THE DEALERSHIP OFFERED TO BLOCK/COVER THESE VENTS TO PREVENT ANY FUTURE ATTEMPTS BY A RODENT GETTING IN. THEY DIDN'T OFFER ANY SUGGESTIONS OR ADVICE AS TO WHAT I SHOULD DO TO PREVENT THIS.** THIS MORNING (APRIL 27, 2013) WE WOKE UP AND REALIZED THE RODENTS HAD ENTERED THE VEHICLE AGAIN, THIS TIME CHEWING UP MY CHILD'S CAR SEAT AND THE LEATHER OF THE REAR SEATS. THERE ARE NUMEROUS PEOPLE THAT HAVE EXPERIENCED THIS ISSUE DATING BACK TO 2007 AND YET TOYOTA HAS DONE NOTHING TO REPAIR THIS DESIGN/SAFETY FLAW. FOLLOWING IS A LINK TO A PRIUS FORUM WHERE PRIUS OWNERS COMPLAIN OF THIS ISSUE: HTTP://PRIUSCHAT.COM/THREADS/TOYOTA-CLAIMS-NOT-AWARE-OF-MOUSE-PROBLEM.113690/ . *TR

**Date of Incident:** 08/21/2013
**Date Complaint Filed:** 05/19/2014
**NHTSA/ODI ID:** 10592353
**Model:** 2012 Camry Hybrid
SUMMARY:
NO MATTER WHERE I PARK RODENTS ARE FINDING WAYS TO GET INTO MY CAR. I DO NOT KEEP FOOD IN THE CAR AND I HAVE DONE SEVERAL DIFFERENT THINGS TO PREVENT THEM GETTING IN. INCLUDING MOVING MY CAR AROUND TO PLACES OTHER THAN MY DESIGNATED COVERED PARKING SPOT. MY DEALER HAS TOLD ME TO PISS OFF. AS HAS TOYOTA, BUT IT WOULD APPEAR THAT TOYOTA SWITCHED OVER TO MORE ENVIRONMENTALLY FRIENDLY INSULATION MATERIALS IN

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

RECENT YEARS. I PURCHASED THIS 2012 TOYOTA CAMRY BRAND NEW. THIS HAS BEEN GOING ON FOR TWO YEARS NOW AND IT WOULD APPEAR I'M NOT THE ONLY PERSON EXPERIENCING THIS AS IS APPARENT FROM THE LINKS BELOW. I HAVE EXTENSIVE PICTURES OF WHAT HAS HAPPENED TO MY CAR. **THIS ALSO HASN'T BEEN AN ISSUE FOR ANY OF THE OTHER VEHICLES IN MY PARKING LOT AND MY PREVIOUS CAR WAS PARKED THERE FOR YEARS WITHOUT ISSUE (A DIFFERENT MANUFACTURER). I ALSO PARK OUR OLDER TOYOTA MATRIX (2003) AND TOYOTA MR2 SPYDER (2000) IN THAT SPOT AND I HAVE NOT HAD ANY ISSUES WITH EITHER VEHICLE.** I BELIEVE OUR OLDER TOYOTA MODELS HAVE VERY DIFFERENT MATERIALS THAT AREN'T AS ATTRACTIVE TO RODENTS. I FIRMLY BELIEVE THIS HAS TO DO WITH TOYOTA'S MOVE TO MORE ENVIRONMENTALLY FRIENDLY MATERIALS. JUST TONIGHT I FINALLY HAVE HAD ENOUGH BECAUSE THESE CREATURES CHEWED INTO MY TRUNK AND WERE CHEWING UP THE MATERIALS IN MY TRUNK NEAR THE HYBRID BATTERY. **I'M PARKED IN A COMPLETELY DIFFERENT AREA AND IT'S STILL HAPPENING.** THIS ISN'T A COINCIDE! **I HAVE SOME SERIOUS HEALTH AND SAFETY CONCERNS HERE.** I WAS READING ABOUT ANOTHER OWNER THAT HAD RODENTS GET INTO THEIR NEW TOYOTA PRIUS THAT ATE THE PASSENGER AIRBAG AND DID OVER $10,000 IN DAMAGES! THIS NEEDS TO BE INVESTIGATED ASAP. HTTP://WWW.TOYOTANATION.COM/FORUM/152-VENZA-FORUM/359615-RODENT-PATROL-AGAINST-DAMAGE.HTML HTTP://PRIUSCHAT.COM/THREADS/TOYOTA-CLAIMS-NOT-AWARE-OF-MOUSE-PROBLEM.113690/PAGE-2#IXZZ32AWYYLOL *JS

## V.   CLASS ACTION ALLEGATIONS

313.    Plaintiffs bring this lawsuit on behalf of themselves and all similarly situated individuals and entities, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2) and 23(b)(3).  Specifically, the nationwide class (the "Nationwide Class") consists of:

**Nationwide Class:**

All persons or entities who (a) currently own or lease a Class Vehicle with soy- or bio-based wiring; and/or (b) previously owned or leased a Class Vehicle with soy- or bio-based wiring and can be identified as having incurred out-of-pocket expenses related to the soy- or bio-based wiring defect.

314.   In the alternative to the Nationwide Class, and pursuant to Federal Rule of Civil Procedure 23(c), Plaintiffs seek to represent the following state sub-classes only in the event that the Court declines to certify the Nationwide Class above:

**California Sub-Class:**

All persons or entities in California who (a) currently own or lease a Class Vehicle with soy- or bio-based wiring; and/or (b) previously owned or leased a Class Vehicle with soy- or bio-based wiring and can be identified as having incurred out-of-pocket expenses related to the soy- or bio-based wiring defect.

**Colorado Sub-Class:**

All persons or entities in Colorado who (a) currently own or lease a Class Vehicle with soy- or bio-based wiring; and/or (b) previously owned or leased a Class Vehicle with soy- or bio-based wiring and can be identified as having incurred out-of-pocket expenses related to the soy- or bio-based wiring defect.

**Florida Sub-Class:**

All persons or entities in Florida who (a) currently own or lease a Class Vehicle with soy- or bio-based wiring; and/or (b) previously owned or leased a Class Vehicle with soy- or bio-based wiring and can be identified as having incurred out-of-pocket expenses related to the soy- or bio-based wiring defect.

**Georgia Sub-Class:**

All persons or entities in Georgia who (a) currently own or lease a Class Vehicle with soy- or bio-based wiring or other parts; and/or (b) previously owned or leased a Class Vehicle with soy- or bio-based wiring or other parts and can be identified as having incurred out-of-pocket expenses related to the soy- or bio-based wiring defect.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

**Idaho Sub-Class:**

All persons or entities in Idaho who (a) currently own or lease a Class Vehicle with soy- or bio-based wiring or other parts; and/or (b) previously owned or leased a Class Vehicle with soy- or bio-based wiring or other parts and can be identified as having incurred out-of-pocket expenses related to the soy- or bio-based wiring defect.

**Illinois Sub-Class:**

All persons or entities in Illinois who (a) currently own or lease a Class Vehicle with soy- or bio-based wiring or other parts; and/or (b) previously owned or leased a Class Vehicle with soy- or bio-based wiring or other parts and can be identified as having incurred out-of-pocket expenses related to the soy- or bio-based wiring defect.

**Indiana Sub-Class:**

All persons or entities in Indiana who (a) currently own or lease a Class Vehicle with soy- or bio-based wiring or other parts; and/or (b) previously owned or leased a Class Vehicle with soy- or bio-based wiring or other parts and can be identified as having incurred out-of-pocket expenses related to the soy- or bio-based wiring defect.

**Maryland Sub-Class:**

All persons or entities in Maryland who (a) currently own or lease a Class Vehicle with soy- or bio-based wiring or other parts; and/or (b) previously owned or leased a Class Vehicle with soy- or bio-based wiring or other parts and can be identified as having incurred out-of-pocket expenses related to the soy- or bio-based wiring defect.

**Nebraska Sub-Class:**

All persons or entities in Nebraska who (a) currently own or lease a Class Vehicle with soy- or bio-based wiring or other parts; and/or (b) previously owned or leased a Class Vehicle with soy- or bio-based wiring or other parts and can be identified as having incurred out-of-pocket expenses related to the soy- or bio-based wiring defect.

**New Jersey Sub-Class:**

All persons or entities in New Jersey who (a) currently own or lease a Class Vehicle with soy- or bio-based wiring or other parts; and/or (b) previously owned or leased a Class Vehicle with soy- or bio-based wiring or other parts and can be identified as having incurred out-of-pocket expenses related to the soy- or bio-based wiring defect.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

**Oklahoma Sub-Class:**

All persons or entities in Oklahoma who (a) currently own or lease a Class Vehicle with soy- or bio-based wiring or other parts; and/or (b) previously owned or leased a Class Vehicle with soy- or bio-based wiring or other parts and can be identified as having incurred out-of-pocket expenses related to the soy- or bio-based wiring defect.

**Oregon Sub-Class:**

All persons or entities in Oregon who (a) currently own or lease a Class Vehicle with soy- or bio-based wiring or other parts; and/or (b) previously owned or leased a Class Vehicle with soy- or bio-based wiring or other parts and can be identified as having incurred out-of-pocket expenses related to the soy- or bio-based wiring defect.

**Texas Sub-Class:**

All persons or entities in Texas who (a) currently own or lease a Class Vehicle with soy- or bio-based wiring or other parts; and/or (b) previously owned or leased a Class Vehicle with soy- or bio-based wiring or other parts and can be identified as having incurred out-of-pocket expenses related to the soy- or bio-based wiring defect.

**Washington Sub-Class:**

All persons or entities in Washington who (a) currently own or lease a Class Vehicle with soy- or bio-based wiring or other parts; and/or (b) previously owned or leased a Class Vehicle with soy- or bio-based wiring or other parts and can be identified as having incurred out-of-pocket expenses related to the soy- or bio-based wiring defect.

315.   The above Classes and Sub-Classes may be referred to herein by the state sub-class or collectively as the "Class." Excluded from the Class are Toyota, its affiliates, subsidiaries, parents, successors, predecessors, any entity in which Toyota or its parents have a controlling interest; Toyota's current and former employees, officers and directors; the Judge(s) and/or Magistrate(s) assigned to this case; any person who properly obtains exclusion from the Class; any person whose claims have been finally adjudicated on the merits or otherwise released; and the parties' counsel in this litigation. Plaintiffs reserve the right to modify, change, or expand the Class definitions based upon discovery and further investigation.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

316.   **Numerosity**: Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Toyota and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and on that basis alleges, that thousands of Class members have been subjected to the conduct by Toyota herein alleged.

317.   **Existence and Predominance of Common Questions of Fact and Law**: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

a)   Whether Toyota engaged in the conduct alleged herein;

b)   Whether Toyota designed, advertised, marketed, distributed, leased, sold, or otherwise placed Class Vehicles into the stream of commerce in the United States;

c)   Whether the Class Vehicles are defective in that they were and are sold with soy- or bio-based wiring insulation and other parts or components;

d)   Whether Toyota knew of the Defect but failed to disclose the problem and its consequences to its customers;

e)   Whether a reasonable consumer would consider the Defect or its consequences to be material;

f)   Whether the Defect causes Class Vehicles to malfunction;

g)   Whether Toyota's conduct violates state consumer protection statutes;

h)   Whether Toyota's conduct violates state and federal warranty laws and other laws as asserted herein;

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

i) Whether Plaintiffs and the other Class members overpaid for their Class Vehicles as a result of the Defect alleged herein;

j) Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

k) Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

318.   **Typicality**: All of Plaintiffs' claims are typical of the claims of the Class since Plaintiffs and all Class members were injured in the same manner by Toyota's uniform course of conduct described herein. Plaintiffs and all Class members have the same claims against Toyota relating to the conduct alleged herein, and the same events giving rise to Plaintiffs' claims for relief are identical to those giving rise to the claims of all Class members. Plaintiffs and all Class members sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Toyota's wrongful conduct as described herein. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members.

319.   **Adequacy:** Plaintiffs are adequate representatives for the Class because their interests do not conflict with the interests of the Class that they seeks to represent; Plaintiffs have retained counsel competent and highly experienced in complex class action litigation – including consumer fraud class action cases – and automobile defect cases, and counsel intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

320.   **Superiority:** A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and all Class members. The injury suffered by each individual Class member is relatively small in comparison

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Toyota's conduct. It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them by Toyota. Even if Class members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Class can be readily identified and notified based on, *inter alia*, the records (including databases, e-mails, etc.) Toyota maintains regarding sales and leases of Class Vehicles. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

321.    Toyota has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

322.    Given that Toyota has engaged in a common course of conduct as to Plaintiffs and the Class, similar or identical injuries and common law and statutory violations are involved and common questions far outweigh any potential individual questions.

323.    The Class is defined in terms of objective characteristics and common transactional facts; namely, the purchase or lease of Class Vehicles containing the Defect that resulted in rodent damage to Class Vehicle electrical wiring and systems. Class membership will be readily ascertainable from Toyota's business records.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

324.    Plaintiffs reserve the right to revise the above Class definitions based on facts adduced in discovery.

325.    All claims advanced below on behalf of the state sub-classes are pled in the alternative to the claims advanced on behalf of the Nationwide Class.

## VI.    CAUSES OF ACTION

### A.    Nationwide

#### COUNT I
#### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
#### 15 U.S.C. §§ 2301 *et seq.* ("MMWA")
#### (On Behalf of the Nationwide Class and State Sub-Classes)

326.    Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

327.    Plaintiffs bring this count on behalf of the Nationwide Class and State Sub-Classes.

328.    Plaintiffs and Class members are "consumers" within the meaning of the MMWA. 15 U.S.C. § 2301(3).

329.    The Class Vehicles are "consumer products" within the meaning of the MMWA. 15 U.S.C. § 2301(1).

330.    Toyota is a "supplier" and "warrantor" within the meaning of the MMWA. 15 U.S.C. § 2301(4)-(5).

331.    Section 2310(d) of the MMWA provides a cause of action for consumers who are harmed by the failure of a warrantor to comply with a written or implied warranty.

332.    Toyota's express warranties are written warranties within the meaning of Section 2301(6) of the MMWA. The Class Vehicles' implied warranties are accounted for under Section 2301(7) of the MMWA, which warranties Toyota cannot disclaim under the MMWA, when it fails to provide merchantable goods.

333.   As set forth herein, Toyota breached its warranties with Plaintiffs and Class members.

334.   Additionally, 15 U.S.C. § 2304(d) provides in pertinent part:

> [T]he warrantor may not assess the consumer for any costs the warrantor or his representatives incur in connection with the required remedy of a warranted consumer product. . . . [I]f any incidental expenses are incurred because the remedy is not made within a reasonable time or because the warrantor imposed an unreasonable duty upon the consumer as a condition of securing remedy, then the consumer shall be entitled to recover reasonable incidental expenses which are so incurred in any action against the warrantor.

*Id.*

335.   Class Vehicles share a common Defect in that, upon information and belief, they contain soy-based or other bio-based wiring and wiring components (and other parts) that attract rodents and other pests, and make Class Vehicles predisposed to damage in the form of chewed and gnawed wires.

336.   Despite demands by Plaintiffs and the Class for Toyota to pay the expenses associated with diagnosing and repairing the defective wires and damaged wiring systems, Toyota has refused to do so.

337.   Toyota breached these specific warranties as described in more detail above and also breached them generally: by manufacturing soy- or bio-based insulated wiring systems that are defective in materials, and workmanship and are likely to fail due to damage caused by rodents; by selling defective wiring systems not in merchantable condition, which present an unreasonable risk of failure and are unfit for the ordinary purpose; by refusing to repair or replace, free of charge, the defective soy- or bio-based insulated wiring systems or any of their component parts; by forcing consumers to pay for out-of-pocket costs for diagnostics, labor, repair, and replacement parts; and by not curing the Defect once it was known and identified.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

338.   Plaintiffs' and Class members' interactions with Toyota suffice to create privity of contract between Plaintiffs and Class members, on the one hand, and Toyota, on the other hand; however, privity of contract need not be established nor is it required because Plaintiffs and Class members are intended third-party beneficiaries of contracts between Toyota and its authorized dealers, and specifically, of Toyota's implied warranties. Toyota's dealers are intermediaries between Toyota and consumers that sell Class Vehicles to consumers and are not consumers of Class Vehicles, and therefore have no rights against Toyota with respect to Plaintiffs and Class members' purchases or leases of Class Vehicles. Toyota's warranties were designed for the benefit of consumers who purchase(d) or lease(d) Class Vehicles.

339.   As a direct and proximate result of Toyota's breach of implied and express warranties pursuant to 15 U.S.C. § 2310(d)(1), Plaintiffs and Class members have suffered damages in an amount to be proven at trial.

340.   Plaintiffs and the other Class members would suffer economic hardship if they returned their Class Vehicles but did not receive the return of all payments made by them. Because Toyota is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs and the other Class members have not re-accepted their Class Vehicles by retaining them.

341.   The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

342.   Plaintiffs and Class members are entitled to recover damages as a result of Toyota's breach of warranties.

343.   Plaintiffs and Class members are also entitled to seek costs and expenses, including attorneys' fees, under the MMWA. 15 U.S.C. § 2310(d)(2).

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COUNT II**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of the Nationwide Class)**

344.    Plaintiffs repeat and reallege the allegations contained above as if fully set forth herein.

345.    Plaintiffs bring this claim on behalf of the Nationwide Class.

346.    Toyota is a "merchant" as defined under the Uniform Commercial Code ("UCC").

347.    The Class Vehicles are "goods" as defined under the UCC.

348.    Toyota expressly warranted that the Class Vehicles were of high quality and, at a minimum, would actually work properly. Toyota also expressly warranted that they would repair and/or replace defects in material and/or workmanship that occurred during the Warranty period free of charge.

349.    For example, Toyota's Warranty for each Class Vehicle provides:

> "This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota, subject to the exceptions indicated under 'What Is Not Covered' . . . ."

Ex. A.

350.    Toyota breached its Warranty by selling and leasing to Plaintiffs and Class members Class Vehicles with the Defect which Toyota knew and knows attracts rodents and other pests and makes wiring in the Class Vehicles prone to damage, causing Class Vehicles to fail prematurely and/or fail to function properly.

351.    Toyota further breached the Warranty by failing to repair and/or replace Plaintiffs' and other Class members' defective wiring components or parts when the defective wiring systems failed during the Warranty period.

352.    Plaintiffs purchased and leased new vehicles subject to Toyota's Warranty. While Plaintiffs' Class Vehicles were still covered by the Warranty, the soy- or bio-based material comprising the electrical wiring in Plaintiffs' Class

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

Vehicles attracted rodents or other animals that chewed through the wiring leaving the vehicle partially or fully inoperable.  Pursuant to the terms of the Warranty, Plaintiffs brought their vehicle to a Toyota authorized service center and requested that such repairs be completed under the Warranty. Despite these requests, Toyota denied their warranty claims on the basis that the damage was caused by "other", "outside", or "environmental" forces, which Toyota contends are not covered under the Warranty. Toyota knew of the aforesaid Defect and continues to have knowledge of the Defect and breaches of its Warranty, yet it intentionally failed and fails to notify Plaintiffs and members of the Class of the Defect and cover Defect-related damage under the terms of the Warranty.

353.    As a result of Toyota's actions, Plaintiffs and Class members have suffered economic damages including but not limited to costly repairs, loss of vehicle use, substantial loss in value and resale value of the vehicles, and other related damage.

354.    Toyota's attempt to disclaim or limit its express warranties vis à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Toyota's Warranty limitation is unenforceable because it knowingly sold a defective product without informing consumers about the Defect.

355.    Plaintiffs and Class members have complied with all obligations under the Warranty, or otherwise have been excused from performance of said obligations as a result of Toyota's conduct described herein.

356.    Toyota was provided notice of these issues by complaints lodged by consumers directly and via NHTSA and elsewhere—which vehicle manufacturers like Toyota routinely monitor—before or within a reasonable amount of time after the allegations of the Defect became public.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

## COUNT III
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (On Behalf of the Nationwide Class)

357.   Plaintiffs repeat and reallege the allegations contained above as if fully set forth herein.

358.   Plaintiffs bring this claim on behalf of the Nationwide Class.

359.   Toyota is a "merchant" as defined under the UCC.

360.   The Class Vehicles are "goods" as defined under the UCC.

361.   Toyota impliedly warranted that the Class Vehicles were of a merchantable quality.

362.   Toyota breached the implied warranty of merchantability because the Class Vehicles were not of a merchantable quality due to Defect, and the associated problems caused by the Defect.

363.   Plaintiffs' and Class members' interactions with Toyota suffice to create privity of contract between Plaintiffs and Class members, on the one hand, and Toyota, on the other hand; however, privity of contract need not be established nor is it required because Plaintiffs and Class members are intended third-party beneficiaries of contracts between Toyota and its authorized dealers, and specifically, of Toyota's implied warranties. Toyota's dealers are intermediaries between Toyota and consumers that sell Class Vehicles to consumers and are not consumers of Class Vehicles, and therefore have no rights against Toyota with respect to Plaintiffs' and Class members' purchases or leases of Class Vehicles. Toyota's warranties were designed for the benefit of consumers who purchase(d) or lease(d) Class Vehicles.

364.   As a direct and proximate result of the breach of said warranties, Plaintiffs and Class members were injured and are entitled to damages.

365.   Toyota's attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Toyota's Warranty limitations are unenforceable because Toyota

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

knowingly sold a defective product without informing consumers about the Defect.

366.   Plaintiffs and Class members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of Toyota's conduct described herein.

367.   Toyota was provided notice of these issues by complaints lodged by consumers directly and via NHTSA and elsewhere—which vehicle manufacturers like Toyota routinely monitor—before or within a reasonable amount of time after the allegations of the Defect became public.

## COUNT IV

### DECLARATORY RELIEF (PLEADING IN THE ALTERNATIVE)
**(On Behalf of Plaintiffs and the Nationwide Class,
or Alternatively, the State Sub-Classes)**

368.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

369.   This claim is pled in the alternative to the other claims set forth herein on behalf of the Nationwide Class or, in the alternative, each of the State Sub-Classes.

370.   Toyota designed, manufactured, produced, tested, inspected, marketed, distributed, and sold Class Vehicles that contain the Defect – a material defect – as described above.

371.   There exists an actual controversy, over which this Court has jurisdiction, between Plaintiffs and Toyota concerning their respective rights, duties and obligations for which Plaintiffs desire a declaration of rights under the Class Vehicle warranties. Pursuant to 28 U.S.C. § 2201, or in the alternative, the state declaratory judgment laws of the states in which Plaintiffs reside, this Court may declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

372.   Toyota warrants and advertises the reliability and workmanship of its Class Vehicles. Plaintiffs contend that Toyota breached its warranties to Plaintiffs and the Class members when they received Class Vehicles at the time of the purchase that were worth less than what was promised by Toyota's warranties.

373.   Toyota's warranties explicitly warrant materials and workmanship and do not disclaim or exclude the Defect or the type of damage suffered as a result of the Defect in the Class Vehicles.

374.   Plaintiffs seek a declaration of the parties' respective rights, duties and obligations under the Class Vehicle warranties – including the Warranty – and other promises made by Toyota related to the quality and workmanship of the Class Vehicles, and specifically that Plaintiffs and the Class members are entitled to recover their out-of-pocket expenses related to repairs and/or replacement (including labor costs) of their defective and unworkmanlike Class Vehicles under the Class Vehicle warranties.

375.   Specifically, Plaintiffs seek a declaratory judgment that Toyota's warranties for Class Vehicles provide coverage for, and are to be read to include coverage for, rodent or other animal damage in Class Vehicles resulting from chewing or eating soy- or bio-based parts or materials in Class Vehicle electrical wiring and wiring systems.  Plaintiffs also seeks a declaratory judgment that nothing in Toyota's warranties for Class Vehicles disclaims or excludes warranty coverage for the Defect described herein.

376.   A judicial declaration is necessary in order that Plaintiffs and the Class members may ascertain their rights and duties under Toyota's Class Vehicle warranties. At this time, Plaintiffs and the Class members have Class Vehicles that were defective upon lease or purchase, and/or continue to remain defective.

377.   Plaintiff and Class members suffered damages at the time of their

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

purchase or lease and have paid or will have to pay future repair and/or replacement costs as a direct result of the Defect in the Class Vehicles.

**B.    California**

<div align="center">

**COUNT V**
**VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW**
**CAL. BUS. & PROF. CODE §§ 17200, *et seq.* ("UCL")**
**(On Behalf of Plaintiffs Grammer, Pla, and**
**Powell, and the California Sub-Class)**

</div>

378.    Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

379.    This claim is brought by Plaintiff Grammer, Plaintiff Pla, and Plaintiff Powell on behalf of the California Sub-Class.

380.    The UCL broadly prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." CAL. BUS. & PROF. CODE § 17200.

381.    A business act or practice is "unfair" under the UCL if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

382.    Toyota has engaged in "unfair" business practices and/or acts by falsely representing the qualities of its express and implied warranties for Class Vehicles; by misrepresenting the workmanship of its Class Vehicles; by failing to disclose the Defect to consumers; and by refusing to provide warranty coverage for the Defect.

383.    The acts and practices alleged herein are unfair because they caused Plaintiffs and Class members, and reasonable consumers like them, to believe that Toyota was offering something of value that did not, in fact, exist. Toyota intended for Plaintiffs and Class members to rely on its representations. As a result, purchasers and lessees, including Plaintiffs, reasonably perceived that they were receiving Class Vehicles with certain benefits. This perception induced reasonable purchasers to purchase or lease Class Vehicles which they would not otherwise have done had they

<div align="right">

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

</div>

known the truth.

384. The gravity of the harm to members of the Class resulting from these unfair acts and practices is outweighed any conceivable reasons, justifications and/or motives of Toyota for engaging in such deceptive acts and practices. By committing the acts and practices alleged above, Toyota engaged in unfair business practices within the meaning of the UCL.

385. A business act or practice is also "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

386. Toyota engaged in a uniform course of conduct which was intended to, and did in fact, deceive Plaintiffs and Class members and induce them into buying Class Vehicles. Toyota's course of conduct and marketing practices were fraudulent within the meaning of the UCL because they deceived Plaintiffs, and were likely to deceive members of the Class, into believing that they were entitled to a benefit that did not, in fact, exist. Toyota's misrepresentations are likely to deceive and have deceived the public.

387. A business act or practice is also "unlawful" under the UCL if it violates any other law or regulation. Toyota has violated the MMWA, the CLRA, and other laws as set forth herein.

388. Toyota has engaged in unfair competition and unfair, unlawful and fraudulent business practices by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiffs and Class members that the Class Vehicles suffer from the Defect (and the costs, risks, and diminished value of the Vehicles as a result of this problem). Toyota should have disclosed the Defect and this information because Toyota was in a superior position to know the true facts related to the Defect, and Plaintiffs and Class members could not reasonably be expected to learn or discover the true facts related to the Defect. Plaintiffs and Class members relied upon Toyota's express representations and

promises, as well as omissions, regarding the workmanship of and the warranties for the Class Vehicles, believed them to be true, and would not have agreed to purchase or lease Class Vehicles had they known the truth about the Defect.

389.   Therefore, the omissions and acts of concealment, fraud, and deceit by Toyota pertained to information that was material to Plaintiffs and the Class members, as it would have been to all reasonable consumers.

390.   Toyota had a duty to disclose the Defect because Toyota had exclusive knowledge of the Defect prior to making sales and leases of Class Vehicles and because Toyota made partial representations about the quality of Class Vehicles, but failed to fully disclose that Defect plagues Class Vehicles.

391.   In failing to disclose that Class Vehicles contain the Defect, the true nature of the quality and workmanship of Class Vehicles, and suppressing other material facts from Plaintiffs and Class members, Toyota breached its duties to disclose these facts, violated the UCL, and caused injuries to Plaintiffs and Class members.

392.   The fraudulent or unfair conduct alleged herein was carried out by a California corporation whose principle place of business is in California, and the acts complained herein took place in and/or originated in the state of California.

393.   The injuries suffered by Plaintiffs and the Class members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiffs and the Class members should have reasonably avoided.

394.   Through its fraudulent, unfair, and unlawful acts and practices, Toyota has improperly obtained money from Plaintiffs and the Class.

395.   Plaintiffs seek to enjoin further unlawful, unfair and/or fraudulent acts or practices by Toyota relating to the wiring Defect in Class Vehicles and from violating the UCL in the future by selling Class Vehicles with the wiring Defect.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

396.   Plaintiffs also seek to obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, require notice of this dangerous condition be provided to the Class, and all other relief allowed under CAL. BUS. & PROF. CODE § 17200.

## COUNT VI
### VIOLATION OF THE CALIFORNIA
### CONSUMERS LEGAL REMEDIES ACT
### (CAL. CIV. CODE §§ 1750, *et seq.*) ("CLRA")
### (On Behalf of Plaintiffs Grammer, Pla, and
### Powell, and the California Sub-Class)

397.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

398.   This claim is brought by Plaintiff Grammer, Plaintiff Pla, and Plaintiff Powell on behalf of the California Sub-Class.

399.   The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer . . . ." CAL. CIV. CODE § 1770.

400.   Toyota Defendants are "persons" as defined by CAL. CIV. CODE § 1761(c).

401.   The Class Vehicles are "goods" as defined by CAL. CIV. CODE § 1761(a).

402.   Plaintiffs and the Class members are "consumers" as defined by CAL. CIV. CODE § 1761(d).

403.   Toyota made numerous representations concerning the Class Vehicles specifications that were misleading, including marketing and advertising the workmanship of Class Vehicles and the nature and extent of Toyota's Warranty.

404.   Toyota also omitted material facts about the Class Vehicles, namely the Defect.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

405.   In purchasing or leasing Class Vehicles, Plaintiffs and Class members were deceived by Toyota's failure to disclose that the Class Vehicles contain the Defect, resulting in expensive damage for which damage Toyota will not provide coverage under its express or implied warranties.

406.   Toyota's conduct, as hereinabove described, is in violation of CAL. CIV. CODE §1770 on the following grounds:

a.   (a)(2): misrepresenting the source, sponsorship, approval or certification of goods or services;

b.   (a)(5): representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have;

c.    (a)(7): representing that goods are of a particular standard, quality, or grade, if they are another;

d.   (a)(9): advertising goods with the intent not to sell them as advertised; and

e.   (a)(16), representing that goods have been supplied in accordance with a previous representation when they have not.

407.   Toyota knew that Class Vehicles contain the Defect and are not suitable for their intended use.

408.   Toyota had a duty to disclose the Defect because Toyota had exclusive knowledge of the Defect prior to making sales and leases of Class Vehicles and because Toyota made partial representations about the quality of Class Vehicles, but failed to fully disclose that Defect plagues Class Vehicles.

409.   Specifically, Toyota was under a duty to Plaintiff and Class members to disclose the defective nature of the Class Vehicles because:

a.   Toyota was in a superior position to know the true state of facts about the Defect – a defect that can pose a safety risk – and

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

associated repair costs in the Class Vehicles;

b.    Plaintiffs and the Class members could not reasonably have been expected to learn or discover that the Class Vehicles have a defect that affects operability of Class Vehicles and creates safety concerns until manifestation of the Defect; and

c.    Toyota knew that Plaintiffs and the Class members could not reasonably have been expected to learn or discover the Defect until manifestation of the Defect.

410.   In failing to disclose the wiring Defect in Class Vehicles, Toyota has knowingly and intentionally concealed material facts and breached their duty not to do so.

411.   The facts concealed or not disclosed by Toyota to Plaintiffs and Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease Class Vehicles or pay a lesser price. Had Plaintiffs and the Class known about the defective nature of the Class Vehicles, they would not have purchased or leased the Class Vehicles, or they would have paid less.

412.   As a direct and proximate result of Toyota's unfair and deceptive acts or practices, Plaintiff and Class members have been harmed.

413.   Under CAL. CIV. CODE § 1780(a), Plaintiffs and the California Sub-Class seek actual damages, an order enjoining Toyota from further engaging in the unfair and deceptive acts and practices alleged herein, and restitutionary relief to remedy Toyota's violations of the CLRA as alleged herein.

414.   Under CAL. CIV. CODE § 1780(b), Plaintiffs seek an additional award against Toyota of up to $5,000 for each California Sub-Class member who qualifies as a "senior citizen" or "disabled person" under the CLRA. Toyota knew or should have known that its conduct was directed to one or more California Sub-Class

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

members who are senior citizens or disabled persons. Toyota's conduct caused one or more of these senior citizens or disabled persons to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the senior citizen or disabled person. One or more California Sub-Class members who are senior citizens or disabled persons are substantially more vulnerable to Toyota's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial physical, emotional, or economic damage resulting from Toyota's conduct.

415.   Pursuant to CAL. CIV. CODE § 3345, Plaintiffs seek an award of trebled damages on behalf of all senior citizens and disabled persons comprising the Class as a result of Toyota's conduct alleged herein.

416.   Pursuant to CLRA Section 1780(a)(4), Plaintiffs also seek punitive damages against Toyota because it carried out reprehensible conduct with willful and conscious disregard of the rights and safety of others, subjecting Plaintiffs and the California Sub-Class to potential cruel and unjust hardship as a result. *See* CAL. CIV. CODE § 1780(a)(4). Toyota intentionally and willfully deceived Plaintiffs on life-or-death matters, and concealed material facts that only Toyota knew. Toyota's unlawful conduct likewise constitutes malice, oppression, and fraud warranting exemplary damages under CAL. CIV. CODE § 3294.

417.   Plaintiffs further seek an order awarding costs of court and attorneys' fees under CAL. CIV. CODE § 1780(e), and any other just and proper relief available under the CLRA.

418.   On October 6, 2016, Plaintiff Pla notified Toyota of the damages and Defect in her Class Vehicle in satisfaction of CAL. BUS. & PROF. CODE § 1782. Plaintiff Pla has made pre-suit attempts to remedy the Defect in her Class Vehicle, to no avail.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

419.   On or about September 12, 2016, Plaintiff Powell notified Toyota of the damages and Defect in his Class Vehicle in satisfaction of CAL. BUS. & PROF. CODE § 1782. Plaintiff Powell has made pre-suit attempts to remedy the Defect in his Class Vehicle, to no avail.

## COUNT VII
### VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF EXPRESS WARRANTIES
### CAL. CIV. CODE §§ 1791.2 & 1793.2 ("SBCWA")
### (On Behalf of Plaintiffs Grammer, Pla, and Powell, and the California Sub-Class)

420.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

421.   This claim is brought by Plaintiff Grammer, Plaintiff Pla, and Plaintiff Powell on behalf of the California Sub-Class.

422.   Plaintiffs and Class members are "buyers" within the meaning of the SBCWA. *See* CAL. CIV. CODE § 1791(b).

423.   The Class Vehicles are "consumer goods" within the meaning of CAL. CIV. CODE § 1791(a).

424.   Toyota is a "manufacturer" within the meaning of CAL. CIV. CODE § 1791(j).

425.   Plaintiffs and Class members bought or leased automobiles manufactured by Toyota.

426.   Toyota made express warranties to Plaintiffs and Class members within the meaning of CAL. CIV. CODE §§ 1791.2 and 1793.2 as set forth herein.

427.   Specifically, Toyota expressly warranted that the Warranty "covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota, subject to the exceptions indicated under 'What Is Not Covered' . . . ." EX. A.

428.   As set forth herein in detail, Class Vehicles are inherently defective in

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

that they contain electrical wiring systems that are made with or consist of soy- or bio-based materials that attract rodents and other pests which chew or eat the wiring, causing partial or total failure in Class Vehicles. Contrary to Toyota's position, the Defect is covered under its Warranty.

429.   The Defect jeopardizes the safety of drivers and passengers of Class Vehicles, and other drivers on the road, and substantially impairs the use, value, and safety of Class Vehicles to reasonable consumers like Plaintiffs and Class members.

430.   Plaintiffs delivered their Class Vehicle to Toyota or its authorized repair facility to repair the Defect and notified Toyota in writing of the need for repair, but Toyota failed and continues to fail to make repairs to Plaintiffs' Class Vehicles under Toyota's Warranty.

431.   As a result of Toyota's breach of its express warranties, Plaintiffs and Class members received goods containing a dangerous condition that substantially impairs the value of the goods to Plaintiffs and Class members.  Plaintiffs and other Class members have been damaged as a result of the diminished value of Toyota's products, the Defect, the products' malfunctioning due to the Defect, and the non-use of their Class Vehicles.

432.   Pursuant to CAL. CIV. CODE. §§ 1793.2 & 1794, Plaintiffs and other Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of or a buyback of their Toyota vehicles, or the overpayment or diminution in value of their Class Vehicles.

433.   Pursuant to CAL. CIV. CODE § 1794, Plaintiffs and Class members are also entitled to costs and reasonable attorneys' fees.

///

///

///

///

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT VIII
**VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY CAL. CIV. CODE §§ 1791.1 & 1792 ("SBCWA") (On Behalf of Plaintiffs Grammer, Pla, and Powell, and the California Sub-Class)**

434.    Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

435.    This claim is brought by Plaintiff Grammer, Plaintiff Pla, and Plaintiff Powell on behalf of the California Sub-Class.

436.    Plaintiffs and Class members are "buyers" within the meaning of the SBCWA. *See* CAL. CIV. CODE § 1791(b).

437.    The Class Vehicles are "consumer goods" within the meaning of CAL. CIV. CODE § 1791(a).

438.    Toyota is a "manufacturer" within the meaning of CAL. CIV. CODE § 1791(j).

439.    Toyota impliedly warranted to Plaintiffs and the other Class members that its Class Vehicles were "merchantable" within the meaning of CAL. CIV. CODE §§ 1791.1(a) & 1792.

440.    In reality, the Class Vehicles do not possess those qualities that a buyer would reasonably expect.

441.    Section 1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following: (1) Pass without objection in the trade under the contract description. (2) Are fit for the ordinary purposes for which such goods are used. (3) Are adequately contained, packaged, and labeled. (4) Conform to the promises or affirmations of fact made on the container or label.

442.    The Class Vehicles are not suitable for the market, and would not pass without objection in the automotive industry and market because of the wiring Defect

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

in Class Vehicles' electrical wiring systems. Specifically, the material used in Class Vehicle wiring, wiring insulation, and/or wiring harnesses fails to protect vital vehicular components from being eaten by rodents, and instead causes Class Vehicles to fail due to wire damage caused by rodents that are attracted to materials in the wiring products.

443.   The material used in Class Vehicles' wiring systems makes the Class Vehicles unsuitable for safe driving. Class Vehicles are not in merchantable condition, and are therefore, not fit for their ordinary purposes.

444.   Furthermore, Class Vehicles are not adequately labeled because the labeling fails to disclose the wiring Defect.

445.   Toyota breached the implied warranty of merchantability by manufacturing and selling Class Vehicles containing the wiring Defect. Furthermore, the Defect has caused Plaintiffs and other Class members to not receive the benefit of their bargain and have caused Class Vehicles to depreciate in value.

446.   As a direct and proximate result of Toyota's breach of the implied warranty of merchantability, Plaintiffs and the other Class members received goods whose defective condition substantially impairs their value to Plaintiff and the other Class members. Plaintiffs and the other Class members have been damaged as a result of the diminished value of Toyota's products, the products' malfunctioning, and the, nonuse of their Class Vehicles.

447.   Plaintiffs and the other Class members have had sufficient direct dealings with either Toyota or its agents (*e.g.*, dealerships and technical support) to establish privity of contract between Toyota on one hand, and Plaintiffs and each of the other Class members on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other Class members are intended third-party beneficiaries of contracts between Toyota and its dealers, and specifically, of Toyota's implied warranties. The dealers were not intended to be the ultimate

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only.

448.   Pursuant to CAL. CIV. CODE §§ 1791.1(d) and 1794, Plaintiffs and Class members are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of or a buyback of their Toyota vehicles, or the overpayment or diminution in value of their Class Vehicles.

449.   Pursuant to CAL. CIV. CODE § 1794, Plaintiffs and Class members are also entitled to costs and reasonable attorneys' fees.

## COUNT IX
### BREACH OF EXPRESS WARRANTY
#### CAL. COM. CODE § 2313
### (On Behalf of Plaintiffs Grammer, Pla, and Powell, and the California Sub-Class)

450.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

451.   This claim is brought by Plaintiff Grammer, Plaintiff Pla, and Plaintiff Powell on behalf of the California Sub-Class.

452.   Toyota is and was at all relevant times a merchant with respect to motor vehicles. CAL. COM. CODE § 2104.

453.   Pursuant to CAL. COM. CODE § 2313:

> (1) Express warranties by the seller are created as follows:
>
>> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

*Id*.

454.   In its Warranty and in advertisements, brochures, and through other

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

statements in the media, Toyota expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. For example, the following language appears in all Class Vehicle Warranty manuals: "This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota, subject to the exceptions indicated under 'What Is Not Covered' . . . ." Ex. A.

455. Toyota's Warranty, as well as advertisements, brochures, and other statements in the media regarding the Class Vehicles, formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles.

456. Toyota breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Toyota. Toyota has not repaired or adjusted, and has been unable to repair or adjust, the Class Vehicles' materials and workmanship defects, namely the soy- or bio-based electrical wiring parts and components.

457. At the time of selling or leasing Class Vehicles, Toyota did not provide Class Vehicles that conformed to its express warranties.

458. Furthermore, the warranty of repair and/or adjustments to defective parts fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because Toyota has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

459. Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiffs, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

460. Also, as alleged in more detail herein, at the time that Toyota warranted

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranties and were inherently defective, and Toyota wrongfully and fraudulently misrepresented and/or concealed material facts regarding its Class Vehicles. Plaintiffs and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

461.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as many incidental and consequential damages have already been suffered due to Toyota's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies would be insufficient to make Plaintiffs and the other Class members whole.

462.   Furthermore, the application of (or refusal to permit coverage under) the Warranty is unconscionable and inadequate to protect Plaintiff and members of the Class given that Toyota knew of the Defect but failed and fails to disclose it. A gross disparity in bargaining power existed between Toyota and Class members, and Toyota knew or should have known that the Class Vehicles were defective at the time of sale and that the wiring systems would fail well before their useful lives.

463.   Toyota was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the other Class members before or within a reasonable amount of time after the allegations of the Defect became public.

464.   As a direct and proximate result of Toyota's breach of express warranties, Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

///

///

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

**COUNT X**
**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
CAL. COM. CODE § 2314
**(On Behalf of Plaintiffs Grammer, Pla, and**
**Powell, and the California Sub-Class)**

465.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

466.   This claim is brought by Plaintiff Grammer, Plaintiff Pla, and Plaintiff Powell on behalf of the California Sub-Class.

467.   Toyota is and was at all relevant times a merchant with respect to motor vehicles. CAL. COM. CODE § 2104.

468.   A warranty that the Class Vehicles were in merchantable condition is implied by law, pursuant to CAL. COM. CODE § 2314.

469.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles suffer from an inherent Defect, as alleged herein.

470.   Toyota was provided notice of these issues by numerous complaints filed against it, including this Complaint, and by numerous individual letters, telephone calls, and other communications sent by Plaintiffs and other Class members before or within a reasonable amount of time after the allegations of the Defect became public.

471.   Plaintiffs and the other Class members have had sufficient direct dealings with either Toyota or its agents (dealerships) to establish privity of contract between Toyota, on the one hand, and Plaintiffs and the other Class members, on the other hand. Notwithstanding this, privity is not required in this case because Plaintiffs and the other Class members are intended third-party beneficiaries of contracts between Toyota and its dealers; specifically, they are the intended beneficiaries of Toyota's implied warranties. The dealers were not intended to be the ultimate

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because Plaintiffs' and the other Class members' Class Vehicles are dangerous instrumentalities due to the aforementioned Defect and nonconformities.

472.   Furthermore, the application of (or refusal to permit coverage under) the Warranty is unconscionable and inadequate to protect Plaintiff and members of the Class given that Toyota knew of the Defect but failed and fails to disclose it. A gross disparity in bargaining power existed between Toyota and Class members, and Toyota knew or should have known that the Class Vehicles were defective at the time of sale and that the wiring systems would fail well before their useful lives.

473.   As a direct and proximate result of Toyota's breach of the warranty of merchantability, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial.

**COUNT XI**
**FRAUD/FRAUDULENT CONCEALMENT**
**(On Behalf of Plaintiffs Grammer, Pla, and**
**Powell, and the California Sub-Class)**

474.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

475.    This claim is brought by Plaintiff Grammer, Plaintiff Pla, and Plaintiff Powell on behalf of the California Sub-Class.

476.    Defendants concealed and suppressed material facts concerning the performance and quality of the Class Vehicles – namely, the Defect – and the quality of the Toyota brand. Specifically, Defendants knew of (or should have known of) the Defect, but failed to disclose it prior to or at the time it sold or leased Class Vehicles to consumers. Defendants did so in order to boost sales and leases of Class Vehicles.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

477.    Plaintiffs and Class members had no way of knowing that Defendants' representations were false and gravely misleading, or that Defendants had omitted imperative details. Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own.

478.    Defendants had a duty to disclose the true performance of the Class Vehicles and the Defect because knowledge thereof and the details related thereto were known and/or accessible only to Defendants; Defendants had superior knowledge and access to the facts; and Defendants knew the facts were not known to, or reasonably discoverable, by Plaintiffs and the Class. Defendants also had a duty to disclose because they made many general affirmative representations about the about the qualities of the Class Vehicles.

479.    On information and belief, Defendants still have not made full and adequate disclosures, and continue to defraud consumers by concealing material information regarding the Defect and the performance and quality of Class Vehicles.

480.    Plaintiffs and the Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or leased the Class Vehicles. Plaintiffs' and the Class' actions were justified. Defendants were in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Class.

481.    Plaintiffs and the Class relied upon Defendants representations and omissions regarding the quality of Class Vehicles and the Defect in deciding to purchase or lease Class Vehicles.

482.    Because of the concealment and/or suppression of the facts, Plaintiffs and the Class sustained damage because they did not receive the value of the premium price paid for their Class Vehicles. Plaintiffs and Class members would have paid less for Class Vehicles had they known about the Defect and the entire

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

truth about them, or they would not have purchased or leased Class Vehicles at all.

483.   Accordingly, Defendants are liable to Plaintiffs and the California Sub-Class for damages in an amount to be proven at trial.

484.   Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Class' rights and well-being to enrich Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

485.   Furthermore, as the intended and expected result of its fraud and conscious wrongdoing, Toyota has profited and benefited from Plaintiffs' and Class members' purchase of Class Vehicles containing the Defect. Toyota has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of Toyota's misconduct alleged herein, Plaintiffs and the Class were not receiving automobiles of the quality, nature, fitness, or value that had been represented by Toyota, and that a reasonable consumer would expect.

486.   Toyota has been unjustly enriched by its fraudulent, deceptive, and otherwise unlawful conduct in connection with the sale and lease of Class Vehicles and by withholding benefits from Plaintiffs and the Class at the expense of these parties. Equity and good conscience militate against permitting Toyota to retain these profits and benefits, and Toyota should be required to make restitution of its ill-gotten gains resulting from the conduct alleged herein.

**C.    Colorado**

## COUNT XII
### VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT
#### COLO. REV. STAT. §§ 6-1-101, *et seq.* ("CCPA")
#### (On behalf of Plaintiff Zishka and the Colorado Sub-Class)

487.   Plaintiffs repeat and reallege the allegations contained above as if fully set forth herein.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

488.   This claim is brought by Plaintiff Zishka on behalf of the Colorado Sub-Class.

489.   The CCPA provides that a person may not engage in any unfair or deceptive trade practice in the sale of any consumer good.

490.   Toyota participated in misleading, false or deceptive acts that violated the CCPA. By fraudulently advertising and selling Class Vehicles with the Defect as described herein, Toyota engaged in deceptive business practices prohibited by the CCPA.

491.   Toyota is a "Person" within the meaning of the CCPA. *See* COLO. REV. STAT. § 6-1-102(6).

492.   Toyota's actions as set forth above occurred in the course of its business, vocation, or occupation. *See* COLO. REV. STAT. § 6-1-105(1).

493.   In the course of its business, Toyota incorporated defective electrical wiring insulation and other wiring components in Class Vehicles that attract rodents and other pests which cause damage. Toyota concealed this Defect and otherwise engaged in activities with the tendency or capacity to deceive.  Toyota also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission, in connection with the sale of Class Vehicles containing the Defect.

494.   Toyota has known of the Defect in Class Vehicles from complaints and communications by Plaintiff and Class members, but continued to conceal the Defect in order to make sales and leases of Class Vehicles.

495.   By willfully failing to disclose and actively concealing the Defect, by marketing Class Vehicles as reliable and of high quality, and by presenting itself as a reputable manufacturer that stood by its products after they were sold or leased when it in fact does not, Toyota engaged in unfair and deceptive business practices in violation of the CCPA.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

496.   Toyota's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and members of the Colorado Class, about the quality, workmanship, performance, safety, and true value of the defective Class Vehicles.

497.   Toyota intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiff and the Colorado Sub-Class.

498.   Toyota's conduct was and is violative of the CCPA specifically because Toyota fails to disclose material information concerning Class Vehicles, which information was known at the time of an advertisement or sale/lease, and such failure to disclose such information was intended to induce consumers to enter into a transaction.

499.   Toyota owed Plaintiff and the Colorado Sub-Class a duty to disclose the Defect in Class Vehicles and the true value of Class Vehicles because Toyota:

    a.   Possesses exclusive knowledge that its manufacturing process entailed the inclusion of defective and rodent-damage-prone soy- or bio-based wiring parts and components;

    b.   Intentionally concealed the foregoing from Plaintiff and the Colorado Sub-Class; and/or

    c.   Made incomplete, false or misleading representations about the characteristics, quality, workmanship, reliability, value, safety, efficiency, and performance of Class Vehicles while purposefully withholding material facts from Plaintiff and the Colorado Sub-Class that contradicted these representations.

500.   Because Plaintiff and the Colorado Sub-Class overpaid for Class Vehicles due to Toyota's conduct described herein and because the Defect in Class

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

Vehicles has caused Plaintiff and members of the Colorado Sub-Class to incur out-of-pocket expenses, they have suffered ascertainable loss as a direct and proximate result of Toyota's deceptive and unfair acts and practices in violation of the CCPA.

501.   As a result of Toyota's conduct alleged herein, Plaintiff entitled to damages and all other relief that this Court deems appropriate. Plaintiff and the Colorado Sub-Class are also entitled to an award of attorneys' fees pursuant to COLO. REV. STAT. § 6-1-113(2)(b).

502.   Toyota's conduct alleged herein was carried out in bad faith, warranting multiple or punitive damages pursuant to COLO. REV. STAT. § 6-1-113(2)(b).

**COUNT XIII**
**BREACH OF EXPRESS WARRANTY**
**COLO. REV. STAT. §§ 4-2-313 & 4-2.5-210**
**(On Behalf of Plaintiff Zishka the Colorado Sub-Class)**

503.   Plaintiffs repeat and reallege the allegations contained above as if fully set forth herein.

504.   This claim is brought by Plaintiff Zishka on behalf of the Colorado Sub-Class.

505.   Toyota is and was at all relevant times a "merchant" with respect to motor vehicles under COLO. REV. STAT. §§ 4-2-104(1) and 4-2.5-103(3) and "seller" of motor vehicles under section 4-2-103(1)(d).

506.   With respect to leases, Toyota was at all relevant times a "lessor" of motor vehicles under COLO. REV. STAT. § 4-2.5-103(1)(p).

507.   The Class Vehicles are ad were at all relevant times "goods" within the meaning of COLO. REV. STAT. §§ 4-2-105(1) and 4-2.5-103(1)(h).

508.   In its New Vehicle Limited Warranty and in advertisements, brochures, and through other statements, Toyota expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period.  For example, the following language appears in all Class

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

Vehicle Warranty and Maintenance Guides:

> **WHAT IS COVERED AND HOW LONG**
>
> **Basic Warranty**
>
> This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota, subject to the exceptions indicated under "What Is Not Covered" . . . .

Ex. A.

509.   Toyota's Warranty does not exclude rodent or animal damage of the type suffered by Plaintiff and Class members in their Class Vehicles.

510.   Toyota's Warranty as well as advertisements, brochures, and other statements regarding the Class Vehicles, formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles.

511.   Toyota breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Toyota.  Toyota has not repaired or adjusted, and has been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

512.   In addition to Toyota's Warranty, Toyota otherwise expressly warranted the attributes, characteristics, and qualities of its Class Vehicles. These warranties are only a sampling of the numerous warranties that Toyota made relating to safety, reliability, and operation.  Generally these express warranties promise heightened, superior, and state-of-the-art, reliability, safety, and performance standards, and promote the benefits of their Class Vehicles.  These warranties were made, *inter alia*, in advertisements, on Toyota's website, and in uniform statements provided by Toyota to be made by salespeople, or made publicly by Toyota executives or by other authorized Toyota representatives.  These affirmations and promises were part of the

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

basis of the bargain between the parties, and thus created express warranties.

513.   These additional warranties were also breached because the Class Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to Class Vehicle purchasers or lessees.  Toyota did not provide at the time of sale, and has not provided since then, Class Vehicles conforming to its express warranties.

514.   Toyota breached express warranties by selling to Plaintiff and Class Members Class Vehicles with the Defect which Toyota knew or should have known attracts rodents and other pests and makes wiring in the Class Vehicles prone to rodent damage, causing Class Vehicles to fail prematurely and/or fail to function properly.

515.   In addition, since Toyota knew or should have known about the Defect, the warranty failed its essential purpose.

516.   Furthermore, the limited warranty of repair and/or adjustments to defective parts also fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because Toyota has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

517.   Toyota's attempts to disclaim or limit its express warranties vis-à-vis consumers are unconscionable and unenforceable under the circumstances here.

518.   Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiff, individually and on behalf of the other Class members, seek all remedies as allowed by law.

519.   Also, as alleged in more detail herein, at the time that Toyota warranted and sold the Class Vehicles, it knew that the Class Vehicles did not conform to the

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

warranties and were inherently defective, and Toyota wrongfully and fraudulently misrepresented and/or concealed material facts regarding its Class Vehicles. Plaintiff and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

520. Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as many incidental and consequential damages have already been suffered due to Toyota's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Class members' remedies would be insufficient to make Plaintiff and the other Class members whole.

521. Toyota was provided notice of these issues and the Defect by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications (including Plaintiff's communications) sent by and from Class members.

522. The intended failure to disclose the known Defect is malicious, and it was carried out by Toyota with willful and wanton disregard for the rights and economic interests of Plaintiff and Class Members.

523. Furthermore, the application of (or refusal to permit coverage under) the Warranty is unconscionable and inadequate to protect Plaintiff and members of the Class given that Toyota knew of the Defect but failed and fails to disclose it. A gross disparity in bargaining power existed between Toyota and Class members, and Toyota knew or should have known that the Class Vehicles were defective at the time of sale and that the wiring systems would fail well before their useful lives.

524. Due to Toyota's breach of warranties as set forth herein, Plaintiff and the other Class members assert as an additional and/or alternative remedy for a revocation of acceptance of the goods, and for a return to Plaintiff and to the other

Class members of the purchase price of all Class Vehicles currently owned for such other incidental and consequential damages as allowed by law.

525. As a direct and proximate result of Toyota's breach of express warranties, Plaintiff and the other Class members have been damaged in an amount to be determined at trial, including but not limited to costly repairs, loss of vehicle use, substantial loss in value and resale value of the vehicles, and other related damage.

526. Plaintiff and Class members have complied with all obligations under the Warranty, or otherwise have been excused from performance of said obligations as a result of Toyota's conduct described herein.

<div align="center">

**COUNT XIV**
**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
**COLO. REV. STAT. §§ 4-2-314 & 4-2.5-212**
**(On Behalf of Plaintiff Zishka and the Colorado Sub-Class)**

</div>

527. Plaintiff repeats and realleges the allegations contained above as if fully set forth herein.

528. Plaintiff brings this Count on behalf of the Nationwide Class, or in the alternative, the Colorado Sub-Class.

529. Toyota is and was at all relevant times a "merchant" with respect to motor vehicles under COLO. REV. STAT. §§ 4-2-104(1) and 4-2.5-103(3) and "seller" of motor vehicles under section 4-2-103(1)(d).

530. With respect to leases, Toyota was at all relevant times a "lessor" of motor vehicles under COLO. REV. STAT. § 4-2.5-103(1)(p).

531. The Class Vehicles are ad were at all relevant times "goods" within the meaning of COLO. REV. STAT. §§ 4-2-105(1) and 4-2.5-103(1)(h).

532. A warranty that the Class Vehicles were in merchantable condition is implied by law. *See* COLO. REV. STAT. §§ 4-2-314 and 4-2.5-212.

533. Toyota impliedly warranted that the Class Vehicles were of a

merchantable quality.

534.   Toyota breached the implied warranty of merchantability because the Class Vehicles were not of a merchantable quality due to the defective soy- or bio-based materials and parts, and the associated problems caused by the Defect.

535.   Plaintiff and Class members' interactions with Toyota suffice to create privity of contract between Plaintiff and Class members, on the one hand, and Toyota, on the other hand; however, privity of contract need not be established nor is it required because Plaintiff and Class members are intended third-party beneficiaries of contracts between Toyota and its authorized dealers, and specifically, of Toyota's implied warranties. Toyota's dealers are intermediaries between Toyota and consumers that sell Class Vehicles to consumers and are not consumers of Class Vehicles, and therefore have no rights against Toyota with respect to Plaintiff and Class members' purchases or leases of Class Vehicles. Toyota's warranties were designed for the benefit of consumers who purchase(d) or lease(d) Class Vehicles.

536.   As a direct and proximate result of the breach of said warranties, Plaintiff and Class members were injured and are entitled to damages.

537.   Toyota's attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Toyota's Warranty limitations are unenforceable because Toyota knowingly sold a defective product without informing consumers about the Defect.

538.   Furthermore, the application of (or refusal to permit coverage under) the Warranty is unconscionable and inadequate to protect Plaintiff and members of the Class given that Toyota knew of the Defect but failed and fails to disclose it. A gross disparity in bargaining power existed between Toyota and Class members, and Toyota knew or should have known that the Class Vehicles were defective at the time of sale and that the wiring systems would fail well before their useful lives.

539.   Plaintiff and Class members have complied with all obligations under

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

the warranty or otherwise have been excused from performance of said obligations as a result of Toyota's conduct described herein.

540.   Toyota was provided notice of these issues by complaints lodged by consumers directly and via NHTSA and elsewhere—which vehicle manufacturers like Toyota routinely monitor—before or within a reasonable amount of time after the allegations of the Defect became public.

541.   To the extent it is required, the parties are in privity or, alternatively, Plaintiff and Class members are the intended beneficiaries of Toyota's contracts.

## COUNT XV
## FRAUD/FRAUDULENT CONCEALMENT
**(On Behalf of Plaintiff Zishka and the Colorado Sub-Class)**

542.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

543.   This claim is brought by Plaintiff Zishka on behalf of the Colorado Sub-Class.

544.   Defendants concealed and suppressed material facts concerning the performance and quality of the Class Vehicles – namely, the Defect – and the quality of the Toyota brand. Specifically, Defendants knew of (or should have known of) the Defect, but failed to disclose it prior to or at the time it sold or leased Class Vehicles to consumers. Defendants did so in order to boost sales and leases of Class Vehicles.

545.   Defendants had a duty to disclose the true performance of the Class Vehicles and the Defect because knowledge thereof and the details related thereto were known and/or accessible only to Defendants; Defendants had superior knowledge and access to the facts; and Defendants knew the facts were not known to, or reasonably discoverable, by Plaintiff and the Class. Defendants also had a duty to disclose because they made many general affirmative representations about the about the qualities of the Class Vehicles.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

546.     On information and belief, Defendants still have not made full and adequate disclosures, and continue to defraud consumers by concealing material information regarding the Defect and the performance and quality of Class Vehicles.

547.     Plaintiff and the Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or leased the Class Vehicles. Plaintiff's and the Class' actions were justified. Defendants were in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Class.

548.     Plaintiff and the Class relied upon Defendants' representations and omissions regarding the quality of Class Vehicles and the Defect in deciding to purchase or lease Class Vehicles.

549.     Because of the concealment and/or suppression of the facts, Plaintiff and the Class sustained damage because they did not receive the value of the premium price paid for their Class Vehicles. Plaintiff and Class members would have paid less for Class Vehicles had they known about the Defect and the entire truth about them, or they would not have purchased or leased Class Vehicles at all.

550.     Accordingly, Defendants are liable to Plaintiff and the Colorado Sub-Class for damages in an amount to be proven at trial.

551.     Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Class' rights and well-being to enrich Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

///

///

///

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COUNT XVI**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff Zishka and the Colorado Sub-Class)**

552.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

553.   This claim is brought by Plaintiff Zishka on behalf of the Colorado Sub-Class. This claim is pled in the alternative to the other claims set forth herein.

554.   As the intended and expected result of its conscious wrongdoing, Toyota has profited and benefited from Plaintiff's and Class members' purchase of Class Vehicles containing the Defect.

555.   Toyota has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of Toyota's misconduct alleged herein, Plaintiff and the Class were not receiving automobiles of the quality, nature, fitness, or value that had been represented by Toyota, and that a reasonable consumer would expect.

556.   Toyota has been unjustly enriched by its fraudulent, deceptive, and otherwise unlawful conduct in connection with the sale and lease of Class Vehicles and by withholding benefits from Plaintiff and the Class at the expense of these parties.

557.   Equity and good conscience militate against permitting Toyota to retain these profits and benefits, and Toyota should be required to make restitution of its ill-gotten gains resulting from the conduct alleged herein.

**D.    Florida**

**COUNT XVII**
**VIOLATION OF THE FLORIDA DECEPTIVE & UNFAIR**
**TRADE PRACTICES ACT ("FDUTPA")**
**FLA. STAT. §§ 501.204, *et seq*.**
**(On Behalf of Plaintiff Toler and the Florida Sub-Class)**

558.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

559.   This claim is brought by Plaintiff Toler on behalf of the Florida Sub-Class.

560.   The FDUPTA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." FLA. STAT. § 501.204(1).

561.   In the course of Toyota's business, it willfully failed to disclose and actively concealed the Defect in Class Vehicles as described herein.

562.   Accordingly, Toyota engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices as defined in FLA. STAT. § 501.204(1), including representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard and quality when they are not; advertising Class Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

563.   Toyota's actions as set forth above occurred in the conduct of trade or commerce.

564.   Plaintiff and Florida Sub-Class members relied on Toyota to make full disclosure as to the true nature of the Class Vehicles, namely the existence of the Defect, and in reliance thereupon and in light of this omission, Plaintiff and Florida Sub-Class members were deceived. Had the Defect been disclosed, Plaintiff and Florida Sub-Class members would not have paid for their Class Vehicles, or would have paid less.

565.   Toyota's conduct proximately caused injuries to Plaintiff Toler and the other Class members.

566.   Plaintiff Toler and the other Class members were injured as a result of Toyota's conduct in that Plaintiff Toler and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class

Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Toyota's misrepresentations and omissions.

567.   Plaintiff is entitled to actual damages and, pursuant to FLA. STAT. § 501.2105, reasonable costs and attorneys' fees.

<div align="center">

**COUNT XVIII**
**BREACH OF EXPRESS WARRANTY**
**FLA. STAT. § 672.313**
**(On Behalf of Plaintiff Toler and the Florida Sub-Class)**

</div>

568.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

569.   This claim is brought by Plaintiff Toler on behalf of the Florida Sub-Class.

570.   Toyota is and was at all relevant times a merchant with respect to motor vehicles.

571.   In its Warranty and in advertisements, brochures, and through other statements in the media, Toyota expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. For example, the following language appears in all Class Vehicle Warranty manuals: "This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota, subject to the exceptions indicated under 'What Is Not Covered' . . . ."

572.   Toyota's Warranty, as well as advertisements, brochures, and other statements in the media regarding the Class Vehicles, formed the basis of the bargain that was reached when Plaintiff Toler and the other Class members purchased or leased their Class Vehicles.

573.   Toyota breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Toyota. Toyota has not repaired or adjusted, and has been unable to repair or adjust, the Class Vehicles'

<div align="right">

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

</div>

materials and workmanship defects, namely the soy- or bio-based electrical wiring parts and components.

574.   At the time of selling or leasing Class Vehicles, Toyota did not provide Class Vehicles that conformed to its express warranties.

575.   The Warranty of repair and/or adjustments to defective parts fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff Toler and the other Class members whole and because Toyota has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

576.   Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

577.   Also, as alleged in more detail herein, at the time that Toyota warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranties and were inherently defective, and Toyota wrongfully and fraudulently misrepresented and/or concealed material facts regarding its Class Vehicles. Plaintiff and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

578.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as many incidental and consequential damages have already been suffered due to Toyota's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Class members' remedies would be insufficient to make Plaintiff and the other Class members whole.

579.   Furthermore, the application of (or refusal to permit coverage under) the Warranty is unconscionable and inadequate to protect Plaintiff and members of the

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

Class given that Toyota knew of the Defect but failed and fails to disclose it. A gross disparity in bargaining power existed between Toyota and Class members, and Toyota knew or should have known that the Class Vehicles were defective at the time of sale and that the wiring systems would fail well before their useful lives.

580.   Finally, due to Toyota's breach of warranties as set forth herein, Plaintiff Toler and the other Class members assert as an additional and/or alternative remedy, as set forth in FLA. STAT. § 672.608, for a revocation of acceptance of the goods, and for a return to Plaintiff and to the other Class members of the purchase price of all Class Vehicles currently owned for such other incidental and consequential damages as allowed under FLA. STAT. §§ 672.711 and 672.608.

581.   Toyota was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the other Class members before or within a reasonable amount of time after the allegations of the Defect became public.

582.   As a direct and proximate result of Toyota's breach of express warranties, Plaintiff Toler and the other Class members have been damaged in an amount to be determined at trial.

## COUNT XIX
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### FLA. STAT. § 672.314
### (On Behalf of Plaintiff Toler and the Florida Sub-Class)

583.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

584.   This claim is brought by Plaintiff Toler on behalf of the Florida Sub-Class.

585.   Toyota is and was at all relevant times a merchant with respect to motor vehicles.

586.   A warranty that the Class Vehicles were in merchantable condition is

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

implied by law.

587.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective in that they contain soy- or bio-based electrical wiring (or other parts) that is predisposed to rodents and rodent damage, and which damage frequently renders Class Vehicles partially or wholly inoperable.

588.   Furthermore, the application of (or refusal to permit coverage under) the Warranty is unconscionable and inadequate to protect Plaintiff and members of the Class given that Toyota knew of the Defect but failed and fails to disclose it. A gross disparity in bargaining power existed between Toyota and Class members, and Toyota knew or should have known that the Class Vehicles were defective at the time of sale and that the wiring systems would fail well before their useful lives.

589.   Toyota was provided notice of these issues by numerous complaints filed against it, including the instant Complaint, and by numerous individual letters and communications sent by Plaintiffs and other Class members before or within a reasonable amount of time after the allegations of the Defect became public.

590.   As a direct and proximate result of Toyota's breach of the implied warranty of merchantability, Plaintiff Toler and the other Class members have been damaged in an amount to be proven at trial.

591.   To the extent it is required, the parties are in privity or, alternatively, Plaintiff and Class members are the intended beneficiaries of Toyota's contracts.

### COUNT XX
### FRAUD/FRAUDULENT CONCEALMENT
### (On Behalf of Plaintiff Toler and the Florida Sub-Class)

592.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

593.   This claim is brought by Plaintiff Toler on behalf of the Florida Sub-

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

Class.

594.    Defendants concealed and suppressed material facts concerning the performance and quality of the Class Vehicles – namely, the Defect – and the quality of the Toyota brand. Specifically, Defendants knew of (or should have known of) the Defect, but failed to disclose it prior to or at the time it sold or leased Class Vehicles to consumers. Defendants did so in order to boost sales and leases of Class Vehicles.

595.    Plaintiff and Class members did not, and could not, unravel Defendants' deception on their own.

596.    Defendants had a duty to disclose the true performance of the Class Vehicles and the Defect because knowledge thereof and the details related thereto were known and/or accessible only to Defendants; Defendants had superior knowledge and access to the facts; and Defendants knew the facts were not known to, or reasonably discoverable, by Plaintiff and the Class. Defendants also had a duty to disclose because they made many general affirmative representations about the about the qualities of the Class Vehicles.

597.    On information and belief, Defendants still have not made full and adequate disclosures, and continue to defraud consumers by concealing material information regarding the Defect and the performance and quality of Class Vehicles.

598.    Plaintiff and the Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or leased the Class Vehicles. Plaintiff's and the Class' actions were justified. Defendants were in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Class.

599.    Plaintiff and the Class relied upon Defendants representations and omissions regarding the quality of Class Vehicles and the Defect in deciding to

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

purchase or lease Class Vehicles.

600.    Because of the concealment and/or suppression of the facts, Plaintiff and the Class sustained damage because they did not receive the value of the premium price paid for their Class Vehicles. Plaintiff and Class members would have paid less for Class Vehicles had they known about the Defect and the entire truth about them, or they would not have purchased or leased Class Vehicles at all.

601.    Accordingly, Defendants are liable to Plaintiff and the Florida Sub-Class for damages in an amount to be proven at trial.

602.    Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Class' rights and well-being to enrich Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT XXI
## UNJUST ENRICHMENT
### (On Behalf of Plaintiff Toler and the Florida Sub-Class)

603.    Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

604.    This claim is brought by Plaintiff Toler on behalf of the Florida Sub-Class. This claim is pled in the alternative to the other claims set forth herein.

605.    As the intended and expected result of its conscious wrongdoing, Toyota has profited and benefited from Plaintiff's and Class members' purchase of Class Vehicles containing the Defect.

606.    Toyota has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of Toyota's misconduct alleged herein, Plaintiff and the Class were not receiving automobiles of the quality, nature, fitness, or value that had been represented by Toyota, and that a reasonable consumer would expect.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

607.    Toyota has been unjustly enriched by its fraudulent, deceptive, and otherwise unlawful conduct in connection with the sale and lease of Class Vehicles and by withholding benefits from Plaintiff and the Class at the expense of these parties.

608.    Equity and good conscience militate against permitting Toyota to retain these profits and benefits, and Toyota should be required to make restitution of its ill-gotten gains resulting from the conduct alleged herein.

**E.    Georgia**

**COUNT XXII**
**VIOLATION OF THE GEORGIA FAIR BUSINESS PRACTICES ACT**
**GA. CODE ANN. §§ 10-1-390, *et seq*. ("GFBPA")**
**(On Behalf of Plaintiff York and the Georgia Sub-Class)**

609.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

610.    This claim is brought by Plaintiff York on behalf of the Georgia Sub-Class.

611.    GA. CODE ANN. § 10-1-393, provides that: "Unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce is declared unlawful."

612.    Toyota's conduct alleged herein is in violation of the GFBPA under GA. CODE ANN. § 10-1-393(b) which makes the following conduct unlawful:

> (2) Causing actual confusion or actual misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

> (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have;

> (7) Representing that good or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another; and

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

(9) Advertising goods or services with intent not to sell them as advertised.

613.   Defendants are "persons" as that term is defined under GA. CODE ANN. § 10-1-392(a)(24).

614.   Plaintiffs and Class members are "consumers" as that term is defined under GA. CODE ANN. § 10-1-392(a)(6).

615.   All of the advertisements, marketing, statements, omissions, and representations made by Defendants qualify as "Consumer acts or practices" under GA. CODE ANN. § 10-1-392(a)(7).

616.   Toyota's business practices, in advertising, marketing, and selling or leasing Class Vehicles, in misrepresenting or concealing material facts, including that the Class Vehicles contained the Defect, constitute multiple, separate violations of GA. CODE ANN. § 10-1-393, including:

    a.   Falsely representing that the Class Vehicles had accessories, characteristics, ingredients, uses, or benefits which they did not actually possess;

    b.   Falsely representing that the Class Vehicles are of a particular standard, quality, grade, style, or model which they are not;

    c.   Failing to state material facts regarding the Defect in the Class Vehicles, the failure of which deceived or tends to deceive consumers, including Plaintiff and Class members;

    d.   Advertising or offering the Class Vehicles for sale without the intent to sell them with the advertised capabilities, performance, specifications, qualities, and characteristics (*i.e.*, free of the Defect); and

    e.   Misrepresenting, and/or knowingly concealing, suppressing, or omitting material facts, including the Class Vehicles' actual

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

capabilities,   performance,   specifications,   including   the propensity of the Defect to manifest in Class Vehicles.

617.   Defendants engaged in the above conduct in the course of its business, as set forth herein. By way of statements and advertisements Toyota made to Plaintiff and Class members prior to and at the time of sale or lease regarding the capabilities, performance, specifications, qualities, and characteristics the Class Vehicles, Defendants made false and misleading representations or omissions of material fact with the intent that Plaintiff and Class members would rely upon them. By not stating or advertising the Class Vehicles' actual capabilities, performance, specifications, qualities, and characteristics, Defendants omitted material facts, which it knew Plaintiff and Class members would otherwise rely upon in deciding whether to purchase or lease Class Vehicles.

618.   As a result of Defendants' unlawful conduct, Plaintiff and Class members were injured and suffered damages and are entitled to monetary, injunctive, and other equitable relief as determined by the Court, pursuant to Georgia law.

619.   Defendants' conduct was intentional and willful, entitling Plaintiff and Class members to an award of trebled damages pursuant to GA. CODE. ANN. § 10-1-399(c).

620.   Plaintiff and Class members are entitled to an award of costs of suit and reasonable attorneys' fees pursuant to GA. CODE. ANN. § 10-1-399(d).

621.   On or about March 28, 2017, Plaintiff York notified Toyota of the damages and Defect in his Class Vehicle in satisfaction of GA. CODE ANN. § 10-1-399(b).  Plaintiff York has made pre-suit attempts to remedy the Defect in his Class Vehicle, to no avail.

///

///

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

**COUNT XXIII**
**VIOLATIONS OF THE GEORGIA UNIFORM**
**DECEPTIVE TRADE PRACTICES ACT**
**GA. CODE ANN. §§ 10-1-370, *et seq.* ("Georgia DTPA")**
**(On Behalf of Plaintiff York and the Georgia Sub-Class)**

622.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

623.    This claim is brought by Plaintiff York on behalf of the Georgia Sub-Class.

624.    Defendants, Plaintiff, and the Georgia Sub-Class are "persons" within the meaning of the Georgia DTPA. GA. CODE. ANN. § 10-1-371(5).

625.    The Georgia DTPA prohibits "deceptive trade practices," which include the "misrepresentation of standard or quality of goods or services," and "engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." GA. CODE. ANN. § 10-1-372(a).

626.    In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles, namely the Defect. During normal operations, the Class Vehicles would experience rodent or other animal damage in Class Vehicle wiring because of the bio-based materials in the wiring.

627.    Plaintiff and Georgia Sub-Class members had no way of discerning Toyota's omissions or that Toyota' representations were false and misleading because the Defect involves and entails extremely sophisticated technology and technical specifications relating to manufacturing of which only Toyota possesses knowledge. Plaintiff and Georgia Sub-Class members did not and could not unravel Toyota's deception on their own.

628.    Defendants thus violated the Georgia DTPA by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

or lease of Class Vehicles.

629.   Defendants engaged in misleading, false, unfair or deceptive acts or practices that violated the Georgia DTPA by failing to disclose and actively concealing the Defect, by marketing Class Vehicles as being of high quality, and by presenting itself as a reputable manufacturer that stood behind Class Vehicles after they were sold or leased.

630.   Defendants knew the true nature of the Class Vehicles and the Defect, but concealed all of that information from Plaintiff and consumers. Indeed, Defendants have acknowledged the Defect in written statements to the media and elsewhere, but still failed to disclose it to consumers or to provide a warning.

631.   Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiff and the Georgia Sub-Class.

632.   Defendants knew or should have known that their conduct violated the Georgia DTPA.

633.   Defendants owed Plaintiff a duty to disclose the Defect because they:

     a.     possessed exclusive knowledge that they were manufacturing, selling, and distributing Class Vehicles containing the Defect;

     b.     intentionally concealed the foregoing from Plaintiff and Class members; and/or

     c.     made incomplete representations about the quality, functionality, safety, or other characteristics of Class Vehicles generally, including the related warranties, while purposefully withholding material facts from Plaintiff that contradicted these representations.

634.   Defendants' concealment of the Defect and true characteristics of the Class Vehicles were material to Plaintiff and the Georgia Sub-Class. Had Plaintiff

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

and members of the Georgia Sub-Class known of the Defect, they would not have purchased or leased Class Vehicles, or would have paid significantly less.

635.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true nature, quality, and characteristics of the Class Vehicles, the Defect, and Toyota's brand.

636.   Plaintiff and the Georgia Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material information. Plaintiff's and Georgia Sub-Class members Class Vehicles have also suffered diminished value, as well as lost or diminished use.

637.   Defendants had an ongoing duty to all Toyota customers to refrain from unfair and deceptive practices under the Georgia DTPA. All owners or lessees of Class Vehicles suffered ascertainable losses, including out of pocket expenses, future repairs, loss of use, and diminished value.

638.   Defendants' violations present a continuing risk to Plaintiff as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

639.   As a direct and proximate result of Defendants' violations of the Georgia DTPA, Plaintiff and the Georgia Sub-Class have suffered injury-in-fact and/or actual damage.

640.   Plaintiff seeks an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia DTPA per GA. CODE ANN. § 10-1-373.

641.   Plaintiff and Class members are entitled to an award of costs of suit and reasonable attorneys' fees pursuant to GA. CODE. ANN. § 10-1-373(b)(2) because Toyota willfully engaged in the conduct alleged herein with knowledge that this conduct was and is deceptive.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

### COUNT XXIV
### BREACH OF EXPRESS WARRANTY
### GA. CODE ANN. § 11-2-313
### (On Behalf of Plaintiff York and the Georgia Sub-Class)

642.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

643.   This claim is brought by Plaintiff York on behalf of the Georgia Sub-Class.

644.   Toyota is and was at all times a "merchant" and the Class Vehicles are "goods."

645.   Class Vehicles are accompanied by Toyota's 36 months/36,000 miles Warranty. *See* Ex. A.

646.   In its Warranty and in advertisements, brochures, and through other statements, Toyota expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period.  For example, the following language appears in all Class Vehicle Warranty and Maintenance Guides:

**WHAT IS COVERED AND HOW LONG**

**Basic Warranty**

This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota, subject to the exceptions indicated under "What Is Not Covered" . . . .

*See id.*

647.   Toyota's Warranty does not exclude rodent or animal damage of the type suffered by Plaintiffs and Class members to their Class Vehicles.

648.   Toyota's Warranty as well as advertisements, brochures, and other statements regarding the Class Vehicles, formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

Vehicles. GA. CODE ANN. § 11-2-313.

649.   Toyota breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Toyota, as provided for under the Warranty.  Toyota has not repaired or adjusted, and has been unable to repair or adjust, the Class Vehicles' materials and workmanship defects under the terms of the Warranty.

650.   Toyota breached express warranties by selling or leasing to Plaintiff and Class Members Class Vehicles with defective wiring which Toyota knew or should have known attracts rodents and other pests and which makes wiring systems in the Class Vehicles prone to rodent or other animal damage, causing Class Vehicles to fail prematurely and/or fail to function properly.

651.   In addition, since Toyota knew or should have known about the Defect, the warranty failed its essential purpose.

652.   Furthermore, the limited warranty of repair and/or adjustments to defective parts also fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because Toyota has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

653.   Furthermore, the application of (or refusal to permit coverage under) the Warranty is unconscionable and inadequate to protect Plaintiff and members of the Class given that Toyota knew of the Defect but failed and fails to disclose it. A gross disparity in bargaining power existed between Toyota and Class members, and Toyota knew or should have known that the Class Vehicles were defective at the time of sale and that the wiring systems would fail well before their useful lives.

654.   Toyota's attempts to disclaim or limit its warranties vis-à-vis consumers are unenforceable under the circumstances here.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

655.   Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiff, individually and on behalf of the other Class members, seek all remedies as allowed by law.

656.   Also, as alleged in more detail herein, at the time that Toyota warranted and sold or leased the Class Vehicles, it knew that the Class Vehicles did not conform to the warranties and were inherently defective, and Toyota wrongfully and fraudulently misrepresented and/or concealed material facts regarding its Class Vehicles.  Plaintiff and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

657.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as many incidental and consequential damages have already been suffered due to Toyota's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Class members' remedies would be insufficient to make Plaintiff and the other Class members whole.

658.   The intended failure to disclose the known Defect is malicious, and it was carried out by Toyota with willful and wanton disregard for the rights and economic interests of Plaintiff and Class Members.

659.   As a direct and proximate result of Toyota's breach of express warranties, Plaintiff and the other Class members have suffered direct and consequential damages in an amount to be determined at trial, including but not limited to costly repairs, loss of vehicle use, substantial loss in value and resale value of the vehicles, and other related damage.

660.   Due to Toyota's breach of warranties as set forth herein, Plaintiff and

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

the other Class members assert as an additional and/or alternative remedy for a revocation of acceptance of the goods, and for a return to Plaintiff and to the other Class members of the purchase price of all Class Vehicles currently owned for such other incidental and consequential damages as allowed by law.

661.   Toyota was provided notice of these issues by numerous complaints filed against it, including the instant Complaint, and by numerous individual letters and communications sent by consumers and Class members.

662.   Plaintiff and Class members have complied with all obligations under the Warranty, or otherwise have been excused from performance of said obligations as a result of Toyota's conduct described herein.

<div align="center">

**COUNT XXV**
**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
**GA. CODE ANN. § 11-2-314**
**(On Behalf of Plaintiff York and the Georgia Sub-Class)**

</div>

663.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

664.   This claim is brought by Plaintiff York on behalf of the Georgia Sub-Class.

665.   Toyota is and was at all times a "merchant" and the Class Vehicles are "goods."

666.   A warranty that the Class Vehicles were in merchantable condition is implied by law.

667.   Toyota impliedly warranted that the Class Vehicles were of a good and merchantable condition and quality – fit and safe for their ordinary intended use, and would be reasonably safe.

668.   The Class Vehicles were defective at the time they left the possession of Toyota. Toyota knew of the Defect at the time these transactions occurred. Thus, the Class Vehicles, when sold or leased, and at all times thereafter, were not in

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

merchantable condition or quality and are not fit for their ordinary intended purpose.

669.   As a direct and proximate result of the breach of said warranties, Plaintiff and Class members were injured and are entitled to damages.

670.   Toyota's attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Toyota's Warranty limitations are unenforceable because Toyota knowingly sold a defective product without informing consumers about the Defect.

671.   Furthermore, the application of (or refusal to permit coverage under) the Warranty is unconscionable and inadequate to protect Plaintiff and members of the Class given that Toyota knew of the Defect but failed and fails to disclose it. A gross disparity in bargaining power existed between Toyota and Class members, and Toyota knew or should have known that the Class Vehicles were defective at the time of sale and that the wiring systems would fail well before their useful lives.

672.   Plaintiff and Class members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of Toyota's conduct described herein.

673.   Toyota was provided notice of these issues by complaints lodged by consumers directly or via NHTSA and elsewhere—which vehicle manufacturers like Toyota routinely monitor—before or within a reasonable amount of time after the allegations of the Defect became public. Notwithstanding such notice, Toyota failed to offer an effective remedy.

674.   To the extent it is required, the parties are in privity or, alternatively, Plaintiff and Class members are the intended beneficiaries of Toyota's contracts.

### COUNT XXVI
### FRAUD/FRAUDULENT CONCEALMENT
### (On Behalf of Plaintiff York and the Georgia Sub-Class)

675.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

676.   This claim is brought by Plaintiff York on behalf of the Georgia Sub-Class.

677.   Defendants concealed and suppressed material facts concerning the performance and quality of the Class Vehicles – namely, the Defect – and the quality of the Toyota brand. Specifically, Defendants knew of (or should have known of) the Defect, but failed to disclose it prior to or at the time it sold or leased Class Vehicles to consumers. Defendants did so in order to boost sales and leases of Class Vehicles.

678.   Plaintiff and Class members did not, and could not, unravel Defendants' deception on their own.

679.   Defendants had a duty to disclose the true performance of the Class Vehicles and the Defect because knowledge thereof and the details related thereto were known and/or accessible only to Defendants; Defendants had superior knowledge and access to the facts; and Defendants knew the facts were not known to, or reasonably discoverable, by Plaintiff and the Class. Defendants also had a duty to disclose because they made many general affirmative representations about the about the qualities of the Class Vehicles.

680.   On information and belief, Defendants still have not made full and adequate disclosures, and continue to defraud consumers by concealing material information regarding the Defect and the performance and quality of Class Vehicles.

681.   Plaintiff and the Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or leased the Class Vehicles. Plaintiff's and the Class' actions were justified. Defendants were in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Class.

682.   Plaintiff and the Class relied upon Defendants representations and

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

omissions regarding the quality of Class Vehicles and the Defect in deciding to purchase or lease Class Vehicles.

683.    Because of the concealment and/or suppression of the facts, Plaintiff and the Class sustained damage because they did not receive the value of the premium price paid for their Class Vehicles. Plaintiff and Class members would have paid less for Class Vehicles had they known about the Defect and the entire truth about them, or they would not have purchased or leased Class Vehicles at all.

684.    Accordingly, Defendants are liable to Plaintiff and the Georgia Sub-Class for damages in an amount to be proven at trial.

685.    Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Class' rights and well-being to enrich Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT XXVII
## UNJUST ENRICHMENT
### (On Behalf of Plaintiff York and the Georgia Sub-Class)

686.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

687.    This claim is brought by Plaintiff York on behalf of the Georgia Sub-Class. This claim is pled in the alternative to the other claims set forth herein.

688.    As the intended and expected result of its conscious wrongdoing, Toyota has profited and benefited from Plaintiff's and Class members' purchase of Class Vehicles containing the Defect.

689.    Toyota has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of Toyota's misconduct alleged herein, Plaintiff and the Class were not receiving automobiles of the quality, nature, fitness, or value that had been represented by Toyota, and that a reasonable

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

consumer would expect.

690.    Toyota has been unjustly enriched by its fraudulent, deceptive, and otherwise unlawful conduct in connection with the sale and lease of Class Vehicles and by withholding benefits from Plaintiff and the Class at the expense of these parties.

691.    Equity and good conscience militate against permitting Toyota to retain these profits and benefits, and Toyota should be required to make restitution of its ill-gotten gains resulting from the conduct alleged herein.

### COUNT XXVIII
### BAD FAITH LITIGATION EXPENSES
### GA. CODE ANN. § 13-6-11
### (On Behalf of Plaintiff York and the Georgia Sub-Class)

692.    Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

693.    This claim is brought by Plaintiff York on behalf of the Georgia Sub-Class.

694.    The fraudulent conduct and other conduct of Toyota as alleged herein constitutes bad faith such as to warrant an award to Plaintiffs and the Class their expenses of litigation, including reasonable attorneys' fees, pursuant to GA. CODE ANN. § 13-6-11.

**F.    Idaho**

### COUNT XXIX
### VIOLATION OF THE IDAHO CONSUMER PROTECTION ACT
### IDAHO CODE §§ 48-601, *et seq.* ("IDCPA")
### (On Behalf of Plaintiff Munns and the Idaho Sub-Class)

695.    Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

696.    This claim is brought by Plaintiff Munns on behalf of the Idaho Sub-Class.

697.    Toyota is a "person" under the IDCPA. IDAHO CODE § 48-602(1).

698.    Toyota's acts or practices as set forth above occurred in the conduct of

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

"trade" or "commerce" under IDAHO CODE § 48-602(2).

699.   Toyota participated or engaged in misleading, false, or deceptive acts that violated the IDCPA. By willfully failing to disclose and actively concealing the Defect, Toyota engaged in deceptive business practices prohibited by the IDCPA, including: (1) representing that the Class Vehicles have characteristics, uses, and benefits which they do not have; (2) representing that the Class Vehicles are of a particular standard, quality, and grade when they are not; (3) advertising the Class Vehicles with the intent not to sell them as advertised; (4) engaging in acts or practices which are otherwise misleading, false, or deceptive to consumers; and (5) engaging in any unconscionable method, act or practice in the conduct of trade or commerce. *See* IDAHO CODE § 48-603.

700.   In the course of its business, Toyota willfully failed to disclose and actively concealed the Defect, as discussed herein, and otherwise engaged in activities with a tendency or capacity to deceive. Toyota also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Class Vehicles.

701.   Toyota knew of the Defect, but concealed this information. Toyota was also aware that it valued profits over safety, and that it was manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised and jeopardized the safety of the vehicle's occupants. Toyota concealed this information as well.

702.   By failing to disclose the Defect, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold or leased, Toyota engaged in deceptive business practices in violation of the IDCPA.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

703.   Toyota's unfair or deceptive acts or practices were likely to, and did in fact, deceive reasonable consumers, including Plaintiff and the other Class members, about the true performance of Class Vehicles, the quality of the Toyota brand, the devaluing of safety and performance at Toyota, and the true value of the Class Vehicles.

704.   Toyota intentionally and knowingly misrepresented material facts regarding the Class Vehicles with an intent to mislead Plaintiff and the Idaho Class.

705.   Toyota knew or should have known that its conduct violated the IDCPA.

706.   Toyota owed Plaintiff a duty to disclose the true safety, performance, and reliability of the Class Vehicles and the devaluing of safety and performance at Toyota because Toyota:

a.   Possessed exclusive knowledge that it valued profits and cost-cutting over safety and performance, and that it was manufacturing, selling, and distributing vehicles throughout the United States that contained the Defect and did not perform as advertised;

b.   Intentionally concealed the foregoing from Plaintiff and the Class; and/or

c.   Made incomplete representations about the quality, the safety and performance of the Class Vehicles generally, and the Defect in particular, while purposefully withholding material facts from Plaintiff and the Class that contradicted these representations.

707.   Because Toyota fraudulently concealed the Defect and the true performance of Class Vehicles, resulting in a raft of negative publicity once the Defect came to the attention of the public, the value of the Class Vehicles has greatly diminished. In light of the stigma attached to those vehicles by Toyota's conduct, they are now worth significantly less than they otherwise would be.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

708.   Toyota's fraudulent omissions relating to Class Vehicle and the Defect and the true performance of Class Vehicles were material to Plaintiff and the Idaho Sub-Class. A vehicle made by a reputable manufacturer of safe, high-performing, vehicles with wiring that will not be subjected to diminished integrity or damage by animals is safer and worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe, rodent-damage-prone vehicles that conceal defects rather than promptly remedying them.

709.   Plaintiff and the Idaho Sub-Class suffered ascertainable loss caused by Toyota's misrepresentations and its concealment of and failure to disclose material information. Class members who purchased the Class Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all but for Toyota's violations of the IDCPA.

710.   Toyota had an ongoing duty to all Toyota customers to refrain from unfair and deceptive practices under the IDCPA. All owners of Class Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Toyota's deceptive and unfair acts and practices made in the course of Toyota's business.

711.   Toyota's violations present a continuing risk to Plaintiff as well as to the general public. Toyota's unlawful acts and practices complained of herein affect the public interest.

712.   As a direct and proximate result of Toyota's violations of the IDCPA, Plaintiff and the Idaho Sub-Class have suffered injury-in-fact and/or actual damage.

713.   Pursuant to IDAHO CODE § 48-608, Plaintiff, individually and on behalf of the Idaho Sub-Class, seeks monetary relief against Toyota, measured as the greater of (a) actual damages in an amount to be determined at trial, and (b) statutory damages in the amount of $1,000 for each Plaintiff and each Idaho Sub-Class member.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

714.   Plaintiff also seeks an order enjoining Toyota's unfair, unlawful, and/or deceptive practices, attorneys' fees (pursuant to IDAHO CODE § 48-608(5)), and any other just and proper relief available under the IDCPA.

715.   Plaintiff also seeks punitive damages against Toyota because Toyota's conduct evidences an extreme deviation from reasonable standards and its conduct. Toyota repeatedly flagrantly, maliciously, and fraudulently misrepresented the safety and performance of the Class Vehicles, deceived Class members on life-or-death matters, concealed material facts that only they knew, and promised Class members all vehicles were safe—all to avoid the expense and public relations nightmare of correcting a noxious flaw in the Class Vehicles. Toyota's unlawful conduct constitutes malice, oppression, and fraud, warranting punitive damages pursuant to IDAHO CODE § 48-608(1).

716.   Furthermore, in addition to the remedies available under IDAHO CODE § 48-608(1), each elderly and disabled person comprising the Idaho Sub-Class who was victimized by Toyota's conduct alleged herein is entitled to an enhanced penalty of the greater of $15,000 or trebled damages. IDAHO CODE § 48-608(2).

## COUNT XXX
## BREACH OF EXPRESSS WARRANTY
### IDAHO CODE § 28-2-313
### (On Behalf of Plaintiff Munns and the Idaho Sub-Class)

717.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

718.   This claim is brought by Plaintiff Munns on behalf of the Idaho Sub-Class.

719.   Toyota is and was at all relevant times a "merchant" with respect to motor vehicles. IDAHO CODE § 28-2-104(1). The Class Vehicles are "goods." *Id*. § 28-2-105(1).

720.   Class Vehicles are accompanied by Toyota's 36 months/36,000 miles

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

Warranty. *See* Ex. A.

721.   In its Warranty and in advertisements, brochures, and through other statements, Toyota expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period.  For example, the following language appears in all Class Vehicle Warranty and Maintenance Guides:

> **WHAT IS COVERED AND HOW LONG**
>
> **Basic Warranty**
>
> This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota, subject to the exceptions indicated under "What Is Not Covered" . . . .

*See id*.

722.   Toyota's Warranty does not exclude rodent or animal damage of the type suffered by Plaintiffs and Class members to their Class Vehicles.

723.   Toyota's Warranty as well as advertisements, brochures, and other statements regarding the Class Vehicles, formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles. IDAHO CODE § 28-2-313.

724.   Toyota breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Toyota, as provided for under the Warranty.  Toyota has not repaired or adjusted, and has been unable to repair or adjust, the Class Vehicles' materials and workmanship defects under the terms of the Warranty.

725.   Toyota breached express warranties by selling or leasing to Plaintiff and Class Members Class Vehicles with defective wiring which Toyota knew or should have known attracts rodents and other pests and which makes wiring systems in the

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

Class Vehicles prone to rodent or other animal damage, causing Class Vehicles to fail prematurely and/or fail to function properly.

726.   In addition, since Toyota knew or should have known about the Defect, the warranty failed its essential purpose.

727.   The limited warranty of repair and/or adjustments to defective parts also fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because Toyota has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

728.   Furthermore, the application of (or refusal to permit coverage under) the Warranty is unconscionable and inadequate to protect Plaintiff and members of the Class given that Toyota knew of the Defect but failed and fails to disclose it. A gross disparity in bargaining power existed between Toyota and Class members, and Toyota knew or should have known that the Class Vehicles were defective at the time of sale and that the wiring systems would fail well before their useful lives.

729.   Toyota's attempts to disclaim or limit its warranties vis-à-vis consumers are unenforceable under the circumstances here.

730.   Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiff, individually and on behalf of the other Class members, seek all remedies as allowed by law.

731.   Also, as alleged in more detail herein, at the time that Toyota warranted and sold or leased the Class Vehicles, it knew that the Class Vehicles did not conform to the warranties and were inherently defective, and Toyota wrongfully and fraudulently misrepresented and/or concealed material facts regarding its Class Vehicles.  Plaintiff and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

732.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as many incidental and consequential damages have already been suffered due to Toyota's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Class members' remedies would be insufficient to make Plaintiff and the other Class members whole.

733.   The intended failure to disclose the known Defect is malicious, and it was carried out by Toyota with willful and wanton disregard for the rights and economic interests of Plaintiff and Class Members.

734.   As a direct and proximate result of Toyota's breach of express warranties, Plaintiff and the other Class members have suffered direct and consequential damages in an amount to be determined at trial, including but not limited to costly repairs, loss of vehicle use, substantial loss in value and resale value of the vehicles, and other related damage.

735.   Due to Toyota's breach of warranties as set forth herein, Plaintiff and the other Class members assert as an additional and/or alternative remedy for a revocation of acceptance of the goods, and for a return to Plaintiff and to the other Class members of the purchase price of all Class Vehicles currently owned for such other incidental and consequential damages as allowed by law.

736.   Toyota was provided notice of these issues by numerous complaints filed against it, including the instant Complaint, and by numerous individual letters and communications sent by consumers and Class members.

737.   Plaintiff and Class members have complied with all obligations under the Warranty, or otherwise have been excused from performance of said obligations as a result of Toyota's conduct described herein.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

## COUNT XXXI
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
#### IDAHO CODE § 28-2-314
#### (On Behalf of Plaintiff Munns and the Idaho Sub-Class)

738.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

739.   This claim is brought by Plaintiff Munns on behalf of the Idaho Sub-Class.

740.   Toyota is and was at all relevant times a merchant with respect to motor vehicles under IDAHO CODE § 28-2-104(1).

741.   A warranty that the Class Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to Idaho Code § 28-2-314.

742.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles suffer from an inherent Defect, as alleged herein.

743.   Toyota was provided notice of these issues by numerous complaints filed against it, including this Complaint, and by numerous individual letters, telephone calls, and other communications sent by Plaintiffs and other Class members before or within a reasonable amount of time after the allegations of the Defect became public.

744.   Plaintiff and the other Class members have had sufficient direct dealings with either Toyota or its agents (dealerships) to establish privity of contract between Toyota, on the one hand, and Plaintiffs and the other Class members, on the other hand. Notwithstanding this, privity is not required in this case because Plaintiffs and the other Class members are intended third-party beneficiaries of contracts between Toyota and its dealers; specifically, they are the intended beneficiaries of Toyota's implied warranties. The dealers were not intended to be the ultimate consumers of

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because Plaintiffs' and the other Class members' Class Vehicles are dangerous instrumentalities due to the aforementioned Defect and nonconformities.

745.   Furthermore, the application of (or refusal to permit coverage under) the Warranty is unconscionable and inadequate to protect Plaintiff and members of the Class given that Toyota knew of the Defect but failed and fails to disclose it. A gross disparity in bargaining power existed between Toyota and Class members, and Toyota knew or should have known that the Class Vehicles were defective at the time of sale and that the wiring systems would fail well before their useful lives.

746.   As a direct and proximate result of Toyota's breach of the warranty of merchantability, Plaintiff Munns and the other Class members have been damaged in an amount to be proven at trial.

## COUNT XXXII
## FRAUD/FRAUDULENT CONCEALMENT
### (On Behalf of Plaintiff Munns and the Idaho Sub-Class)

747.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

748.   This claim is brought by Plaintiff Munns on behalf of the Idaho Sub-Class.

749.   Defendants concealed and suppressed material facts concerning the performance and quality of the Class Vehicles – namely, the Defect – and the quality of the Toyota brand. Specifically, Defendants knew of (or should have known of) the Defect, but failed to disclose it prior to or at the time it sold or leased Class Vehicles to consumers. Defendants did so in order to boost sales and leases of Class Vehicles.

750.   Plaintiff and Class members did not, and could not, unravel

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

Defendants' deception on their own.

751.    Defendants had a duty to disclose the true performance of the Class Vehicles and the Defect because knowledge thereof and the details related thereto were known and/or accessible only to Defendants; Defendants had superior knowledge and access to the facts; and Defendants knew the facts were not known to, or reasonably discoverable, by Plaintiff and the Class. Defendants also had a duty to disclose because they made many general affirmative representations about the about the qualities of the Class Vehicles.

752.    On information and belief, Defendants still have not made full and adequate disclosures, and continue to defraud consumers by concealing material information regarding the Defect and the performance and quality of Class Vehicles.

753.    Plaintiff and the Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or leased the Class Vehicles. Plaintiff's and the Class' actions were justified. Defendants were in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Class.

754.    Plaintiff and the Class relied upon Defendants representations and omissions regarding the quality of Class Vehicles and the Defect in deciding to purchase or lease Class Vehicles.

755.    Because of the concealment and/or suppression of the facts, Plaintiff and the Class sustained damage because they did not receive the value of the premium price paid for their Class Vehicles. Plaintiff and Class members would have paid less for Class Vehicles had they known about the Defect and the entire truth about them, or they would not have purchased or leased Class Vehicles at all.

756.    Accordingly, Defendants are liable to Plaintiff and the Georgia Sub-Class for damages in an amount to be proven at trial.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

757.    Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Class' rights and well-being to enrich Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT XXXIII**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff Munns and the Idaho Sub-Class)**

758.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

759.    This claim is brought by Plaintiff Munns on behalf of the Idaho Sub-Class. This claim is pled in the alternative to the other claims set forth herein.

760.    As the intended and expected result of its conscious wrongdoing, Toyota has profited and benefited from Plaintiff's and Class members' purchase of Class Vehicles containing the Defect.

761.    Toyota has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of Toyota's misconduct alleged herein, Plaintiff and the Class were not receiving automobiles of the quality, nature, fitness, or value that had been represented by Toyota, and that a reasonable consumer would expect.

762.    Toyota has been unjustly enriched by its fraudulent, deceptive, and otherwise unlawful conduct in connection with the sale and lease of Class Vehicles and by withholding benefits from Plaintiff and the Class at the expense of these parties.

763.    Equity and good conscience militate against permitting Toyota to retain these profits and benefits, and Toyota should be required to make restitution of its ill-gotten gains resulting from the conduct alleged herein.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

**G.     Illinois**

<u>**COUNT XXXIV**</u>
**VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND**
**DECEPTIVE BUSINESS PRACTICES ACT ("Illinois CFA")**
**815 ILL. COMP. STAT. §§ 505/1, *et seq.***
**(On Behalf of Plaintiff Siffermann and the Illinois Sub-Class)**

764.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

765.   This claim is brought on behalf of Plaintiff Siffermann and the Illinois Sub-Class.

766.   Plaintiff and the Illinois Sub-Class are "consumers" as that term is defined in 815 ILL. COMP. STAT. § 505/1(e).

767.   Toyota's acts or practices as set forth above occurred in the conduct of "trade" or "commerce" under 815 ILL. COMP. STAT. § 505/2.

768.   Toyota participated in misleading, false, or deceptive acts that violated the Illinois CFA. By willfully failing to disclose and actively concealing the Defect, Toyota engaged in deceptive business practices prohibited by the Illinois CFA, including "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby." 815 ILL. COMP. STAT. § 505/2.

769.   In the course of its business, Toyota willfully failed to disclose and actively concealed the Defect discussed herein and otherwise engaged in activities with a tendency or capacity to deceive. Toyota also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

connection with the sale and lease of Class Vehicles.

770.   Toyota knew of the presence of the Defect in Class Vehicles, but concealed all of that information.

771.   Toyota was aware that they were manufacturing, selling, and distributing automobiles throughout the United States that did not perform as advertised, including in terms of quality, workmanship, and safety.

772.   By failing to disclose the Defect, and by presenting itself as a reputable automobile manufacturer that stood behind its automobiles after they were leased or sold, Toyota engaged in deceptive business practices in violation of the Illinois CFA.

773.   Toyota's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the other Class members, about the true performance of the Class Vehicles, the quality of the Toyota brand, and the true value of the Class Vehicles.

774.   Toyota intentionally and knowingly misrepresented or omitted material facts regarding the Class Vehicles with an intent to mislead Plaintiff and the Illinois Sub-Class.

775.   Toyota knew or should have known that its conduct violated the Illinois CFA.

776.   Toyota owed Plaintiff a duty to disclose the Defect and the true performance of Class Vehicles because Toyota possessed exclusive knowledge of the Defect in Class Vehicles and that they did not contain the qualities or characteristics, or perform, as advertised; Toyota intentionally concealed the foregoing from Plaintiff and the Class; and/or Toyota made incomplete representations about the Class Vehicles while purposefully withholding material facts from and the Class that contradicted these representations.

777.   Because Toyota fraudulently concealed the Defect, the value of the

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

Class Vehicles has greatly diminished. Class Vehicles are worth significantly less than they otherwise would be.

778.   Toyota's conduct and false representations/omissions were material to Plaintiff and the Illinois Sub-Class.

779.   Plaintiff and the Illinois Sub-Class suffered ascertainable loss caused by Toyota's misrepresentations and its concealment of and failure to disclose material information. Class members who purchased or leased Class Vehicles either would have paid less for their Class Vehicles or would not have purchased or leased them at all but for Toyota's violations of the Illinois CFA.

780.   Toyota had an ongoing duty to consumers to refrain from unfair and deceptive practices under the Illinois CFA. All owners and lessees of Class Vehicles suffered ascertainable loss as a result of Toyota's deceptive and unfair acts and practices made in the course of Toyota's business.

781.   Toyota's violations present a continuing risk to Plaintiff as well as to the general public, including with respect to safety, and have occurred repeatedly and have the potential for repetition. Toyota's unlawful acts and practices complained of herein affect the public interest.

782.   As a direct and proximate result of Toyota's violations of the Illinois CFA, Plaintiff and the Illinois Sub-Class have suffered injury-in-fact and/or actual damage.

783.   Pursuant to 815 ILL. COMP. STAT. § 505/10a(a), Plaintiff Siffermann, individually and on behalf of the other Illinois Sub-Class members, seeks monetary relief against Toyota in the amount of actual damages, as well as punitive damages (pursuant to 815 ILL. COMP. STAT. § 505/10a(c)), because Toyota acted with fraud and/or malice and/or was grossly negligent.

784.   Plaintiff also seeks an order enjoining Toyota's unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

proper relief available under 815 ILL. COMP. STAT. § 505/1, *et seq.*

**COUNT XXXV**
**VIOLATIONS OF THE ILLINOIS UNIFORM DECEPTIVE**
**TRADE PRACTICES ACT ("Illinois DTPA")**
**815 ILL. COMP. STAT. §§ 510/1, *et seq.***
**(On Behalf of Plaintiff Siffermann and the Illinois Sub-Class)**

785.    Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

786.    This claim is brought on behalf of Plaintiff Siffermann and the Illinois Sub-Class.

787.    The Illinois DTPA prohibits deceptive trade practices, including among others,

> (2) causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

> (5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have;

> (7) representing that goods or services are of a particular standard, quality, or grade if they are of another;

> (9) advertising goods or services with intent not to sell them as advertised; and

> (12) engaging in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

788.    Toyota is a "person" as defined in 815 ILL. COMP. STAT. § 510/1(5).

789.    In the course of Toyota's business, it willfully failed to disclose and actively concealed the Defect in Class Vehicles as described above.  Accordingly, Toyota engaged in deceptive trade practices as defined in 815 ILL. COMP. STAT. § 510/2, including representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

of a particular standard and quality when they are not; advertising Class Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

790.   Toyota intended for Plaintiff and the other Class members to rely on its aforementioned unfair and deceptive acts and practices, including the misrepresentations and omissions alleged hereinabove.

791.   Toyota's actions as set forth above occurred in the conduct of trade or commerce.

792.   Toyota knew or should have known that its conduct violated the Illinois DTPA.

793.   Toyota owed Plaintiff a duty to disclose the Defect and the true performance of Class Vehicles because Toyota possessed exclusive knowledge of the Defect in Class Vehicles and that they did not contain the qualities or characteristics, or perform, as advertised; Toyota intentionally concealed the foregoing from Plaintiff and the Class; and/or Toyota made incomplete representations about the Class Vehicles while purposefully withholding material facts from and the Class that contradicted these representations.

794.   Because Toyota fraudulently concealed the Defect, the value of the Class Vehicles has greatly diminished. Class Vehicles are worth significantly less than they otherwise would be.

795.   Toyota's conduct and false representations/omissions were material to Plaintiff and the Illinois Sub-Class.

796.   Plaintiff and the Illinois Sub-Class suffered ascertainable loss caused by Toyota's misrepresentations and its concealment of and failure to disclose material information. Class members who purchased or leased Class Vehicles either would have paid less for their Class Vehicles or would not have purchased or leased them at all but for Toyota's violations of the Illinois DTPA.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

797.   Toyota had an ongoing duty to consumers to refrain from unfair and deceptive acts and practices under the Illinois DTPA. All owners and lessees of Class Vehicles suffered ascertainable loss as a result of Toyota's deceptive and unfair acts and practices made in the course of Toyota's business.

798.   Toyota's conduct alleged herein proximately caused injuries to Plaintiff and the other Class members.

799.   Plaintiff Siffermann and the other Illinois Sub-Class members were injured as a result of Toyota's conduct in that Plaintiff and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Toyota's misrepresentations and omissions in violation of the Illinois DTPA.

800.   Pursuant to 815 ILL. COMP. STAT. § 510/3, Plaintiff and the Class are entitled to an award of injunctive relief to prevent Toyota's deceptive trade practices and, because Toyota's conduct was willful, an award of reasonable attorneys' fees.

## COUNT XXXVI
## BREACH OF EXPRESS WARRANTY
### 810 ILL. COMP. STAT. § 5/2-313
### (On Behalf of Plaintiff Siffermann and the Illinois Sub-Class)

801.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

802.   This claim is brought on behalf of Plaintiff Siffermann and the Illinois Sub-Class.

803.   Toyota is and was at all relevant times a merchant with respect to motor vehicles.

804.   In its New Vehicle Limited Warranty and in advertisements, brochures, and through other statements, Toyota expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

during the warranty period.  For example, the following language appears in all Class Vehicle Warranty and Maintenance Guides:

**WHAT IS COVERED AND HOW LONG**

**Basic Warranty**

This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota, subject to the exceptions indicated under "What Is Not Covered" . . . .

*See* Ex. A.

805.   Toyota's Warranty does not exclude damage of the type suffered by Plaintiffs and Class members in their Class Vehicles.

806.   Toyota's Warranty as well as advertisements, brochures, and other statements regarding the Class Vehicles, formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles.

807.   Toyota breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Toyota.  Toyota has not repaired or adjusted, and has been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

808.   In addition to Toyota's Warranty, Toyota otherwise expressly warranted several attributes, characteristics, and qualities of its Class Vehicles. These warranties are only a sampling of the numerous warranties that Toyota made relating to safety, reliability, and operation.  Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of their Class Vehicles.  These warranties were made, *inter alia*, in advertisements, on Toyota's website, and in uniform statements provided by Toyota to be made by salespeople, or made publicly by Toyota executives or by other

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

authorized Toyota representatives.  These affirmations and promises were part of the basis of the bargain between the parties, thereby constituting express warranties under 810 ILL. COMP. STAT. § 5/2-313.

809.   These additional warranties were also breached because the Class Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.  Toyota did not provide at the time of sale, and has not provided since then, Class Vehicles conforming to its express warranties.

810.   Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because Toyota has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

811.   Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

812.   Also, as alleged in more detail herein, at the time that Toyota warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranties and were inherently defective, and Toyota wrongfully and fraudulently misrepresented and/or concealed material facts regarding its Class Vehicles.  Plaintiff and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

813.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as many incidental and consequential damages have already been suffered due to Toyota's

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Class members' remedies would be insufficient to make Plaintiff and the other Class members whole.

814.   Furthermore, the application of (or refusal to permit coverage under) the Warranty is unconscionable and inadequate to protect Plaintiff and members of the Class given that Toyota knew of the Defect but failed and fails to disclose it. A gross disparity in bargaining power existed between Toyota and Class members, and Toyota knew or should have known that the Class Vehicles were defective at the time of sale and that the wiring systems would fail well before their useful lives.

815.   Toyota was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Class members, within a reasonable amount of time after the allegations of Class Vehicle Defect became public

816.   As a direct and proximate result of Toyota's breach of express warranties, Plaintiff Siffermann has suffered harm and is entitled to damages in an amount to be determined at trial.

817.   Due to Toyota's breach of warranties as set forth herein, Plaintiff and the other Class members assert as an additional and/or alternative remedy, as set forth in 810 ILL. COMP. STAT. § 5/2-608, for a revocation of acceptance of the goods, and for a return to Plaintiff and to the other Class members of the purchase price of all Class Vehicles currently owned for such other incidental and consequential damages as allowed under 810 ILL. COMP. STAT. §§ 5/2-711 and 5/2-608.

## COUNT XXXVII
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### 810 ILL. COMP. STAT. § 5/2-314
### (On Behalf of Plaintiff Siffermann and the Illinois Sub-Class)

818.   Plaintiffs repeat and reallege the allegations above as if fully set forth

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

herein.

819.   This claim is brought on behalf of Plaintiff Siffermann and the Illinois Sub-Class.

820.   Toyota is and was at all relevant times a merchant with respect to motor vehicles.

821.   A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions. 810 ILL. COMP. STAT. § 5/2-314.

822.   At the time Toyota designed, manufactured, produced, tested, studied, inspected, labeled, marketed, advertised, sold/leased, promoted, and distributed its Class Vehicles, Toyota knew of the use for which its Class Vehicles were intended.

823.   These Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Class Vehicles are inherently defective in that certain electrical wiring components in Class Vehicles are coated or designed with soy- or bio-based products that attract rodents which chew, gnaw, or eat through these components, causing damage – including but not limited to partial or total failure – in Class Vehicle electrical and wiring systems.

824.   Furthermore, the application of (or refusal to permit coverage under) the Warranty is unconscionable and inadequate to protect Plaintiff and members of the Class given that Toyota knew of the Defect but failed and fails to disclose it. A gross disparity in bargaining power existed between Toyota and Class members, and Toyota knew or should have known that the Class Vehicles were defective at the time of sale and that the wiring systems would fail well before their useful lives.

825.   Toyota was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Class members.

826.   As a direct and proximate result of Toyota's breach of the warranties

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

827.   To the extent it is required, the parties are in privity or, alternatively, Plaintiff and Class members are the intended beneficiaries of Toyota's contracts.

## COUNT XXXVIII
## FRAUD/FRAUDULENT CONCEALMENT
### (On Behalf of Plaintiff Siffermann and the Illinois Sub-Class)

828.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

829.   This claim is brought on behalf of Plaintiff Siffermann and the Illinois Sub-Class.

830.   Defendants concealed and suppressed material facts concerning the performance and quality of the Class Vehicles – namely, the Defect – and the quality of the Toyota brand. Specifically, Defendants knew of (or should have known of) the Defect, but failed to disclose it prior to or at the time it sold or leased Class Vehicles to consumers. Defendants did so in order to boost sales and leases of Class Vehicles.

831.   Plaintiff and Class members had no way of knowing that Defendants' representations were false and gravely misleading, or that Defendants had omitted imperative details. Plaintiff and Class members did not, and could not, unravel Defendants' deception on their own.

832.   Defendants had a duty to disclose the true performance of the Class Vehicles and the Defect because knowledge thereof and the details related thereto were known and/or accessible only to Defendants; Defendants had superior knowledge and access to the facts; and Defendants knew the facts were not known to, or reasonably discoverable, by Plaintiff and the Class. Defendants also had a duty to disclose because they made many general affirmative representations about the about the qualities of the Class Vehicles.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

833.    On information and belief, Defendants still have not made full and adequate disclosures, and continue to defraud consumers by concealing material information regarding the Defect and the performance and quality of Class Vehicles.

834.    Plaintiff and the Illinois Sub-Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or leased the Class Vehicles. Plaintiff's and the Class' actions were justified. Defendants were in exclusive control of the material facts and such facts were not known to the public, Plaintiff, or the Class.

835.    Plaintiff and the Class relied upon Defendants representations and omissions regarding the quality of Class Vehicles and the Defect in deciding to purchase or lease Class Vehicles.

836.    Because of the concealment and/or suppression of the facts, Plaintiff and the Class sustained damage because they did not receive the value of the premium price paid for their Class Vehicles. Plaintiff and Class members would have paid less for Class Vehicles had they known about the Defect and the entire truth about them, or they would not have purchased or leased Class Vehicles at all.

837.    Accordingly, Defendants are liable to Plaintiff and the Illinois Sub-Class for damages in an amount to be proven at trial.

838.    Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Class' rights and well-being to enrich Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

///

///

///

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

## COUNT XXXIX
## UNJUST ENRICHMENT
### (On Behalf of Plaintiff Siffermann and the Illinois Sub-Class)

839.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

840.   This claim is brought by Plaintiff Siffermann on behalf of the Illinois Sub-Class. This claim is pled in the alternative to the other claims set forth herein.

841.   As the intended and expected result of its conscious wrongdoing, Toyota has profited and benefited from Plaintiff's and Class members' purchase of Class Vehicles containing the Defect.

842.   Toyota has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of Toyota's misconduct alleged herein, Plaintiff and the Class were not receiving automobiles of the quality, nature, fitness, or value that had been represented by Toyota, and that a reasonable consumer would expect.

843.   Toyota has been unjustly enriched by its fraudulent, deceptive, and otherwise unlawful conduct in connection with the sale and lease of Class Vehicles and by withholding benefits from Plaintiff and the Class at the expense of these parties.

844.   Equity and good conscience militate against permitting Toyota to retain these profits and benefits, and Toyota should be required to make restitution of its ill-gotten gains resulting from the conduct alleged herein.

**H.    Indiana**

## COUNT XL
## VIOLATIONS OF THE INDIANA DECEPTIVE CONSUMER SALES ACT
### IND. CODE §§ 24-5-0.5-1, *et seq.* ("IDCSA")
### (On Behalf of Plaintiff Heber and Lesko, and the Indiana Sub-Class)

845.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

846.   This claim is brought by Plaintiff Heber and the Lesko Plaintiffs on behalf of the Indiana Sub-Class.

847.   The IDCSA allows a person to bring an action for damages from "relying upon an uncured or incurable deceptive act." IND. CODE 24-5-0.5-4(a).

848.   Additionally, the IDCSA expressly allows persons damaged by a "deceptive act" to bring a class action. *Id.* § 24-5-0.5-4(b).

849.   The IDCSA defines a "deceptive act" as when a supplier commits an "unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction" whether such conduct occurred before, during, or after the transaction. *Id*. § 24-5-0.5-3(a). Further, deceptive acts "include both implicit and explicit misrepresentations." *Id.*

850.   The IDCSA enumerates some "representations as to the subject matter of the consumer transaction, made orally, in writing, or by electronic communication, by a supplier" that are considered *per se* deceptive acts. *Id*. § 24-5-0.5-3(b). Pertinent here are the following deceptive acts which Defendant has committed as alleged herein:

a.   (b)(1): That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have.

b.   (b)(2): That such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not.

c.   (b)(8): That such consumer transaction involves or does not involve a warranty, a disclaimer of warranties, or other rights, remedies, or obligations, if the representation is false and if the supplier knows or should reasonably know that the representation

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

is false.

851.   Defendants represented in the Warranty that it is "dedicated to building products of the highest quality and reliability." Ex. A. Defendants represented that its "excellent warranty coverage is evidence that [Toyota] stand[s] behind the quality of our vehicles." *Id.* Defendant further represents that it is confident that its Toyotas will provide its customers "with many years of enjoyable driving." *Id.*

852.   But Defendants sold Class Vehicles to Plaintiffs and the Indiana Sub-Class that did not perform or have the characteristics, uses, benefits or quality that Defendants represented its Class Vehicles to have. Instead, Defendants sold to Plaintiffs and members of the Indiana Sub-Class vehicles with soy- or bio-based wiring which are and continue to be chewed through by rodents. The Defect is incurable and cannot be remedied unless Defendants replace Class Vehicle wiring with a non-soy- or non-bio-based wiring that will not attract rodents and other pests.

853.   Defendant has and will continue to refuse to replace defective wiring in Class Vehicles because it contends that the Defect is not covered by the Warranty.

854.   Defendants have refused and continue to refuse to cover the Defect under the Warranty. Defendants did not exclude or disclaim the Defect or rodent damage under the terms of the Warranty. Therefore, Defendants have breached their express warranty and have misled and deceived consumers about the scope of its Warranty. Defendants have engaged in multiple deceptive acts in violation of the IDCSA. Therefore, Plaintiffs Heber and Lesko seek both injunctive relief and monetary damages against Defendants pursuant to the IDCSA, §§ 2 and 4.

855.   Furthermore, Defendants omitted and concealed information about the Defect from Plaintiffs and Indiana Sub-Class members.  Defendants had a duty to disclose the truth about Class Vehicles, including the Defect, and Plaintiffs and Class members could not have discovered the truth on their own.  Plaintiffs and Class members relied upon Defendants' representations and omissions with respect to

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

Class Vehicles, and it was Defendants' concealment of the Defect that induced Plaintiffs and Class members to purchase or lease Class Vehicles.

856.   As a result of Defendants' conduct alleged herein, Plaintiffs and members of the Indiana Sub-Class have suffered irreparable harm. Plaintiffs' and the other Indiana Sub-Class members' injuries were proximately caused by Defendants' conduct as alleged herein. Plaintiffs, individually and on behalf of all other Indiana Sub-Class members, seek an award of damages for Defendants' willful violations of the IDCSA, costs, attorneys' fees, and such other relief as deemed appropriate and proper by the Court.

## COUNT XLI
### BREACH OF EXPRESS WARRANTY
#### IND. CODE § 26-1-2-313
### (On Behalf of Plaintiff Heber and Lesko, and the Indiana Sub-Class)

857.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

858.   This claim is brought by Plaintiffs Heber and the Lesko Plaintiffs on behalf of the Indiana Sub-Class.

859.   Toyota is and was at all relevant times a merchant with respect to motor vehicles.

860.   In its New Vehicle Limited Warranty and in advertisements, brochures, and through other statements, Toyota expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period.  For example, the following language appears in all Class Vehicle Warranty and Maintenance Guides:

**WHAT IS COVERED AND HOW LONG**

**Basic Warranty**

This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota, subject to the exceptions indicated

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

under "What Is Not Covered" . . . .

Ex. A.

861.   Toyota's Warranty does not exclude rodent damage of the type suffered by Plaintiffs and Class members in their Class Vehicles.

862.   Toyota's Warranty as well as advertisements, brochures, and other statements regarding the Class Vehicles, formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles.

863.   Toyota breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Toyota.  Toyota has not repaired or adjusted, and has been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

864.   In addition to Toyota's Warranty, Toyota otherwise expressly warranted several attributes, characteristics, and qualities of its Class Vehicles. These warranties are only a sampling of the numerous warranties that Toyota made relating to safety, reliability, and operation.  Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of their Class Vehicles.  These warranties were made, *inter alia*, in advertisements, on Toyota's website, and in uniform statements provided by Toyota to be made by salespeople, or made publicly by Toyota executives or by other authorized Toyota representatives.  These affirmations and promises were part of the basis of the bargain between the parties, thereby constituting express warranties under IND. CODE § 26-1-2-313.

865.   These additional warranties were also breached because the Class Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.  Toyota did not provide at the time of sale, and has not provided since then, Class Vehicles conforming to its

express warranties.

866. Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because Toyota has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

867. Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by law.

868. Also, as alleged in more detail herein, at the time that Toyota warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranties and were inherently defective, and Toyota wrongfully and fraudulently misrepresented and/or concealed material facts regarding its Class Vehicles. Plaintiffs and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

869. Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as many incidental and consequential damages have already been suffered due to Toyota's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies would be insufficient to make Plaintiffs and the other Class members whole.

870. Furthermore, the application of (or refusal to permit coverage under) the Warranty is unconscionable and inadequate to protect Plaintiff and members of the Class given that Toyota knew of the Defect but failed and fails to disclose it. A gross disparity in bargaining power existed between Toyota and Class members, and

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

Toyota knew or should have known that the Class Vehicles were defective at the time of sale and that the wiring systems would fail well before their useful lives.

871. Toyota was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Class members.

872. As a direct and proximate result of Toyota's breach of express warranties, Plaintiffs and the Indiana Sub-Class have suffered harm and are entitled to damages in an amount to be determined at trial.

873. Due to Toyota's breach of warranties as set forth herein, Plaintiffs and the other Indiana Sub-Class members assert as an additional and/or alternative remedy, as set forth in IND. CODE § 26-1-2-313, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the other Class members of the purchase price of all Class Vehicles currently owned, and for such other incidental and consequential damages as allowed under IND. CODE §§ 26-1-2-711 and 26-1-2-608.

<u>COUNT XLII</u>
**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
**IND. CODE § 26-1-2-314**
**(On Behalf of Plaintiff Heber and Lesko, and the Indiana Sub-Class)**

874. Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

875. This claim is brought by Plaintiff Heber and the Lesko Plaintiffs on behalf of the Indiana Sub-Class.

876. Toyota is and was at all relevant times a merchant with respect to motor vehicles.

877. A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions.

878. At the time Toyota designed, manufactured, produced, tested, studied,

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

inspected, labeled, marketed, advertised, sold/leased, promoted, and distributed its Class Vehicles, Toyota knew of the use for which its Class Vehicles were intended.

879.   These Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Class Vehicles are inherently defective in that certain electrical wiring components in Class Vehicles are coated or designed with soy- or bio-based products that attract rodents which chew, gnaw, or eat through these components, causing damage – including but not limited to partial or total failure – in Class Vehicle electrical and wiring systems.

880.   Furthermore, the application of (or refusal to permit coverage under) the Warranty is unconscionable and inadequate to protect Plaintiff and members of the Class given that Toyota knew of the Defect but failed and fails to disclose it. A gross disparity in bargaining power existed between Toyota and Class members, and Toyota knew or should have known that the Class Vehicles were defective at the time of sale and that the wiring systems would fail well before their useful lives.

881.   Toyota was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Class members.

882.   As a direct and proximate result of Toyota's breach of the warranties of merchantability, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial.

883.   To the extent it is required, the parties are in privity or, alternatively, Plaintiffs and Class members are the intended beneficiaries of Toyota's contracts.

### COUNT XLIII
### FRAUD/FRAUDULENT CONCEALMENT
**(On Behalf of Plaintiff Heber and Lesko, and the Indiana Sub-Class)**

884.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

885.   This claim is brought by Plaintiffs Heber and the Lesko Plaintiffs on behalf of the Indiana Sub-Class.

886.   Defendants concealed and suppressed material facts concerning the performance and quality of the Class Vehicles – namely, the Defect – and the quality of the Toyota brand. Specifically, Defendants knew of (or should have known of) the Defect, but failed to disclose it prior to or at the time it sold or leased Class Vehicles to consumers. Defendants did so in order to boost sales and leases of Class Vehicles.

887.   Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own.

888.   Defendants had a duty to disclose the true performance of the Class Vehicles and the Defect because knowledge thereof and the details related thereto were known and/or accessible only to Defendants; Defendants had superior knowledge and access to the facts; and Defendants knew the facts were not known to, or reasonably discoverable, by Plaintiffs and the Class. Defendants also had a duty to disclose because they made many general affirmative representations about the about the qualities of the Class Vehicles.

889.   On information and belief, Defendants still have not made full and adequate disclosures, and continue to defraud consumers by concealing material information regarding the Defect and the performance and quality of Class Vehicles.

890.   Plaintiffs and the Indiana Sub-Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or leased the Class Vehicles. Plaintiffs' and the Class' actions were justified. Defendants were in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Class.

891.   Plaintiffs and the Class relied upon Defendants representations and

omissions regarding the quality of Class Vehicles and the Defect in deciding to purchase or lease Class Vehicles.

892.    Because of the concealment and/or suppression of the facts, Plaintiffs and the Class sustained damage because they did not receive the value of the premium price paid for their Class Vehicles. Plaintiffs and Class members would have paid less for Class Vehicles had they known about the Defect and the entire truth about them, or they would not have purchased or leased Class Vehicles at all.

893.    Accordingly, Defendants are liable to Plaintiffs and the Indiana Sub-Class for damages in an amount to be proven at trial.

894.    Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Class' rights and well-being to enrich Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT XLIV
## UNJUST ENRICHMENT
### (On Behalf of Plaintiff Heber and Lesko, and the Indiana Sub-Class)

895.    Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

896.    This claim is brought by Plaintiffs Heber and the Lesko Plaintiffs on behalf of the Indiana Sub-Class. This claim is pled in the alternative to the other claims set forth herein.

897.    As the intended and expected result of its conscious wrongdoing, Toyota has profited and benefited from Plaintiffs' and Class members' purchase of Class Vehicles containing the Defect.

898.    Toyota has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of Toyota's misconduct alleged herein, Plaintiffs and the Class were not receiving automobiles of the quality, nature,

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

fitness, or value that had been represented by Toyota, and that a reasonable consumer would expect.

899.    Toyota has been unjustly enriched by its fraudulent, deceptive, and otherwise unlawful conduct in connection with the sale and lease of Class Vehicles and by withholding benefits from Plaintiffs and the Class at the expense of these parties.

900.    Equity and good conscience militate against permitting Toyota to retain these profits and benefits, and Toyota should be required to make restitution of its ill-gotten gains resulting from the conduct alleged herein.

## I.    Maryland

### COUNT XLV
### VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT
#### MD. CODE COM. LAW §§ 13-101, *et seq.* ("MCPA")
### (On behalf of Plaintiffs Bennett and Faulkner, and the Maryland Sub-Class)

901.    Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

902.    This claim is brought by Plaintiffs Bennett and Faulkner on behalf of the Maryland Sub-Class.

903.    The MCPA provides that a person may not engage in any unfair or deceptive trade practice in the sale of any consumer good.  MD. CODE COM. LAW § 13-303.  Toyota participated in misleading, false or deceptive acts that violated the MCPA. By fraudulently advertising and selling Class Vehicles with the Defect as described herein, Toyota engaged in deceptive business practices prohibited by the MCPA.

904.    Plaintiffs and the Maryland Sub-Class are "consumers" within the meaning of MD. CODE COM. LAW § 13-101(c), and Toyota is a "person" with the meaning of MD. CODE COM. LAW § 13-101(h).

905.    Toyota's actions as set forth above occurred in the conduct of trade or

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

commerce.

906.   In the course of its business, Toyota incorporated soy- or bio-based electrical wiring insulation and related components in Class Vehicles that attract rodents and other pests which cause damage, and Toyota concealed this Defect and otherwise engaged in activities with the tendency or capacity to deceive.  Toyota also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission, in connection with the sale of Class Vehicles containing the Defect.

907.   Toyota has known of the Defect in Class Vehicles from complaints and communications by Plaintiffs and Class members, but continued to conceal the Defect in order to make sales and leases of Class Vehicles.

908.   By failing to disclose and actively concealing the Defect, by marketing Class Vehicles as reliable and of high quality, and by presenting itself as a reputable manufacturer that stood by its products after they were sold when it in fact does not, Toyota engaged in unfair and deceptive business practices in violation of the MCPA.

909.   In the course of Toyota's business, it willfully failed to disclose and actively concealed the Defect in Class Vehicles discussed above.

910.   Toyota's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the Maryland Sub-Class, about the quality, workmanship, performance, safety, and true value of the defective Class Vehicles.

911.   Toyota intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Maryland Sub-Class.

912.   Toyota knew or should have known that its conduct violated the MCPA.

913.   Toyota owed Plaintiffs and the Maryland Sub-Class a duty to disclose the Defect in Class Vehicles and the true value of Class Vehicles because Toyota:

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

a.   Possessed exclusive knowledge that its manufacturing process entailed the inclusion of defective and rodent damage-prone soy- or bio-based wiring and wiring insulation;

b.   Intentionally concealed the foregoing from Plaintiffs and the Maryland Sub-Class; and/or

c.   Made incomplete, false or misleading representations about the characteristics, quality, workmanship, reliability, value, safety, efficiency, and performance of Class Vehicles while purposefully withholding material facts from Plaintiffs and the Maryland Sub-Class that contradicted these representations.

914.   Because the Class Vehicles are worth far less than paid for by Plaintiffs and the Maryland Sub-Class and the Defect in Class Vehicles have caused Plaintiffs and members of the Maryland Sub-Class to incur out-of-pocket expenses, they have suffered ascertainable loss as a result of Toyota's deceptive and unfair acts and practices made in the course of Toyota's business.

915.   As a direct and proximate result of Toyota's violations of the MCPA, Plaintiffs and the Maryland Sub-Class have suffered ascertainable injury-in-fact and/or actual damage.

916.   Pursuant to MD. CODE COM. LAW § 13-408, Plaintiffs and the Maryland Sub-Class seek actual damages, attorneys' fees, and any other just and proper relief available under the MCPA.

### COUNT XLVI
### BREACH OF EXPRESS WARRANTY
#### MD. CODE COM. LAW § 2-313
**(On Behalf of Plaintiffs Bennett and Faulkner, and the Maryland Sub-Class)**

917.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

918.   This claim is brought by Plaintiffs Bennett and Faulkner on behalf of

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

the Maryland Sub-Class.

919.   Toyota is and was at all relevant times a merchant with respect to motor vehicles.

920.   In its New Vehicle Limited Warranty and in advertisements, brochures, and through other statements, Toyota expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period.  For example, the following language appears in all Class Vehicle Warranty and Maintenance Guides:

**WHAT IS COVERED AND HOW LONG**

**Basic Warranty**

> This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota, subject to the exceptions indicated under "What Is Not Covered" . . . .

Ex. A.

921.   Toyota's Warranty does not exclude rodent damage of the type suffered by Plaintiffs and Class members in their Class Vehicles.

922.   Toyota's Warranty as well as advertisements, brochures, and other statements regarding the Class Vehicles, formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles.

923.   Toyota breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Toyota.  Toyota has not repaired or adjusted, and has been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

924.   In addition to Toyota's Warranty, Toyota otherwise expressly warranted several attributes, characteristics, and qualities of its Class Vehicles.  These

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

warranties are only a sampling of the numerous warranties that Toyota made relating to safety, reliability, and operation.  Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of their Class Vehicles.  These warranties were made, *inter alia*, in advertisements, on Toyota's website, and in uniform statements provided by Toyota to be made by salespeople, or made publicly by Toyota executives or by other authorized Toyota representatives.  These affirmations and promises were part of the basis of the bargain between the parties, thereby constituting express warranties under MD. COM. CODE § 2-313.

925.  These additional warranties were also breached because the Class Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.  Toyota did not provide at the time of sale, and has not provided since then, Class Vehicles conforming to its express warranties.

926.  Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because Toyota has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

927.  Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by law.

928.  Also, as alleged in more detail herein, at the time that Toyota warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranties and were inherently defective, and Toyota wrongfully and fraudulently misrepresented and/or concealed material facts regarding its Class

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

Vehicles.  Plaintiffs and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

929.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as many incidental and consequential damages have already been suffered due to Toyota's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies would be insufficient to make Plaintiffs and the other Class members whole.

930.   Furthermore, the application of (or refusal to permit coverage under) the Warranty is unconscionable and inadequate to protect Plaintiff and members of the Class given that Toyota knew of the Defect but failed and fails to disclose it. A gross disparity in bargaining power existed between Toyota and Class members, and Toyota knew or should have known that the Class Vehicles were defective at the time of sale and that the wiring systems would fail well before their useful lives.

931.   Toyota was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications (including Plaintiff Bennett's and Faulkner's communications) sent by Class members.

932.   As a direct and proximate result of Toyota's breach of express warranties, Plaintiffs Bennett and Faulkner have suffered harm and are entitled to damages under MD. CODE COM. § 2-313 in an amount to be determined at trial.

## COUNT XLVII
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### MD. CODE COM. LAW § 2-314
**(On behalf of Plaintiffs Bennett and Faulkner, and the Maryland Class)**

933.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

934.   This claim is brought by Plaintiffs Bennett and Faulkner on behalf of the Maryland Sub-Class.

935.   Toyota is and was at all relevant times a merchant with respect to motor vehicles.

936.   A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions.

937.   At the time Toyota designed, manufactured, produced, tested, studied, inspected, labeled, marketed, advertised, sold/leased, promoted, and distributed its Class Vehicles, Toyota knew of the use for which its Class Vehicles were intended.

938.   These Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Class Vehicles are inherently defective in that certain electrical wiring components in Class Vehicles are coated or designed with soy- or other bio-based products that attract rodents which chew, gnaw, or eat through these components, causing damage – including but not limited to partial or total failure – in Class Vehicle electrical and wiring systems.

939.   Furthermore, the application of (or refusal to permit coverage under) the Warranty is unconscionable and inadequate to protect Plaintiff and members of the Class given that Toyota knew of the Defect but failed and fails to disclose it. A gross disparity in bargaining power existed between Toyota and Class members, and Toyota knew or should have known that the Class Vehicles were defective at the time of sale and that the wiring systems would fail well before their useful lives.

940.   Toyota was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications (including communications from Plaintiffs Bennett and Faulkner) sent by Class members.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

941.   As a direct and proximate result of Toyota's breach of the warranties of merchantability, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial.

942.   To the extent it is required, the parties are in privity or, alternatively, Plaintiff and Class members are the intended beneficiaries of Toyota's contracts.

**COUNT XLVIII**
**FRAUD/FRAUDULENT CONCEALMENT**
**(On Behalf of Plaintiffs Bennett and Faulkner, and the Maryland Sub-Class)**

943.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

944.   This claim is brought by Plaintiffs Bennett and Faulkner on behalf of the Maryland Sub-Class.

945.   Defendants concealed and suppressed material facts concerning the performance and quality of the Class Vehicles – namely, the Defect – and the quality of the Toyota brand. Specifically, Defendants knew of (or should have known of) the Defect, but failed to disclose it prior to or at the time it sold or leased Class Vehicles to consumers. Defendants did so in order to boost sales and leases of Class Vehicles.

946.   Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own.

947.   Defendants had a duty to disclose the true performance of the Class Vehicles and the Defect because knowledge thereof and the details related thereto were known and/or accessible only to Defendants; Defendants had superior knowledge and access to the facts; and Defendants knew the facts were not known to, or reasonably discoverable, by Plaintiffs and the Class. Defendants also had a duty to disclose because they made many general affirmative representations about the about the qualities of the Class Vehicles.

948.   On information and belief, Defendants still have not made full and

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

adequate disclosures, and continue to defraud consumers by concealing material information regarding the Defect and the performance and quality of Class Vehicles.

949. Plaintiffs and the Maryland Sub-Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or leased the Class Vehicles. Plaintiffs' and the Class' actions were justified. Defendants were in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Class.

950. Plaintiffs and the Class relied upon Defendants representations and omissions regarding the quality of Class Vehicles and the Defect in deciding to purchase or lease Class Vehicles.

951. Because of the concealment and/or suppression of the facts, Plaintiffs and the Class sustained damage because they did not receive the value of the premium price paid for their Class Vehicles. Plaintiffs and Class members would have paid less for Class Vehicles had they known about the Defect and the entire truth about them, or they would not have purchased or leased Class Vehicles at all.

952. Accordingly, Defendants are liable to Plaintiffs and the Maryland Sub-Class for damages in an amount to be proven at trial.

953. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Class' rights and well-being to enrich Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT XLIX
## UNJUST ENRICHMENT
### (On Behalf of Plaintiffs Bennett and Faulkner, and the Maryland Sub-Class)

954. Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

955.     This claim is brought by Plaintiffs Bennett and Faulkner on behalf of the Maryland Sub-Class. This claim is pled in the alternative to the other claims set forth herein.

956.     As the intended and expected result of its conscious wrongdoing, Toyota has profited and benefited from Plaintiffs' and Class members' purchase of Class Vehicles containing the Defect.

957.     Toyota has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of Toyota's misconduct alleged herein, Plaintiffs and the Class were not receiving automobiles of the quality, nature, fitness, or value that had been represented by Toyota, and that a reasonable consumer would expect.

958.     Toyota has been unjustly enriched by its fraudulent, deceptive, and otherwise unlawful conduct in connection with the sale and lease of Class Vehicles and by withholding benefits from Plaintiffs and the Class at the expense of these parties.

959.     Equity and good conscience militate against permitting Toyota to retain these profits and benefits, and Toyota should be required to make restitution of its ill-gotten gains resulting from the conduct alleged herein.

**J.     Nebraska**

<u>COUNT L</u>
**VIOLATION OF THE NEBRASKA CONSUMER PROTECTION ACT**
**NEB. REV. STAT. §§ 59-1601, *et seq.***
**(On Behalf of Plaintiff Porter and the Nebraska Sub-Class)**

960.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

961.   Plaintiff Porter (for the purpose of this section, "Plaintiff") brings this action on behalf of herself and the Nebraska Class against all Defendants.

962.   Toyota, Plaintiff and Nebraska Class members are

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

"person[s]" under the Nebraska Consumer Protection Act ("Nebraska CPA"), Neb. Rev. Stat. § 59-1601(1).

963.   Toyota's actions as set forth herein occurred in the conduct of trade or commerce as defined under Neb. Rev. Stat. § 59-1601(2).

964.   The Nebraska CPA prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Neb. Rev. Stat. § 59-1602. The conduct Toyota as set forth herein constitutes unfair or deceptive acts or practices.

965.   Toyota thus violated the Nebraska CPA by, at minimum employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles.

966.   In advertising and selling or leasing Class Vehicles containing the Defect, Toyota violated and continues to violate the Nebraska CPA by engaging in the following unconscionable, false, misleading or deceptive act(s) or practice(s), which were false or had the capacity to deceive:

a.   Making a false or misleading representation, knowingly or with reason to know, as to the source, sponsorship, approval, or certification of the subject of a consumer transaction;

b.   Making a false representation, knowingly or with reason to know, as to the characteristics, ingredients, uses, benefits, alterations, or quantities of the subject of a consumer transaction;

c.   Representing, knowingly or with reason to know, that the subject of a consumer transaction is of a particular standard, style or model, if it is of another; and

d.   Advertising, knowingly or with reason to know, the subject of a

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

consumer transaction with intent not to sell it as advertised.

967.   Toyota intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiff and the Nebraska Class.

968.   Toyota knew or should have known that its conduct violated the Nebraska CPA.

969.   Toyota's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the Defect contained in the Class Vehicles.

970.   Plaintiff and the Nebraska Class suffered ascertainable loss and actual damages as a direct and proximate result of Toyota's misrepresentations and its concealment of and failure to disclose material information relating to the Defect. Plaintiff and the Nebraska Class members who purchased or leased the Class Vehicles would not have purchased or leased them at all and/or—if the Defect in the Class Vehicles had been disclosed—would have paid significantly less for them. Plaintiff and the Nebraska Class also suffered diminished value of their vehicles, as well as lost or diminished use..

971.   Toyota had an ongoing duty to all Toyota customers to refrain from unfair and deceptive acts or practices under the Nebraska CPA.  All owners of Class Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Toyota's deceptive and unfair acts and practices made in the course of Toyota's business.

972.   Toyota's violations present a continuing risk to Plaintiff as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

973.   As a direct and proximate result of Defendants' violations of the Nebraska CPA, Plaintiff and the Nebraska Class have suffered injury-in-fact and/or actual damage.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

974.   Because Toyota's conduct caused injury to Nebraska Class members' property through violations of the Nebraska CPA, the Nebraska Class seeks recovery of actual damages, as well as enhanced damages up to $1,000, an order enjoining Toyota's unfair or deceptive acts and practices, costs of Court, reasonable attorneys' fees, and any other just and proper relief available under Neb. Rev. Stat. § 59-1609.

<div align="center">

**COUNT LI**
**BREACH OF EXPRESS WARRANTY**
**NEB. REV. STAT. §§ 2-313 and 2A-210**
**(On Behalf of Plaintiff Porter and the Nebraska Sub-Class)**

</div>

975.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

976.   This claim is brought by Plaintiff Porter on behalf of the Nebraska Sub-Class.

977.   Toyota is and was at all relevant times a merchant with respect to motor vehicles.

978.   In its New Vehicle Limited Warranty and in advertisements, brochures, and through other statements, Toyota expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period.  For example, the following language appears in all Class Vehicle Warranty and Maintenance Guides:

> **WHAT IS COVERED AND HOW LONG**
>
> **Basic Warranty**
>
> This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota, subject to the exceptions indicated under "What Is Not Covered" . . . .

Ex. A.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

979.   Toyota's Warranty does not exclude rodent damage of the type suffered by Plaintiff and Class members in their Class Vehicles.

980.   Toyota's Warranty as well as advertisements, brochures, and other statements regarding the Class Vehicles, formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles.

981.   Toyota breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Toyota.  Toyota has not repaired or adjusted, and has been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

982.   In addition to Toyota's Warranty, Toyota otherwise expressly warranted several attributes, characteristics, and qualities of its Class Vehicles. These warranties are only a sampling of the numerous warranties that Toyota made relating to safety, reliability, and operation.  Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of their Class Vehicles.  These warranties were made, *inter alia*, in advertisements, on Toyota's website, and in uniform statements provided by Toyota to be made by salespeople, or made publicly by Toyota executives or by other authorized Toyota representatives.  These affirmations and promises were part of the basis of the bargain between the parties, thereby constituting express warranties under NEB.REV.ST. U.C.C. § 2-313.

983.   These additional warranties were also breached because the Class Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.  Toyota did not provide at the time of sale, and has not provided since then, Class Vehicles conforming to its express warranties.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

984.   Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because Toyota has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

985.   Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiff, individually and on behalf of the other Class members, seek all remedies as allowed by law.

986.   Also, as alleged in more detail herein, at the time that Toyota warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranties and were inherently defective, and Toyota wrongfully and fraudulently misrepresented and/or concealed material facts regarding its Class Vehicles.  Plaintiff and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

987.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as many incidental and consequential damages have already been suffered due to Toyota's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies would be insufficient to make Plaintiffs and the other Class members whole.

988.   Furthermore, the application of (or refusal to permit coverage under) the Warranty is unconscionable and inadequate to protect Plaintiff and members of the Nebraska Class given that Toyota knew of the Defect but failed and fails to disclose it. A gross disparity in bargaining power existed between Toyota and Class members, and Toyota knew or should have known that the Class Vehicles were defective at the

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

time of sale and that the wiring systems would fail well before their useful lives.

989.   Toyota was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications (including Plaintiff Porter's communications) sent by Class members.

990.   As a direct and proximate result of Toyota's breach of express warranties, Plaintiff Porter and members of the Nebraska Class have suffered harm and are entitled to damages under NEB. REV. STAT. U.C.C. § 2-313 in an amount to be determined at trial.

## COUNT LII
### BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
#### NEB. REV. STAT. §§ 2-314 and 2A-212
**(On Behalf of Plaintiff Porter and the Nebraska Sub-Class)**

991.   Plaintiffs reallege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

992.   Plaintiffs bring this Count on behalf of the Nebraska Class, against Toyota.

993.   Toyota is and was at all relevant times a "merchant" with respect to motor vehicles under Neb. Rev. Stat. U.C.C. § 2-104(1) and a "seller" of motor vehicles under § 2-103(1)(d).

994.   With respect to leases, Toyota is and was at all relevant times a "lessor" of motor vehicles under Neb. Rev. Stat. U.C.C. § 2A-103(1)(p).

995.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Neb.Rev.Stat. U.C.C. §§ 2-105(1) and 2A-103(1)(h).

996.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Neb.Rev.Stat. U.C.C.§§ 2-314 and 2A-212.

997.   The Class Vehicles, when sold or leased and at all times thereafter, were

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.

998.   Toyota was provided notice of these issues by numerous complaints filed against it including the instant Complaint, and by numerous individual letters and communications sent by Plaintiffs and others within a reasonable amount of time after the allegations of the Defect in the Class Vehicle became public.

999.   As a direct and proximate result of Toyota's breach of the implied warranty of merchantability, Plaintiff and the other Nebraska Class members have been damaged in an amount to be proven at trial.

## COUNT LIII
## FRAUD/FRAUDULENT CONCEALMENT
### (On Behalf of Plaintiff Porter and the Nebraska Sub-Class)

1000. Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

1001. This claim is brought by Plaintiff Porter on behalf of the Nebraska Sub-Class.

1002. Toyota concealed and suppressed material facts concerning the performance and quality of the Class Vehicles – namely, the Defect – and the quality of the Toyota brand.  Specifically, Toyota knew of (or should have known of) the Defect, but failed to disclose it prior to or at the time it sold or leased Class Vehicles to consumers.  Toyota did so in order to boost sales and leases of Class Vehicles.

1003. Plaintiff and Class members did not, and could not, unravel Toyota's deception on their own.

1004. Toyota had a duty to disclose the true performance of the Class Vehicles and the Defect because knowledge thereof and the details related thereto were known and/or accessible only to Toyota; Toyota had superior knowledge and access to the facts; and Toyota knew the facts were not known to, or reasonably discoverable, by Plaintiff and the Class.  Toyota also had a duty to disclose because

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

it made many general affirmative representations about the about the qualities of the Class Vehicles.

1005. On information and belief, Defendants still have not made full and adequate disclosures, and continue to defraud consumers by concealing material information regarding the Defect and the performance and quality of Class Vehicles.

1006. Plaintiff and the Nebraska Sub-Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or leased the Class Vehicles.  Plaintiff and the Class' actions were justified.  Toyota was in exclusive control of the material facts and such facts were not known to the public, Plaintiff, or the Class.

1007. Plaintiff and the Class relied upon Toyota representations and omissions regarding the quality of Class Vehicles and the Defect in deciding to purchase or lease the Class Vehicles.

1008. Because of the concealment and/or suppression of the facts, Plaintiff and the Class sustained damage because they did not receive the value of the premium price paid for their Class Vehicles. Plaintiff and Class members would have paid less for Class Vehicles had they known about the Defect and the entire truth about them, or they would not have purchased or leased Class Vehicles at all.

1009. Accordingly, Toyota is liable to Plaintiff and the Nebraska Sub-Class for damages in an amount to be proven at trial.

1010. Toyota's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Class' rights and well-being to enrich Toyota.  Toyota's  conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COUNT LIV**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff Porter and the Nebraska Sub-Class)**

1011. Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

1012.  This claim is brought by Plaintiff Porter on behalf of the Nebraska Sub-Class. This claim is pled in the alternative to the other claims set forth herein.

1013.  As the intended and expected result of its conscious wrongdoing, Toyota has profited and benefited from Plaintiff and Class members' purchase of Class Vehicles containing the Defect.

1014.   Toyota has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of Toyota's misconduct alleged herein, Plaintiff and the Class were not receiving automobiles of the quality, nature, fitness, or value that had been represented by Toyota, and that a reasonable consumer would expect.

1015.   Toyota has been unjustly enriched by its fraudulent, deceptive, and otherwise unlawful conduct in connection with the sale and lease of Class Vehicles and by withholding benefits from Plaintiff and the Class at the expense of these parties.

1016. Equity and good conscience militate against permitting Toyota to retain these profits and benefits, and Toyota should be required to make restitution of its ill-gotten gains resulting from the conduct alleged herein.

**K.     New Jersey**

**COUNT LV**
**VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT**
**N.J.S.A. §§ 56:8-1,** *et seq.*
**(On Behalf of Plaintiff Donoghue and the New Jersey Sub-Class)**

1017. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

1018. Plaintiff Donoghue bring this Count on behalf of New Jersey Class members.

1019. The New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8-1, *et seq*. ("NJ CFA"), prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce.

1020. Toyota violated the NJ CFA by, at minimum employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles.

1021. In advertising and selling or leasing the Class Vehicles containing the Defect, Toyota violated and continues to violate the N.J.S.A. by engaging in the following unconscionable, false, misleading or deceptive act(s) or practice(s), which were false or had the capacity to deceive:

    a.    Making a false or misleading representation, knowingly or with reason to know, as to the source, sponsorship, approval, or certification of the subject of a consumer transaction;

    b.    Making a false representation, knowingly or with reason to know, as to the characteristics, ingredients, uses, benefits, alterations, or quantities of the subject of a consumer transaction;

    c.    Representing, knowingly or with reason to know, that the subject of a consumer transaction is of a particular standard, style or model, if it is of another; and

    d.    Advertising, knowingly or with reason to know, the subject of a consumer transaction with intent not to sell it as advertised.

1022. Toyota intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiff and the New Jersey Class.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

1023. Toyota's actions as set forth above occurred in the conduct of trade or commerce.

1024. Toyota's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

1025. Toyota intentionally and knowingly misrepresented material facts regarding the Class Vehicles with an intent to mislead Plaintiff and the New Jersey Class.

1026. Toyota knew or should have known that its conduct violated the NJ CFA.

1027. Toyota owed Plaintiffs and the Class a duty to disclose the truth about the Defect because Toyota:

    a.    Possessed exclusive knowledge of the Defect;

    b.    Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

    c.    Made incomplete representations regarding Class Vehicles, while purposefully withholding material facts from Plaintiffs including with respect to the Defect.

1028. Toyota's conduct proximately caused injuries to Plaintiffs and the other Class members.

1029. Plaintiff and the other New Jersey Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Toyota's conduct in that Plaintiff and the other New Jersey Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Toyota's misrepresentations and omissions.

1030. Toyota's violations present a continuing risk to Plaintiffs as well as to the general public. Toyota's unlawful acts and practices complained of herein affect

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

the public interest.

1031. Pursuant to N.J.S.A. § 56:8-20, Plaintiffs will serve the New Jersey Attorney General with a copy of this Complaint within 10 days of filing.

**COUNT LVI**
**BREACH OF EXPRESS WARRANTY**
**N.J.S.A. § 12A:2-313 and 2A-210**
**(On Behalf of Plaintiff Donoghue and the New Jersey Sub-Class)**

1032. Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

1033. This claim is brought by Plaintiff Donoghue on behalf of the New Jersey Sub-Class.

1034. Toyota is and was at all relevant times a merchant with respect to motor vehicles.

1035. In its New Vehicle Limited Warranty and in advertisements, brochures, and through other statements, Toyota expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period.  For example, the following language appears in all Class Vehicle Warranty and Maintenance Guides:

**WHAT IS COVERED AND HOW LONG**

**Basic Warranty**

This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota, subject to the exceptions indicated under "What Is Not Covered" . . . .

Ex. A.

1036. Toyota's Warranty does not exclude rodent damage of the type suffered by Plaintiff and  New Jersey Class members in their Class Vehicles.

1037. Toyota's Warranty as well as advertisements, brochures, and other

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

statements regarding the Class Vehicles, formed the basis of the bargain that was reached when Plaintiff and the other New Jersey Class members purchased or leased their Class Vehicles.

1038. Toyota breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Toyota. Toyota has not repaired or adjusted, and has been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

1039. In addition to Toyota's Warranty, Toyota otherwise expressly warranted several attributes, characteristics, and qualities of its Class Vehicles. These warranties are only a sampling of the numerous warranties that Toyota made relating to safety, reliability, and operation. Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of their Class Vehicles. These warranties were made, *inter alia*, in advertisements, on Toyota's website, and in uniform statements provided by Toyota to be made by salespeople, or made publicly by Toyota executives or by other authorized Toyota representatives. These affirmations and promises were part of the basis of the bargain between the parties, thereby constituting express warranties under N.J.S. 12A:2-314 and 2A-212.

1040. These additional warranties were also breached because the Class Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees. Toyota did not provide at the time of sale, and has not provided since then, Class Vehicles conforming to its express warranties.

1041. Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other New Jersey Class members whole and because Toyota has failed and/or has refused to adequately provide the promised

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

remedies within a reasonable time.

1042. Accordingly, recovery by Plaintiff and the other New Jersey Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiff, individually and on behalf of the other Mew Jersey Class members, seek all remedies as allowed by law.

1043. Also, as alleged in more detail herein, at the time that Toyota warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranties and were inherently defective, and Toyota wrongfully and fraudulently misrepresented and/or concealed material facts regarding its Class Vehicles. Plaintiff and the other New Jersey Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1044. Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as many incidental and consequential damages have already been suffered due to Toyota's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the other New Jersey Class members' remedies would be insufficient to make Plaintiffs and the other New Jersey Class members whole.

1045. Furthermore, the application of (or refusal to permit coverage under) the Warranty is unconscionable and inadequate to protect Plaintiff and members of the New Jersey Class given that Toyota knew of the Defect but failed and fails to disclose it. A gross disparity in bargaining power existed between Toyota and New Jersey Class members, and Toyota knew or should have known that the Class Vehicles were defective at the time of sale and that the wiring systems would fail well before their useful lives.

1046. Toyota was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

and communications sent by Class members.

1047. As a direct and proximate result of Toyota's breach of express warranties, Plaintiff Donoghue have suffered harm and are entitled to damages under N.J.S. 12A:2-314 and 2A-212 in an amount to be determined at trial.

<div align="center">

**COUNT LVII**
**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
**N.J.S.A. § 12A:2-314 and 2A-212**
**(On Behalf of Plaintiff Donoghue and the New Jersey Sub-Class**

</div>

1048. Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

1049. This claim is brought by Plaintiff Donoghue on behalf of the New Jersey Sub-Class.

1050. Toyota is and was at all relevant times a merchant with respect to motor vehicles.

1051. A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions.

1052. At the time Toyota designed, manufactured, produced, tested, studied, inspected, labeled, marketed, advertised, sold/leased, promoted, and distributed its Class Vehicles, Toyota knew of the use for which its Class Vehicles were intended.

1053. These Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective in that certain electrical wiring components in Class Vehicles are coated or designed with soy- or other bio-based products that attract rodents which chew, gnaw, or eat through these components, causing damage – including but not limited to partial or total failure – in Class Vehicle electrical and wiring systems.

1054. Furthermore, the application of (or refusal to permit coverage under) the Warranty is unconscionable and inadequate to protect Plaintiff and members of the

<div align="right">

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

</div>

Class given that Toyota knew of the Defect but failed and fails to disclose it. A gross disparity in bargaining power existed between Toyota and Class members, and Toyota knew or should have known that the Class Vehicles were defective at the time of sale and that the wiring systems would fail well before their useful lives.

1055. Toyota was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Class members.

1056. As a direct and proximate result of Toyota's breach of the warranties of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

1057. To the extent it is required, the parties are in privity or, alternatively, Plaintiff and Class members are the intended beneficiaries of Toyota's contracts.

## COUNT LVIII
## FRAUD/FRAUDULENT CONCEALMENT
**(On Behalf of Plaintiff Donoghue and the New Jersey Sub-Class)**

1058. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

1059. Plaintiffs bring this Count on behalf of the New Jersey Class.

1060. Toyota knew these representations were false when made.

1061. Toyota further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Class Vehicles it was selling had no significant defects, were Earth-friendly and would perform and operate properly when driven in normal usage.

1062. Accordingly, Toyota is liable to Plaintiff and the New Jersey Class members for damages in an amount to be proven at trial.

1063. Toyota's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

New Jersey Class members' rights and the representations that Toyota made to them, in order to enrich Toyota. Toyota's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT LIX
## UNJUST ENRICHMENT
### (On Behalf of Plaintiff Donoghue and the New Jersey Sub-Class)

1064. Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

1065. This claim is brought by Plaintiff Donoghue on behalf of the New Jersey Sub-Class. This claim is pled in the alternative to the other claims set forth herein.

1066. As the intended and expected result of its conscious wrongdoing, Toyota has profited and benefited from Plaintiff and New Jersey Class members' purchase of Class Vehicles containing the Defect.

1067. Toyota has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of Toyota's misconduct alleged herein, Plaintiff and the New Jersey Class were not receiving automobiles of the quality, nature, fitness, or value that had been represented by Toyota, and that a reasonable consumer would expect.

1068. Toyota has been unjustly enriched by its fraudulent, deceptive, and otherwise unlawful conduct in connection with the sale and lease of the Class Vehicles and by withholding benefits from Plaintiff and the New Jersey Class at the expense of these parties.

1069. Equity and good conscience militate against permitting Toyota to retain these profits and benefits, and Toyota should be required to make restitution of its ill-gotten gains resulting from the conduct alleged herein.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

**L.    Oklahoma**

<div align="center">

**COUNT LX**
**VIOLATION OF THE OKLAHOMA**
**CONSUMER PROTECTION ACT**
**OKLA. STAT. tit. 15, §§ 751, *et seq.* ("OCPA")**
**(On Behalf of Plaintiff Cochrane and the Oklahoma Sub-Class)**

</div>

1070. Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

1071. This claim is brought by Plaintiff Cochrane on behalf of the Oklahoma Sub-Class.

1072. Plaintiff Cochrane and members of the Class are persons within the meaning of the OCPA.

1073. Toyota is a "person" within the meaning of the OCPA for all purposes therein and Class Vehicles are "goods" under the OCPA.

1074. Plaintiff Cochrane and Class members are "persons" entitled to bring a claim pursuant to the OCPA.

1075. The advertising, offering for sale or lease, and sale or lease of Class Vehicles constitutes trade or commerce under the OCPA.

1076. In advertising and selling or leasing Class Vehicles containing the Defect, Toyota violated and continues to violate the OCPA by engaging in the following unconscionable, false, misleading or deceptive act(s) or practice(s), which were false or had the capacity to deceive:

    a.    Making a false or misleading representation, knowingly or with reason to know, as to the source, sponsorship, approval, or certification of the subject of a consumer transaction;

    b.    Making a false representation, knowingly or with reason to know, as to the characteristics, ingredients, uses, benefits, alterations, or quantities of the subject of a consumer transaction;

**PLAINTIFFS' THIRD AMENDED**
**CLASS ACTION COMPLAINT**

     c.     Representing, knowingly or with reason to know, that the subject of a consumer transaction is of a particular standard, style or model, if it is of another; and

     d.     Advertising, knowingly or with reason to know, the subject of a consumer transaction with intent not to sell it as advertised.

1077. Defendant has violated the OCPA by committing unfair or deceptive trade practices as defined in OKLA. STAT. tit. 15, § 752 and enumerated under OKLA. STAT. tit. 15, § 753.

1078. By engaging in the foregoing conduct, Toyota took advantage of Plaintiff Cochrane and Class members' lack of knowledge to an unfair degree.

1079. Plaintiff Cochrane and Class members sustained actual damages because they purchased or leased defective Class Vehicles and essentially received less than what they were entitled to receive from the purchase or lease of Class Vehicles, as well as incurring out of pocket costs and labor costs to attempt to remedy the Defect.

1080.  Had Toyota not engaged in the false, misleading or deceptive conduct described herein, Plaintiff Cochrane and Class members would not have purchased or leased their Class Vehicles (or would have paid significantly less for them), and would not have incurred out of pocket costs and labor costs to attempt to remedy the Defect.

1081.  By reason of the unlawful acts engaged in by Toyota, and as a direct and proximate result thereof, Plaintiff Cochrane and Class members have suffered ascertainable loss and damages.

1082. Toyota's sale and lease of defective Class Vehicles, coupled with Toyota's unconscionable and deceptive acts and practices in connection therewith, was and is reckless, shows spite or ill will, or demonstrates a reckless indifference

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

to the interests of consumers.

1083. Plaintiff Cochrane demands judgment against Toyota for actual damages plus costs and attorney's fees incurred in bringing this action as provided for in OKLA. STAT. tit. 15, § 761.1A.

1084. In addition, Plaintiff Cochrane prays for an award of a civil penalty against Defendants in the amount of $2,000.00 per violation, pursuant to OKLA. STAT. tit. 15, § 761.1B due to Toyota's knowing and willful unconscionable conduct.

## COUNT LXI
## BREACH OF EXPRESS WARRANTY
### OKLA. STAT. tit 12A, § 2-313
### (On Behalf of Plaintiff Cochrane and the Oklahoma Sub-Class)

1085. Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

1086. This claim is brought by Plaintiff Cochrane on behalf of the Oklahoma Sub-Class.

1087. Toyota is and was at all relevant times a merchant with respect to motor vehicles. OKLA. STAT. tit. 12A, § 2-104.

1088. Pursuant to OKLA. STAT. tit. 12A, § 2-313:

> (1) Express warranties by the seller are created as follows:
>
> > (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

*Id.*

1089. In its Warranty and in advertisements, brochures, and through other statements in the media, Toyota expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

warranty period. For example, the following language appears in all Class Vehicle Warranty manuals: "This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota, subject to the exceptions indicated under 'What Is Not Covered' . . . ."

1090. Toyota's Warranty, as well as advertisements, brochures, and other statements in the media regarding the Class Vehicles, formed the basis of the bargain that was reached when Plaintiff Cochrane and the other Class members purchased or leased their Class Vehicles.

1091. Toyota breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Toyota. Toyota has not repaired or adjusted, and has been unable to repair or adjust, the Class Vehicles' materials and workmanship defects, namely the soy- or bio-based electrical wiring parts and components.

1092. At the time of selling or leasing Class Vehicles, Toyota did not provide Class Vehicles that conformed to its express warranties.

1093. Furthermore, the Warranty of repair and/or adjustments to defective parts fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff Cochrane and the other Class members whole and because Toyota has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

1094. Accordingly, recovery by Plaintiff Cochrane and the other Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

1095. Also, as alleged in more detail herein, at the time that Toyota warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranties and were inherently defective, and Toyota wrongfully and fraudulently

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

misrepresented and/or concealed material facts regarding its Class Vehicles. Plaintiff Cochrane and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1096. Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as many incidental and consequential damages have already been suffered due to Toyota's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Class members' remedies would be insufficient to make Plaintiff Cochrane and the other Class members whole.

1097. Furthermore, the application of (or refusal to permit coverage under) the Warranty is unconscionable and inadequate to protect Plaintiff and members of the Class given that Toyota knew of the Defect but failed and fails to disclose it. A gross disparity in bargaining power existed between Toyota and Class members, and Toyota knew or should have known that the Class Vehicles were defective at the time of sale and that the wiring systems would fail well before their useful lives.

1098. Toyota was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by consumers before or within a reasonable amount of time after the allegations of the Defect became public.

1099. As a direct and proximate result of Toyota's breach of express warranties, Plaintiff Cochrane and the other Class members have been damaged in an amount to be determined at trial.

1100. Finally, due to Toyota's breach of warranty as set forth herein, Plaintiff Cochrane and the other Class members assert as an additional and/or alternative remedy, as set forth in OKLA. STAT. tit. 12A, § 2-608, for a revocation of acceptance of the goods, and for a return to Plaintiff and to the other Class members of the

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

purchase price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed under OKLA. STAT. tit. 12A, §§ 2-711 and 2-608.

## COUNT LXII
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### OKLA. STAT. tit. 12A, § 2-314
### (On Behalf of Plaintiff Cochrane and the Oklahoma Sub-Class)

1101. Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

1102. This claim is brought by Plaintiff Cochrane on behalf of the Oklahoma Sub-Class.

1103. Toyota is and was at all relevant times a merchant with respect to motor vehicles. OKLA. STAT. tit. 12A, § 2-104.

1104. A warranty that the Class Vehicles were in merchantable condition was implied by law, pursuant to OKLA. STAT. tit. 12A, § 2-314.

1105. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles suffer from an inherent Defect, as alleged herein.

1106. Toyota was provided notice of these issues by numerous complaints filed against it, including this Complaint, and by numerous individual letters, telephone calls, and other communications sent by Plaintiffs and other Class members before or within a reasonable amount of time after the allegations of the Defect became public.

1107. Plaintiff and the other Class members have had sufficient direct dealings with either Toyota or its agents (dealerships) to establish privity of contract between Toyota, on the one hand, and Plaintiff and the other Class members, on the other hand. Notwithstanding this, privity is not required in this case because Plaintiff and

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

the other Class members are intended third-party beneficiaries of contracts between Toyota and its dealers; specifically, they are the intended beneficiaries of Toyota's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because Plaintiff and the other Class members' Class Vehicles are dangerous instrumentalities due to the aforementioned Defect and nonconformities.

1108. Furthermore, the application of (or refusal to permit coverage under) the Warranty is unconscionable and inadequate to protect Plaintiff and members of the Class given that Toyota knew of the Defect but failed and fails to disclose it. A gross disparity in bargaining power existed between Toyota and Class members, and Toyota knew or should have known that the Class Vehicles were defective at the time of sale and that the wiring systems would fail well before their useful lives.

1109. As a direct and proximate result of Toyota's breach of the warranty of merchantability, Plaintiff Cochrane and the other Class members have been damaged in an amount to be proven at trial.

<div align="center">

**COUNT LXIII**
**FRAUD/FRAUDULENT CONCEALMENT**
**(On Behalf of Plaintiff Cochrane and the Oklahoma Sub-Class)**

</div>

1110. Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

1111.   This claim is brought by Plaintiff Cochrane on behalf of the Oklahoma Sub-Class.

1112.   Defendants concealed and suppressed material facts concerning the performance and quality of the Class Vehicles – namely, the Defect – and the quality of the Toyota brand. Specifically, Defendants knew of (or should have known of) the Defect, but failed to disclose it prior to or at the time it sold or leased Class

<div align="right">

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

</div>

Vehicles to consumers. Defendants did so in order to boost sales and leases of Class Vehicles.

1113.   Plaintiff and Class members did not, and could not, unravel Defendants' deception on their own.

1114.   Defendants had a duty to disclose the true performance of the Class Vehicles and the Defect because knowledge thereof and the details related thereto were known and/or accessible only to Defendants; Defendants had superior knowledge and access to the facts; and Defendants knew the facts were not known to, or reasonably discoverable, by Plaintiff and the Class. Defendants also had a duty to disclose because they made many general affirmative representations about the about the qualities of the Class Vehicles.

1115.   On information and belief, Defendants still have not made full and adequate disclosures, and continue to defraud consumers by concealing material information regarding the Defect and the performance and quality of Class Vehicles.

1116.   Plaintiff and the Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or leased the Class Vehicles. Plaintiff's and the Class' actions were justified. Defendants were in exclusive control of the material facts and such facts were not known to the public, Plaintiff, or the Class.

1117.   Plaintiff and the Class relied upon Defendants representations and omissions regarding the quality of Class Vehicles and the Defect in deciding to purchase or lease Class Vehicles.

1118.   Because of the concealment and/or suppression of the facts, Plaintiff and the Class sustained damage because they did not receive the value of the premium price paid for their Class Vehicles. Plaintiff and Class members would have paid less for Class Vehicles had they known about the Defect and the entire

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

truth about them, or they would not have purchased or leased Class Vehicles at all.

1119.   Accordingly, Defendants are liable to Plaintiff and the Oklahoma Sub-Class for damages in an amount to be proven at trial.

1120.   Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Class' rights and well-being to enrich Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

<div align="center">

**COUNT LXIV**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff Cochrane and the Oklahoma Sub-Class)**

</div>

1121. Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

1122.   This claim is brought by Plaintiff Cochrane on behalf of the Oklahoma Sub-Class. This claim is pled in the alternative to the other claims set forth herein.

1123.   As the intended and expected result of its conscious wrongdoing, Toyota has profited and benefited from Plaintiff's and Class members' purchase and lease of Class Vehicles containing the Defect.

1124.   Toyota has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of Toyota's misconduct alleged herein, Plaintiff and the Class were not receiving automobiles of the quality, nature, fitness, or value that had been represented by Toyota, and that a reasonable consumer would expect.

1125.   Toyota has been unjustly enriched by its fraudulent, deceptive, and otherwise unlawful conduct in connection with the sale and lease of Class Vehicles and by withholding benefits from Plaintiff and the Class at the expense of these parties.

1126.   Equity and good conscience militate against permitting Toyota to

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

retain these profits and benefits, and Toyota should be required to make restitution of its ill-gotten gains resulting from the conduct alleged herein.

**M.    Oregon**

<div align="center">

**COUNT LXV**

**VIOLATIONS OF THE OREGON UNLAWFUL TRADE PRACTICES ACT**
**OR. REV. STAT. §§ 646.607, *et seq.* ("OUTPA")**
**(On Behalf of Plaintiffs Michaelis, and the Oregon Sub-Class)**

</div>

1127. Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

1128. This claim is brought by Plaintiffs Michaelis on behalf of the Oregon Sub-Class.

1129. Defendants are engaged in a "trade" and "commerce" within the meaning of OR. REV. STAT. § 646.605(8).

1130. Defendants are "persons" within the meaning of OR. REV. STAT. §§ 646.605(4), 646.607, and 646.608.

1131. Plaintiffs' and each and every Class members' purchase or lease of Class Vehicles constitute a "sale" within the meaning of OR. REV. STAT. § 646.607.

1132. Defendant has advertised within the meaning of OR. REV. STAT. § 646.608.

1133. The acts and practices of Defendants as described in this complaint were intended to result in the sale or lease of Class Vehicles to Plaintiffs and Class members.

1134. Defendant has engaged in unconscionable tactics, false advertising, deceptive practices, unlawful methods of competition, and/or unfair acts as defined in the OUTPA, to the detriment of Plaintiff and Class members.   Defendant's unconscionable tactics and deceptive practices have been intentionally, knowingly, and unlawfully perpetrated upon Plaintiff and Class members and have violated and continue to violate the Unlawful Trade Practices Law.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

1135. Specifically under Section 646.608, Defendants have violated the following provisions of the OUTPA:

- (1)(b): Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of real estate, goods or services;

- (1)(e): Represents that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that the real estate, goods or services do not have or that a person has a sponsorship, approval, status, qualification, affiliation, or connection that the person does not have;

- (1)(g): Represents that real estate, goods or services are of a particular standard, quality, or grade, or that real estate or goods are of a particular style or model, if the real estate, goods or services are of another;

- (1)(i): Advertises real estate, goods or services with intent not to provide the real estate, goods or services as advertised; and

- (1)(u): Engages in any other unfair or deceptive conduct in trade or commerce.

OR. REV. STAT. § 646.608(1).

1136. Toyota's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and members of the Oregon Sub-Class, about the quality, workmanship, performance, safety, and true value of the defective Class Vehicles.

1137. Toyota intentionally and knowingly misrepresented, concealed, or omitted material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Oregon Sub-Class.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

1138. Toyota owed Plaintiffs and the Oregon Sub-Class a duty to disclose the Defect in Class Vehicles and the true value of Class Vehicles because Toyota:

    a. Possesses exclusive knowledge that its manufacturing process entailed the inclusion of defective and rodent-damage-prone soy- or bio-based wiring parts and components;

    b. Intentionally concealed the foregoing from Plaintiff and the Oregon Sub-Class; and/or

    c. Made incomplete, false or misleading representations about the characteristics, quality, workmanship, reliability, value, safety, efficiency, and performance of Class Vehicles while purposefully withholding material facts from Plaintiff and the Oregon Sub-Class that contradicted these representations.

1139. Defendants' deceptive and unfair actions alleged herein were reckless and undertaken by Defendants knowingly.

1140. As a result of Defendants' actions, Plaintiffs and Class members have incurred economic damages including, but not limited to, costs for repairs, insurance deductibles, other out-of-pocket losses, loss of Class Vehicle use, future repairs, and diminished value.

1141. Plaintiffs further seeks recovery of attorneys' fees, costs of litigation, punitive damages, and other equitable relief as determined by the court pursuant to OR. REV. STAT. § 646.638.

<div align="center">

**COUNT LXVI**
**BREACH OF EXPRESS WARRANTY**
**OR. REV. STAT. § 72.3130**
**(On Behalf of Plaintiffs Michaelis, and the Oregon Sub-Class)**

</div>

1142. Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

1143. This claim is brought by Plaintiffs Michaelis on behalf of the Oregon

Sub-Class.

1144. Toyota is and was at all relevant times a "merchant" with respect to motor vehicles. OR. REV. STAT. § 72.1040.

1145. The Class Vehicles are "goods." *Id*. § 72.1050.

1146. Pursuant to OR. REV. STAT. § 72.3130:

> (1) Express warranties by the seller are created as follows:
>
> > (1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

*Id*.

1147. In its Warranty and in advertisements, brochures, and through other statements in the media, Toyota expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. For example, the following language appears in all Class Vehicle Warranty manuals: "This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota, subject to the exceptions indicated under 'What Is Not Covered' . . . ."

1148. Toyota's Warranty, as well as advertisements, brochures, and other statements in the media regarding the Class Vehicles, formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles.

1149. Toyota breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Toyota. Toyota has not repaired or adjusted, and has been unable to repair or adjust, the Class Vehicles' materials and workmanship defects, namely the soy- or bio-based electrical wiring

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

parts and components.

1150. At the time of selling or leasing Class Vehicles, Toyota did not provide Class Vehicles that conformed to its express warranties.

1151. Furthermore, the Warranty of repair and/or adjustments to defective parts fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because Toyota has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

1152. Accordingly, recovery by Plaintiffs and the other Texas Sub-Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

1153. Also, as alleged in more detail herein, at the time that Toyota warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranties and were inherently defective, and Toyota wrongfully and fraudulently misrepresented and/or concealed material facts regarding its Class Vehicles. Plaintiffs and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1154. Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as many incidental and consequential damages have already been suffered due to Toyota's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies would be insufficient to make Plaintiffs and the other Class members whole.

1155. Furthermore, the application of (or refusal to permit coverage under) the Warranty is unconscionable and inadequate to protect Plaintiff and members of the

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

Class given that Toyota knew of the Defect but failed and fails to disclose it. A gross disparity in bargaining power existed between Toyota and Class members, and Toyota knew or should have known that the Class Vehicles were defective at the time of sale and that the wiring systems would fail well before their useful lives.

1156. Toyota was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by consumers before or within a reasonable amount of time after the allegations of the Defect became public.

1157. As a direct and proximate result of Toyota's breach of express warranties, Plaintiffs and the other Oregon Sub-Class members have been damaged in an amount to be determined at trial.

1158. Finally, due to Toyota's breach of warranty as set forth herein, Plaintiffs and the other Class members assert as an additional and/or alternative remedy, as set forth in OR. REV. STAT. § 72.6080, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the other Oregon Sub-Class members of the purchase price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed under OR. REV. STAT. §§ 72.7110 and 72.6080.

<div align="center">

**COUNT LXVII**
**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
**OR. REV. STAT. § 72.3140**
**(On Behalf of Plaintiffs Michaelis, and the Oregon Sub-Class)**

</div>

1159. Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

1160. This claim is brought by Plaintiffs Michaelis on behalf of the Oregon Sub-Class.

1161. Toyota is and was at all relevant times a "merchant" with respect to motor vehicles. OR. REV. STAT. § 72.1040.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

1162. The Class Vehicles are "goods." *Id*. § 72.1050.

1163. A warranty that the Class Vehicles were in merchantable condition was implied by law, pursuant to OR. REV. STAT. § 72.3140.

1164. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles suffer from an inherent Defect, as alleged herein.

1165. Toyota was provided notice of these issues by numerous complaints filed against it, including this Complaint, and by numerous individual letters, telephone calls, and other communications sent by Plaintiffs and other Class members before or within a reasonable amount of time after the allegations of the Defect became public.

1166. Plaintiffs and the other Class members have had sufficient direct dealings with either Toyota or its agents (dealerships) to establish privity of contract between Toyota, on the one hand, and Plaintiffs and the other Class members, on the other hand. Notwithstanding this, privity is not required in this case because Plaintiffs and the other Class members are intended third-party beneficiaries of contracts between Toyota and its dealers; specifically, they are the intended beneficiaries of Toyota's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because Plaintiffs' and the other Class members' Class Vehicles are dangerous instrumentalities due to the aforementioned Defect and nonconformities.

1167. Furthermore, the application of (or refusal to permit coverage under) the Warranty is unconscionable and inadequate to protect Plaintiff and members of the Class given that Toyota knew of the Defect but failed and fails to disclose it. A gross

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

disparity in bargaining power existed between Toyota and Class members, and Toyota knew or should have known that the Class Vehicles were defective at the time of sale and that the wiring systems would fail well before their useful lives.

1168. As a direct and proximate result of Toyota's breach of the warranty of merchantability, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial.

## COUNT LXVIII
## FRAUD/FRAUDULENT CONCEALMENT
### (On Behalf of Plaintiffs Michaelis, and the Oregon Sub-Class)

1169. Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

1170. This claim is brought by Plaintiffs Michaelis on behalf of the Oregon Sub-Class.

1171.  Defendants concealed and suppressed material facts concerning the performance and quality of the Class Vehicles – namely, the Defect – and the quality of the Toyota brand. Specifically, Defendants knew of (or should have known of) the Defect, but failed to disclose it prior to or at the time it sold or leased Class Vehicles to consumers. Defendants did so in order to boost sales and leases of Class Vehicles.

1172. Plaintiffs and Class members had no way of knowing that Defendants' representations were false and gravely misleading, or that Defendants had omitted imperative details. Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own.

1173. Defendants had a duty to disclose the true performance of the Class Vehicles and the Defect because knowledge thereof and the details related thereto were known and/or accessible only to Defendants; Defendants had superior knowledge and access to the facts; and Defendants knew the facts were not known to, or reasonably discoverable, by Plaintiffs and the Class. Defendants also had a

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

duty to disclose because they made general affirmative representations about the about the qualities of the Class Vehicles.

1174. On information and belief, Defendants still have not made full and adequate disclosures, and continue to defraud consumers by concealing material information regarding the Defect and the performance and quality of Class Vehicles.

1175. Toyota's misrepresentations and omissions were material because they would have affected purchasing decisions by reasonable consumers, including Plaintiffs and the Class. Plaintiffs and the Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or leased the Class Vehicles, or they would have done so at a significantly lower cost. Plaintiffs' and the Class' actions were justified. Defendants were in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Class.

1176. Plaintiffs and the Class relied upon Defendants representations and omissions regarding the quality of Class Vehicles and the Defect in deciding to purchase or lease Class Vehicles.

1177. Because of the concealment and/or suppression of the facts, Plaintiffs and the Class sustained damage because they did not receive the value of the premium price paid for their Class Vehicles. Plaintiffs and Class members would have paid less for Class Vehicles had they known about the Defect and the entire truth about them, or they would not have purchased or leased Class Vehicles at all.

1178. Accordingly, Defendants are liable to Plaintiffs and the Oregon Sub-Class for damages in an amount to be proven at trial.

1179. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Class' rights and well-being to enrich Defendants. Defendants' conduct warrants an assessment

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

<div align="center">

**COUNT LXIX**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiffs Michaelis, and the Oregon Sub-Class)**

</div>

1180. Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

1181. This claim is brought by Plaintiffs Michaelis on behalf of the Oregon Sub-Class. This claim is pled in the alternative to the other claims set forth herein.

1182. As the intended and expected result of its conscious wrongdoing, Toyota has profited and benefited from Plaintiffs' and Class members' purchase and lease of Class Vehicles containing the Defect.

1183. Toyota has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of Toyota's misconduct alleged herein, Plaintiffs and the Class were not receiving automobiles of the quality, nature, fitness, or value that had been represented by Toyota, and that a reasonable consumer would expect.

1184. Toyota has been unjustly enriched by its fraudulent, deceptive, and otherwise unlawful conduct in connection with the sale and lease of Class Vehicles and by withholding benefits from Plaintiffs and the Class at the expense of these parties.

1185. Equity and good conscience militate against permitting Toyota to retain these profits and benefits, and Toyota should be required to make restitution of its ill-gotten gains resulting from the conduct alleged herein.

**N.  Texas**

<div align="center">

**COUNT LXX**
**VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT**
**TEX. BUS. & COM. CODE §§ 17.41, *et seq.* ("TDTPA")**
**(On behalf of Plaintiffs Bowling and Browder, and the Texas Sub-Class)**

</div>

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

1186. Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

1187. This claim is brought by Plaintiffs Bowling and Browder on behalf of the Texas Sub-Class.

1188. The TDTPA provides that a person may not engage in any unfair or deceptive trade practice in the sale of any consumer good.

1189. Plaintiff and Toyota are "persons" within the meaning of the TDTPA. *See* TEX. BUS. & COM. CODE § 17.45(3).

1190. The Class Vehicles are "goods" under the TDTPA. *See id.* § 17.45(1).

1191. Plaintiffs and the other Texas Sub-Class members are "consumers" as defined in the TDTPA. *See id.* § 17.45(4).

1192. Toyota has at all relevant times engaged in "trade" and "commerce" as defined under TDTPA Section 17.45(6), by advertising, offering for sale, selling, leasing, and/or distributing the Class Vehicles in Texas, directly or indirectly affecting Texas citizens through that trade and commerce.

1193. Toyota participated in misleading, false or deceptive acts that violated the TDTPA. By fraudulently advertising and selling and leasing Class Vehicles with the Defect as described herein, Toyota engaged in deceptive business practices prohibited by the TDTPA.

1194. In the course of its business, Toyota incorporated soy- or bio-based electrical wiring insulation and other wiring components in Class Vehicles that attract rodents and other pests which cause damage to Class Vehicle electrical wiring. Toyota concealed and omitted this Defect and otherwise engaged in activities with the tendency or capacity to deceive. Toyota also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission, in connection with the sale or lease of Class Vehicles containing the soy- or bio-based wiring Defect.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

1195. Toyota has known of the Defect in Class Vehicles from complaints and communications by Plaintiffs and Class members, but continued to conceal the Defect in order to make sales and leases of Class Vehicles.

1196. By willfully failing to disclose and actively concealing the Defect, by marketing Class Vehicles as reliable and of high quality, and by presenting itself as a reputable manufacturer that stood by its products after they were sold or leased when it in fact does not, Toyota engaged in unfair and deceptive business practices in violation of the TDTPA.

1197. Toyota's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and members of the Texas Sub-Class, about the quality, workmanship, performance, safety, and true value of the defective Class Vehicles.

1198. Toyota intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Texas Sub-Class.

1199. Toyota's conduct was and is violative of the TDTPA in the following ways:

a.    representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not;

b.    representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

c.    advertising goods or services with intent not to sell them as advertised; and

d.    failing to disclose information concerning goods or services

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

TEX. BUS. & COM. CODE § 17.46(b)(5), (7), (9), (24).

1200. Toyota's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and members of the Texas Sub-Class, about the quality, workmanship, performance, safety, and true value of the defective Class Vehicles. Plaintiffs and Class members relied upon Toyota's misrepresentations, concealment, and omissions with respect to material information, namely concerning the Defect, to their detriment.

1201. Toyota intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Texas Sub-Class.

1202. Toyota owed Plaintiffs and the Texas Sub-Class a duty to disclose the Defect in Class Vehicles and the true value of Class Vehicles because Toyota:

    a.    Possesses exclusive knowledge that its manufacturing process entailed the inclusion of defective and rodent-damage-prone soy- or bio-based wiring parts and components;

    b.    Intentionally concealed the foregoing from Plaintiff and the Texas Sub-Class; and/or

    c.    Made incomplete, false or misleading representations about the characteristics, quality, workmanship, reliability, value, safety, efficiency, and performance of Class Vehicles while purposefully withholding material facts from Plaintiff and the Texas Sub-Class that contradicted these representations.

1203. Because Plaintiffs and the Texas Sub-Class overpaid for Class Vehicles

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

due to Toyota's conduct described herein and because the Defect in Class Vehicles has caused Plaintiffs and members of the Texas Sub-Class to incur out-of-pocket expenses, they have suffered ascertainable loss as a direct and proximate result of Toyota's deceptive and unfair acts and practices in violation of the TDTPA.

1204. On or about March 24, 2017, Plaintiffs Bowling and Browder notified Toyota of the damages and Defect in their Class Vehicles in satisfaction of TEX. BUS. & COM. CODE § 17.505.  Plaintiffs have made pre-suit attempts to remedy the Defect in their Class Vehicles, to no avail.

## COUNT LXXI
## BREACH OF EXPRESS WARRANTY
### TEX. BUS. & COM. CODE § 2.313
### (On Behalf of Plaintiffs Bowling and Browder, and the Texas Sub-Class)

1205. Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

1206. This claim is brought by Plaintiffs Bowling and Browder on behalf of the Texas Sub-Class.

1207. Toyota is and was at all relevant times a "merchant" with respect to motor vehicles. TEX. BUS. & COM. CODE § 2.104(a).

1208. The Class Vehicles are "goods." *Id*. § 2.105(a).

1209. Pursuant to TEX. BUS. & COM. CODE § 2.313:

(a) Express warranties by the seller are created as follows:

(1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

*Id*.

1210. In its Warranty and in advertisements, brochures, and through other statements in the media, Toyota expressly warranted that it would repair or replace

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

defects in material or workmanship free of charge if they became apparent during the warranty period. For example, the following language appears in all Class Vehicle Warranty manuals: "This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota, subject to the exceptions indicated under 'What Is Not Covered' . . . ."

1211. Toyota's Warranty, as well as advertisements, brochures, and other statements in the media regarding the Class Vehicles, formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles.

1212. Toyota breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Toyota. Toyota has not repaired or adjusted, and has been unable to repair or adjust, the Class Vehicles' materials and workmanship defects, namely the soy- or bio-based electrical wiring parts and components.

1213. At the time of selling or leasing Class Vehicles, Toyota did not provide Class Vehicles that conformed to its express warranties.

1214. Furthermore, the Warranty of repair and/or adjustments to defective parts fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because Toyota has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

1215. Accordingly, recovery by Plaintiffs and the other Texas Sub-Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

1216. Also, as alleged in more detail herein, at the time that Toyota warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

warranties and were inherently defective, and Toyota wrongfully and fraudulently misrepresented and/or concealed material facts regarding its Class Vehicles. Plaintiffs and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1217. Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as many incidental and consequential damages have already been suffered due to Toyota's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies would be insufficient to make Plaintiffs and the other Class members whole.

1218. Furthermore, the application of (or refusal to permit coverage under) the Warranty is unconscionable and inadequate to protect Plaintiff and members of the Class given that Toyota knew of the Defect but failed and fails to disclose it. A gross disparity in bargaining power existed between Toyota and Class members, and Toyota knew or should have known that the Class Vehicles were defective at the time of sale and that the wiring systems would fail well before their useful lives.

1219. Toyota was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by consumers before or within a reasonable amount of time after the allegations of the Defect became public.

1220. As a direct and proximate result of Toyota's breach of express warranties, Plaintiffs and the other Texas Sub-Class members have been damaged in an amount to be determined at trial.

1221. Finally, due to Toyota's breach of warranty as set forth herein, Plaintiffs and the other Class members assert as an additional and/or alternative remedy, as set forth in TEX. BUS. & COM. CODE § 2.608, for a revocation of acceptance of the goods,

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

and for a return to Plaintiffs and to the other Texas Sub-Class members of the purchase price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed under TEX. BUS. & COM. CODE §§ 2.711 and 2.608.

## COUNT LXXII
### BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
#### TEX. BUS. & COM. CODE § 2.314
### (On Behalf of Plaintiffs Bowling and Browder, and the Texas Sub-Class)

1222. Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

1223. This claim is brought by Plaintiffs Bowling and Browder on behalf of the Texas Sub-Class.

1224. Toyota is and was at all relevant times a "merchant" with respect to motor vehicles. TEX. BUS. & COM. CODE § 2.104(a).

1225. The Class Vehicles are "goods." *Id*. § 2.105(a).

1226. A warranty that the Class Vehicles were in merchantable condition was implied by law, pursuant to TEX. BUS. & COM. CODE § 2.314.

1227. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles suffer from an inherent Defect, as alleged herein.

1228. Toyota was provided notice of these issues by numerous complaints filed against it, including this Complaint, and by numerous individual letters, telephone calls, and other communications sent by Plaintiffs and other Class members before or within a reasonable amount of time after the allegations of the Defect became public.

1229. Plaintiffs and the other Class members have had sufficient direct dealings with either Toyota or its agents (dealerships) to establish privity of contract

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

between Toyota, on the one hand, and Plaintiffs and the other Class members, on the other hand. Notwithstanding this, privity is not required in this case because Plaintiffs and the other Class members are intended third-party beneficiaries of contracts between Toyota and its dealers; specifically, they are the intended beneficiaries of Toyota's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because Plaintiffs' and the other Class members' Class Vehicles are dangerous instrumentalities due to the aforementioned Defect and nonconformities.

1230.  Furthermore, the application of (or refusal to permit coverage under) the Warranty is unconscionable and inadequate to protect Plaintiff and members of the Class given that Toyota knew of the Defect but failed and fails to disclose it. A gross disparity in bargaining power existed between Toyota and Class members, and Toyota knew or should have known that the Class Vehicles were defective at the time of sale and that the wiring systems would fail well before their useful lives.

1231.  As a direct and proximate result of Toyota's breach of the warranty of merchantability, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial.

## COUNT LXXIII
## FRAUD/FRAUDULENT CONCEALMENT
**(On Behalf of Plaintiffs Bowling and Browder, and the Texas Sub-Class)**

1232.  Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

1233.  This claim is brought by Plaintiffs Bowling and Browder on behalf of the Texas Sub-Class.

1234.   Defendants concealed and suppressed material facts concerning the performance and quality of the Class Vehicles – namely, the Defect – and the quality

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

of the Toyota brand. Specifically, Defendants knew of (or should have known of) the Defect, but failed to disclose it prior to or at the time it sold or leased Class Vehicles to consumers. Defendants did so in order to boost sales and leases of Class Vehicles.

1235.  Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own.

1236.  Defendants had a duty to disclose the true performance of the Class Vehicles and the Defect because knowledge thereof and the details related thereto were known and/or accessible only to Defendants; Defendants had superior knowledge and access to the facts; and Defendants knew the facts were not known to, or reasonably discoverable, by Plaintiffs and the Class. Defendants also had a duty to disclose because they made general affirmative representations about the about the qualities of the Class Vehicles.

1237.  On information and belief, Defendants still have not made full and adequate disclosures, and continue to defraud consumers by concealing material information regarding the Defect and the performance and quality of Class Vehicles.

1238.  Toyota's misrepresentations and omissions were material because they would have affected purchasing decisions by reasonable consumers, including Plaintiffs and the Class. Plaintiffs and the Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or leased the Class Vehicles, or they would have done so at a significantly lower cost. Plaintiffs' and the Class' actions were justified. Defendants were in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Class.

1239.  Plaintiffs and the Class relied upon Defendants representations and omissions regarding the quality of Class Vehicles and the Defect in deciding to

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

purchase or lease Class Vehicles.

1240.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Class sustained damage because they did not receive the value of the premium price paid for their Class Vehicles. Plaintiffs and Class members would have paid less for Class Vehicles had they known about the Defect and the entire truth about them, or they would not have purchased or leased Class Vehicles at all.

1241.   Accordingly, Defendants are liable to Plaintiffs and the Texas Sub-Class for damages in an amount to be proven at trial.

1242.   Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Class' rights and well-being to enrich Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

///

///

///

### COUNT LXXIV
### UNJUST ENRICHMENT
**(On Behalf of Plaintiffs Bowling and Browder, and the Texas Sub-Class)**

1243. Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

1244.   This claim is brought by Plaintiffs Bowling and Browder on behalf of the Texas Sub-Class. This claim is pled in the alternative to the other claims set forth herein.

1245.   As the intended and expected result of its conscious wrongdoing, Toyota has profited and benefited from Plaintiffs' and Class members' purchase and lease of Class Vehicles containing the Defect.

1246.   Toyota has voluntarily accepted and retained these profits and benefits

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

with full knowledge and awareness that, as a result of Toyota's misconduct alleged herein, Plaintiffs and the Class were not receiving automobiles of the quality, nature, fitness, or value that had been represented by Toyota, and that a reasonable consumer would expect.

1247.   Toyota has been unjustly enriched by its fraudulent, deceptive, and otherwise unlawful conduct in connection with the sale and lease of Class Vehicles and by withholding benefits from Plaintiffs and the Class at the expense of these parties.

1248.   Equity and good conscience militate against permitting Toyota to retain these profits and benefits, and Toyota should be required to make restitution of its ill-gotten gains resulting from the conduct alleged herein.

**O.     Washington**

<div align="center">

**COUNT LXXV**
**VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT**
**WASH. REV. CODE §§ 19.86.010 *et seq.* ("WCPA")**
**(On Behalf of Plaintiffs Johns and the Washington Sub-Class)**

</div>

1249. Plaintiffs repeat and reallege the allegations contained above as if fully set forth herein.

1250.   This claim is brought by Plaintiffs Johns on behalf of the Washington Sub-Class.

1251. The WCPA broadly prohibits and makes unlawful to commit "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."   WASH. REV. CODE § 19.86.020.   The WCPA provides a private right of action for "[a]ny person who is injured in his or her business or property" by violations of the Act. *Id*. § 19.86.090.

1252. Toyota's actions as set forth herein occurred in the conduct of "trade" or "commerce" under the WCPA. *Id*. § 19.86.010(2).

1253. Toyota's  misrepresentations  and  material  omissions  regarding  the

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

Defect constitute unfair or deceptive acts or practices in violation of the WCPA.

1254. Specifically, Toyota engaged in unfair competition and unfair, unlawful or fraudulent business practices by the practices described herein, and by knowingly and intentionally concealing from Plaintiffs and Class members that the Class Vehicles suffer from the Defect (and the costs, risks, and diminished value of the vehicles as a result of this problem). Toyota had a duty to disclose this information because Toyota was in a superior position to know the true facts related to the Defect, Toyota intentionally concealed the foregoing from Plaintiffs and the Class, Plaintiffs and the Class members could not reasonably be expected to learn or discover the true facts related to the Defect, and Toyota made incomplete representations about – and made omissions regarding – the performance of Class Vehicles while purposefully withholding material facts from the Class that contradicted these statements and omissions.

1255. These unfair methods of competition and unfair and deceptive acts have caused injuries to Plaintiffs and members of the Class.

1256. Toyota intended for Plaintiffs and Class members to rely – and Plaintiffs and Class members did rely – on Toyota's deceptive and unfair practices when they purchased or leased defective Class Vehicles.

1257. Plaintiffs and the other Class members have suffered injuries in fact and actual damages as a result of Toyota's conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, paid out of pocket expenses relating to the Defect, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Toyota's misrepresentations and omissions, and are of the type of injuries that the WCPA was designed to prevent

1258. The above unfair and deceptive practices and acts by Toyota were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

injury to consumers that these consumers could not reasonably avoid; this substantial injury greatly outweighed any benefits to consumers or to competition.

1259. Toyota's actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiffs and Class members.

1260. Plaintiffs, on behalf of themselves and the Class, seek relief under WASH. REV. CODE § 19.86.090, including, but not limited to, actual damages, treble damages, injunctive relief, and attorneys' fees and costs.

## COUNT LXXVI
## BREACH OF EXPRESS WARRANTY
### WASH. REV. CODE § 62A.2-313
### (On Behalf of Plaintiffs Johns and the Washington Sub-Class)

1261. Plaintiffs repeat and reallege the allegations contained above as if fully set forth herein.

1262.  This claim is brought by Plaintiffs Johns on behalf of the Washington Sub-Class.

1263. Toyota is and was at all times a "merchant" and the Class Vehicles are "goods."

1264. In its Warranty and in advertisements, brochures, and through other statements, Toyota expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period.  For example, the following language appears in all Class Vehicle Warranty and Maintenance Guides:

> **WHAT IS COVERED AND HOW LONG**
>
> Basic Warranty
>
> This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota, subject to the exceptions indicated under "What Is Not Covered" . . . .

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

Ex. A.

1265. Toyota's Warranty does not exclude rodent or animal damage of the type suffered by Plaintiffs and Class members to their Class Vehicles.

1266. Toyota's warranties as well as advertisements, brochures, and other statements regarding the Class Vehicles, formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles.

1267. Toyota breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Toyota, as provided for under the Warranty. Toyota has not repaired or adjusted, and has been unable to repair or adjust, the Class Vehicles' materials and workmanship defects under the terms of the Warranty.

1268. Toyota breached express warranties by selling to Plaintiffs and Class Members Class Vehicles with soy- or bio-based wiring which Toyota knew or should have known attracts rodents and other pests and which makes wiring systems in the Class Vehicles prone to rodent damage, causing Class Vehicles to fail prematurely and/or fail to function properly.

1269. In addition, since Toyota knew or should have known about the Defect, the warranty failed its essential purpose.

1270. The limited warranty of repair and/or adjustments to defective parts also fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because Toyota has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

1271. Furthermore, the application of (or refusal to permit coverage under) the Warranty is unconscionable and inadequate to protect Plaintiff and members of the Class given that Toyota knew of the Defect but failed and fails to disclose it. A gross

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

disparity in bargaining power existed between Toyota and Class members, and Toyota knew or should have known that the Class Vehicles were defective at the time of sale and that the wiring systems would fail well before their useful lives.

1272. Toyota's attempts to disclaim or limit its warranties vis-à-vis consumers are unenforceable under the circumstances here.

1273. Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by law.

1274. Also, as alleged in more detail herein, at the time that Toyota warranted and sold the Class Vehicles, it knew that the Class Vehicles did not conform to the warranties and were inherently defective, and Toyota wrongfully and fraudulently misrepresented and/or concealed material facts regarding its Class Vehicles. Plaintiffs and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1275. Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as many incidental and consequential damages have already been suffered due to Toyota's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies would be insufficient to make Plaintiffs and the other Class members whole.

1276. The intended failure to disclose the known Defect is malicious, and it was carried out by Toyota with willful and wanton disregard for the rights and economic interests of Plaintiffs and Class Members.

1277. As a direct and proximate result of Toyota's breach of express warranties, Plaintiffs and the other Class members have suffered direct and

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

consequential damages in an amount to be determined at trial, including but not limited to costly repairs, loss of vehicle use, substantial loss in value and resale value of the vehicles, and other related damage.

1278. Due to Toyota's breach of warranties as set forth herein, Plaintiffs and the other Class members assert as an additional and/or alternative remedy for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the other Class members of the purchase price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed by law.

1279. Toyota was provided notice of these issues by numerous complaints filed against it, including the instant Complaint, and by numerous individual letters and communications sent by consumers and Class members.

1280. Plaintiffs and Class members have complied with all warranty obligations, or otherwise have been excused from performance of said obligations as a result of Toyota's conduct described herein.

///

///

## COUNT LXXVII
### BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
#### WASH. REV. CODE § 62A.2-314

1281. This claim is brought by Plaintiffs Johns on behalf of the Washington Sub-Class.

1282. Toyota is and was at all times a "merchant" and the Class Vehicles are "goods."

1283. A warranty that the Class Vehicles were in merchantable condition is implied by law. WASH. REV. CODE § 62A.2-314.

1284. Toyota impliedly warranted that the Class Vehicles were of a good and merchantable condition and quality – fit and safe for their ordinary intended use, and would be reasonably safe.

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

1285. The Class Vehicles were defective at the time they left the possession of Toyota.  Toyota knew of the Defect at the time these transactions occurred.  Thus, the Class Vehicles, when sold or leased, and at all times thereafter, were not in merchantable condition or quality and are not fit for their ordinary intended purpose.

1286. As a direct and proximate result of the breach of said warranties, Plaintiffs and Class members were injured and are entitled to damages.

1287. Toyota's attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Toyota's Warranty limitations are unenforceable because Toyota knowingly sold a defective product without informing consumers about the Defect.

1288. Furthermore, the application of (or refusal to permit coverage under) the Warranty is unconscionable and inadequate to protect Plaintiff and members of the Class given that Toyota knew of the Defect but failed and fails to disclose it. A gross disparity in bargaining power existed between Toyota and Class members, and Toyota knew or should have known that the Class Vehicles were defective at the time of sale and that the wiring systems would fail well before their useful lives.

1289. Plaintiffs and Class members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of Toyota's conduct described herein.

1290. Toyota was provided notice of these issues by complaints lodged by consumers directly and via NHTSA and elsewhere—which vehicle manufacturers like Toyota routinely monitor—before or within a reasonable amount of time after the allegations of the Defect became public. Notwithstanding such notice, Toyota failed to offer an effective remedy.

1291. To the extent it is required, the parties are in privity or, alternatively, Plaintiff and Class members are the intended beneficiaries of Toyota's contracts.

## COUNT LXXVIII
## FRAUD/FRAUDULENT CONCEALMENT

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

**(On Behalf of Plaintiffs Johns and the Washington Sub-Class)**

1292. Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

1293.   This claim is brought by Plaintiffs Johns on behalf of the Washington Sub-Class.

1294.   Defendants concealed and suppressed material facts concerning the performance and quality of the Class Vehicles – namely, the Defect – and the quality of the Toyota brand. Specifically, Defendants knew of (or should have known of) the Defect, but failed to disclose it prior to or at the time it sold or leased Class Vehicles to consumers. Defendants did so in order to boost sales and leases of Class Vehicles.

1295.   Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own.

1296.   Defendants had a duty to disclose the true performance of the Class Vehicles and the Defect because knowledge thereof and the details related thereto were known and/or accessible only to Defendants; Defendants had superior knowledge and access to the facts; and Defendants knew the facts were not known to, or reasonably discoverable, by Plaintiffs and the Class. Defendants also had a duty to disclose because they made general affirmative representations about the about the qualities of the Class Vehicles.

1297.   On information and belief, Defendants still have not made full and adequate disclosures, and continue to defraud consumers by concealing material information regarding the Defect and the performance and quality of Class Vehicles.

1298.   Toyota's misrepresentations and omissions were material because they would have affected purchasing decisions by reasonable consumers, including Plaintiffs and the Class. Plaintiffs and the Class were unaware of these omitted material facts and would not have acted as they did if they had known of the

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

concealed and/or suppressed facts, in that they would not have purchased or leased the Class Vehicles, or they would have done so at a significantly lower cost. Plaintiffs' and the Class' actions were justified. Defendants were in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Class.

1299.   Plaintiffs and the Class relied upon Defendants representations and omissions regarding the quality of Class Vehicles and the Defect in deciding to purchase or lease Class Vehicles.

1300.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Class sustained damage because they did not receive the value of the premium price paid for their Class Vehicles. Plaintiffs and Class members would have paid less for Class Vehicles had they known about the Defect and the entire truth about them, or they would not have purchased or leased Class Vehicles at all.

1301.   Accordingly, Defendants are liable to Plaintiffs and the Washington Sub-Class for damages in an amount to be proven at trial.

1302.   Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Class' rights and well-being to enrich Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

<div align="center">

**COUNT LXXIX**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiffs Johns and the Washington Sub-Class)**

</div>

1303. Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

1304.   This claim is brought by Plaintiffs Johns on behalf of the Washington Sub-Class. This claim is pled in the alternative to the other claims set forth herein.

1305.   As the intended and expected result of its conscious wrongdoing,

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

Toyota has profited and benefited from Plaintiffs' and Class members' purchase and lease of Class Vehicles containing the Defect.

1306.  Toyota has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of Toyota's misconduct alleged herein, Plaintiffs and the Class were not receiving automobiles of the quality, nature, fitness, or value that had been represented by Toyota, and that a reasonable consumer would expect.

1307.  Toyota has been unjustly enriched by its fraudulent, deceptive, and otherwise unlawful conduct in connection with the sale and lease of Class Vehicles and by withholding benefits from Plaintiffs and the Class at the expense of these parties.

1308.  Equity and good conscience militate against permitting Toyota to retain these profits and benefits, and Toyota should be required to make restitution of its ill-gotten gains resulting from the conduct alleged herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and similarly situated members of the Class, respectfully request that this Court:

(a)  Determine that this action is a proper class action, certifying Plaintiffs as a class  representatives under Federal Rule of Civil Procedure 23 and Plaintiffs' counsel  as Class Counsel;

(b)  Award all actual, general, special, incidental, statutory, punitive and consequential damages to which Plaintiffs and Class members are entitled;

(c)  Award pre-judgment and post-judgment interest on such monetary relief;

(d)  Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Toyota to repair, recall, and/or

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

replace the Class Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the Defect;

(e)     Award Plaintiffs and Class members their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(f)     Award such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs respectfully demand a jury trial for all claims so triable.

Dated:  April 3, 2017                                 Respectfully submitted,

                                                                **KABATECK BROWN KELLNER**

                                                      By: */s/     Brian S. Kabateck*
                                                                Brian S. Kabateck
                                                                Lina Melidonian
                                                                Drew R. Ferrandini
                                                                Engine Company No. 28 Building
                                                                644 South Figueroa Street
                                                                Los Angeles, CA 90017
                                                                Telephone: (213) 217-5000
                                                                Fax: (213) 217-010
                                                                Email: bsk@kbklawyers.com
                                                                Email: lm@kbklawyers.com
                                                                Email: df@kbklawyers.com

                                                                Benjamin F. Johns
                                                                (*pro hac vice*)
                                                                Andrew W. Ferich
                                                                (*pro hac vice*)
                                                                **CHIMICLES & TIKELLIS LLP**
                                                                One Haverford Centre
                                                                361 West Lancaster Avenue
                                                                Haverford, PA 19041
                                                                Telephone: (610) 642-8500
                                                                Fax: (610) 649-3633
                                                                Email: BFJ@chimicles.com
                                                                Email: AWF@chimicles.com

                                                                *INTERIM CO-LEAD COUNSEL*

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Brian D. Chase  (164109)
Jerusalem F. Beligan (211258)
**BISNAR CHASE, LLP**
One Newport Place
1301 Dove Street Suite 120
Newport Beach, CA 92626
Telephone: 949-752-2999
Fax: 949-752-2777
Email: bchase@bisnarchase.com
Email: jbeligan@bisnarchase.com

Jonathan A. Michaels
Kathryn J. Harvey
**MLG AUTOMOTIVE LAW, APLC**
2801 West Coast Highway Suite 370
Newport Beach, CA 92663
Telephone: 949-581-6900
Fax: 949-581-6908
Email:
jmichaels@mlgautomotivelaw.com
Email:
kharvey@mlgautomotivelaw.com

Scott C. Harris
**WHITFIELD BRYSON & MASON LLP**
900 W. Morgan Street
Raleigh, NC 27603
Telephone: 919-600-5000
Fax: 919-600-5035
Email: scott@wbmllp.com

Robert B. Brown III
**PENNEKAMP LAW, PA**
2811 SW 3rd Avenue
Miami, FL 33129
Telephone: 305-709-1749
Email: bob@pennekamplaw.com

*Plaintiffs' Steering Committee*

PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT