1  Brian S. Kabateck (SBN 152054)
   bsk@kbklawyers.com
2  Anastasia K. Mazzella (SBN 245201)
   am@kbklawyers.com
3  **KABATECK BROWN KELLNER LLP**
   633 West Fifth Street, Suite 3200
4  Los Angeles, CA 90071
   Telephone: (213) 217-5000
5  Facsimile: (213) 217-5010

6  Brian D. Chase (SBN 164109)
   bchase@bisnarchase.com
7  Jerusalem F. Beligan (SBN 211258)
   jbeligan@bisnarchase.com
8  **BISNAR | CHASE LLP**
   1301 Dove Street, Suite 120
9  Newport Beach, CA 92660
   Telephone: (949) 752-2999
10 Facsimile: (949) 752-2777

11 *Counsel for Plaintiffs and the Putative Classes*

12 [Additional Counsel on Signature Page]

13         **IN THE UNITED STATES DISTRICT COURT**
           **CENTRAL DISTRICT OF CALIFORNIA**
14              **SOUTHERN DIVISION**

15 JENNIFER GRAMMER; DOUGLAS          Case No. 8:16-cv-01525-CJC-JCG
   POWELL; BOBBY YORK; ALBERT
16 HEBER; JOSEPH LESKO and KIM
   LESKO; PENNY PORTER; JAMES         **CLASS ACTION**
17 DONOGHUE; LESLIE COCHRANE;
   and HEIDI BROWDER, individually and
18 on behalf of all others similarly situated,   **AMENDED CONSOLIDATED**
                                      **CLASS ACTION COMPLAINT**
19         Plaintiffs,

20         v.

21 TOYOTA MOTOR SALES, U.S.A.,
   INC.,
22
           Defendant.
23

24

25

26                                    JURY TRIAL DEMANDED

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.    INTRODUCTION…………………………...……………….…...1

II.   JURISDICTION AND VENUE……………………………………..2

III.  PARTIES

    A.    California Plaintiffs……………………………………………..2

    B.    Georgia Plaintiff…..……………………………………………5

    C.    Indiana Plaintiffs……………………………………………....6

    D.    Nebraska Plaintiff ………………………………………...10

    E.    New Jersey Plaintiff……………………………………………11

    F.    Oklahoma Plaintiff………………………………………...11

    G.    Texas Plaintiff…………………………………………...……12

    H.    Toyota………………………………………………………...14

IV.   FACTUAL BACKGROUND……………………………...…15

    A.    Toyota imported, distributed and sold the Class Vehicles with soy-based wiring harnesses…………………………..………………………15

    B.    Plaintiffs are the intended beneficiaries to the contracts between Toyota and its authorized dealers………………………………………16

    C.    Plaintiffs are the intended beneficiaries to the contracts between Toyota and its authorized dealers..................................................................23

V.    CLASS ALLEGATIONS...……………………………….…..24

VI.   CLAIMS FOR RELIEF...………..…………………….…..27

    A.    **California**

        COUNT I – Breach of the Implied Warranty of Merchantability in Violation of California's Song-Beverly Consumer Warranty Act (Cal. Civ. Code §§ 1791.1 & 1792)………………….…………………27

        COUNT II – Violation of the Unlawful Prong of California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)………..………………………………………………....29

AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT

B.   **Georgia**

Count IV – Breach of the Implied Warranty of Merchantability (Ga. Code Ann. § 11-2-314)…….……………………………………………...29

C.   **Indiana**

Count V – Breach of the Implied Warranty of Merchantability (Ind. Code § 26-1-2-314)…………….…………………………………....30

D.   **Nebraska**

COUNT VII – Breach of the Implied Warranty of Merchantability (Neb. Rev. Stat. § 2-314)...…………………………………………...31

E.   **New Jersey**

Count VIII – Breach of the Implied Warranty of Merchantability (N.J.S.A. § 12A:2-314)………..……………………………………32

F.   **Oklahoma**

COUNT IX – Breach of the Implied Warranty of Merchantability (Okla. Stat. tit. 12A, § 2-314)……….…………………………………....33

G.   **Texas**

COUNT X – Breach of the Implied Warranty of Merchantability (Tex. Bus. & Com. Code § 2.314…..……………………………….....34

VII.   PRAYER FOR RELIEF……..……………………………………….34

Plaintiffs Jennifer Grammer, Douglas Powell, , Bobby York, Albert Heber, Joseph Lesko and Kim Lesko, Penny Porter, James Donoghue, Leslie Cochrane,  and Heidi Browder (Plaintiffs), individually and on behalf of all others similarly situated, bring this class action against  Defendant Toyota Motor Sales, U.S.A., Inc. (Toyota). The model vehicles currently involved in this class action are Toyota's RAV4, Tacoma, Tundra, Camry, Prius, Corolla, Highlander, Sequoia, Sienna, Venza, Yaris, 4Runner, Avalon, FJ Cruiser, and Matrix, model years 2008 to the present (referred to below as Class Vehicle or Class Vehicles).[1]

# I.    INTRODUCTION

1.    Toyota manufactured, distributed and sold Class Vehicles—throughout its network of authorized dealers in the U.S.—with soy-based wiring harnesses. By manufacturing the Class Vehicles with soy-based material, rodents have become more attracted to the Class Vehicles, resulting in a continued spike in rodent damage to the wiring in the Class Vehicles (the "Soy Wiring Defect"). Although it chose to manufacture the Class Vehicles with soy-based wiring harnesses, Toyota refuses to cover damages caused by rodents under the New Vehicle Limited Warranty ("NVLW") it provides to consumers who buy or lease its Class Vehicles.

2.    By refusing to cover damages caused by the Soy Wiring Defect, Toyota has effectively shifted the cost of repairs from itself onto the shoulders of unsuspecting consumers and increased the cost of owning the Class Vehicles. Not only has the Soy Wiring Defect increased the cost of owning the Class Vehicles, it poses serious safety hazards. The damaged wiring can debilitate the Class Vehicles and increase the risk of car accidents—exposing not only the drivers and passengers to risk of injury, but other drivers and pedestrians on the streets and highways. The consequences of the damaged wiring ranged from the vehicle not starting to suddenly losing the ability to shift gears

---

[1] Plaintiffs reserve the right to amend the definition of Class Vehicles after  non-expert discovery is completed.

AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT

while driving. As a result of the Soy Wiring Defect, consumers do not feel safe driving their Class Vehicles.

3.     Plaintiffs have brought implied warranty claims under certain states to recover damages and restitution for those consumers who purchased or leased one or more of the Class Vehicles that contain soy-based wiring harnesses.

## II.     JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because: (i) there are 100 or more class members; (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs; and (iii) because at least one plaintiff and defendant are citizens of different states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Toyota transacts business in this district, is subject to personal jurisdiction in this district, and is therefore deemed to be a citizen of this district. Additionally, Toyota has advertised in this district and has received substantial revenue and profits from its sales and/or leasing of Class Vehicles in this district; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

6.     This Court has personal jurisdiction over Toyota because it has conducted substantial business in this judicial district and intentionally and purposefully placed Class Vehicles into the stream of commerce throughout the United States and specifically within this district.

## III.     PARTIES

### A.     California Plaintiffs

**Plaintiff Jennifer Grammer**

7.     Plaintiff Grammer is a citizen of California and currently resides in Carson, California.

AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT

8.     In June 2012, Plaintiff Grammer purchased a 2012 Toyota Corolla from one of Toyota's authorized dealers: South Bay Toyota in Gardena, California. When she purchased her vehicle, Toyota—through its authorized dealer—provided Plaintiff Grammer with the NVLW. She uses her Class Vehicle for personal, family, and/or household uses.

9.     In or about August 2016, Plaintiff Grammer was driving her Class Vehicle on the freeway when the check engine light turned on and the car would not accelerate. In or about August 2016, Plaintiff Grammer took her Class Vehicle to a repair shop in Torrance, California. The technician advised Plaintiff Grammer that there were chew marks on the wiring in the engine bay and rodent droppings in the engine compartment of her Class Vehicle. The technician also advised her that a rodent had chewed through the wiring that corresponds with the transmission speed sensor in her Class Vehicle. Plaintiff Grammer paid out of pocket for the repair to the wiring and speed sensor.

10.    At no time prior to August 2016 did Plaintiff Grammer know or suspect that her Class Vehicle was manufactured with soy-based wiring harnesses. Plaintiff Grammer reasonably expected Toyota would not sell her a vehicle with a latent defect. Plaintiff Grammer did not know nor in the exercise of reasonable diligence could have discovered that her Class Vehicle contained soy-based wiring harnesses at the point of sale. The compositional make-up of the wiring harnesses used in Toyota vehicles is not available to the general public; thus, there was no way for Plaintiff Grammer to find out whether her Class Vehicle contained soy-based wiring harnesses prior to sale. In addition, Plaintiff Grammer did not have access to Toyota's internal documents including, but not limited, hundreds of consumer complaints and Dealership Product Reports and Field Technical Reports relating to the Soy Wiring Defect. Nor did Plaintiff Grammer have access to Toyota's material specifications for the wiring in the Class Vehicles or information and documents provided to it by its wire suppliers. Prior to purchasing her Class Vehicle, Plaintiff Grammer was kept in the dark about

AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT

1  soy-based wiring harness in her Class Vehicle and therefore it was a latent defect,
2  which she did not discover until the defect manifested itself in August 2016.

3  11.   Plaintiff Grammer would not have purchased the Class Vehicle, or
4  would have paid significantly less than retail price of $18,895, had Toyota informed
5  her that her vehicle contained soy-based wiring harnesses. As a result of the soy-based
6  wiring harnesses in her Class Vehicle and the Soy Wiring Defect, Plaintiff Grammer
7  suffered an ascertainable loss including, but not limited to, out-of-pocket repair
8  expenses, future repair costs, and diminished value of her Class Vehicle.

9  **Plaintiff Douglas Powell**

10  12.   Plaintiff is a citizen of California and currently resides in Stockton,
11  California.

12  13.   On July 26, 2016, Plaintiff Powell purchased a 2016 RAV4 from an
13  authorized Toyota dealership: Antioch Toyota in Antioch, California. When he
14  purchased his vehicle, Toyota—through its authorized dealer—provided Plaintiff
15  Powell with the NVLW. Plaintiff Powell uses the Class Vehicle for personal, family,
16  and/or household uses.

17  14.   On or about September 12, 2016, Plaintiff Powell's Class Vehicle would
18  not start. Plaintiff Powell had his Class Vehicle towed to the Stockton Toyota Town
19  dealership where he was informed that a rodent had damaged the main engine
20  compartment electrical harness. Plaintiff Powell was informed that the entire electrical
21  harness had to be replaced and that it would cost approximately $4,500 to repair. At
22  that time, Plaintiff Powell's Class Vehicle had only 3,776 miles. The Toyota dealer,
23  however, refused to cover the repair under the NVLW. As a result, Plaintiff Powell
24  was forced to submit the cost of repair to his automobile insurance company. Plaintiff
25  Powell's insurance company covered the repair, but he had to pay a $250 deductible.
26  Neither Toyota nor any of its agents, dealers, or other representatives informed
27  Plaintiff Powell of the existence soy-based wiring harnesses in his Class Vehicle prior
28  to his purchase.

AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT

15.    Plaintiff Powell has suffered an ascertainable loss as a result of the soy-based wiring in his Class Vehicle and the Soy Wiring Defect including, but not limited to, out-of-pocket losses, future repairs, and diminished value of his Class Vehicle. Had Plaintiff Powell known that his Class Vehicle contained soy-based wiring, he would not have purchased the Class Vehicle, or would have paid significantly less than the retail price of $32,910.

**B.    Georgia Plaintiff**

16.    Plaintiff Bobby York is a citizen of the state of Georgia and currently resides in Barnesville, Georgia.

17.    On or about July 17, 2014, Plaintiff York purchased a new 2014 Toyota Highlander from Toyota of McDonough, an authorized Toyota dealer in McDonough, Georgia. When he purchased his vehicle, Toyota—through its authorized dealer—provided Plaintiff York with the NVLW. Plaintiff York uses the Class Vehicle for personal, family, and/or household uses.

18.    On or about December 6, 2016, Plaintiff York noticed his ABS warning light illuminated in the dashboard of his Class Vehicle. Pursuant to the instructions in the NVLW manual, Plaintiff York contacted the Toyota dealership immediately.

19.    On December 8, 2016, Plaintiff York took his Class Vehicle to Toyota of McDonough for a morning appointment. Plaintiff was assisted by a service advisor, Seth Fort, and a service technician, Matthew Doss. At the time of this service appointment, Plaintiff York's Class Vehicle mileage was at 31,690 miles. After an hour of inspection, Mr. Fort informed Plaintiff York that he found nothing wrong with the brakes, but that the ABS warning light had illuminated because rodents chewed through the ABS wire. Plaintiff York was told that the brakes would operate safely, but unless the wiring harness was repaired, the warning system would not operate in the event of an actual malfunction. When Plaintiff York inquired as to whether the damage was covered under the NVLW, Mr. Fort informed him that Toyota's warranty will not cover the damage. Plaintiff York paid $310.35 out-of-pocket to have his Class

AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT

Vehicle's wiring harness repaired.

20.     Plaintiff York has suffered an ascertainable loss as a result of the soy-based wiring in his Class Vehicle and the Soy Wiring Defect including, but not limited to, out-of-pocket losses, future repairs, and diminished value of his Class Vehicle. Had Plaintiff York known that his Class Vehicle contained soy-based wiring, he would not have purchased the Class Vehicle, or would have paid significantly less than the retail price.

**C.    Indiana Plaintiffs**

**Plaintiff Albert Heber**

21.     Plaintiff Heber is a citizen and resident of Indiana.

22.     Plaintiff Heber purchased a 2012 Toyota Tundra from a Toyota authorized dealer in Lafayette, Indiana on December 29, 2012. He uses the Class Vehicle for personal, family, and/or household uses. When he purchased his vehicle, Toyota—through its authorized dealer—provided Plaintiff Heber with the NVLW.

23.     In May 2013—roughly five months after he purchased the Class Vehicle and with only 1,747 miles—Plaintiff Heber brought the vehicle to the Toyota authorized dealer from which he purchased the car because his check engine light turned on and the 4LOW indicator would not turn off. According to the dealer, the Malfunction Indicator Light indicated a Code P0717. The dealer thought it was a loose connector plug and corrected the issue under the NVLW. Approximately two weeks later, Plaintiff Heber returned to the dealership because his check engine light turned on again despite the previous repair. The dealer thought it was an EVAP emission control system leak and repaired the problem under the NVLW.

24.     Then, after owning the Class Vehicle for less than a year and with only 3,441 miles, Plaintiff Heber took the Class Vehicle to the dealer for a third time on October 2, 2013 because the check engine light turned on again. This time the dealer found rodent damage to the EVAP tube, which has occurred in other Class Vehicles, including other 2008 and 2010 Tundra's. The cost to repair the EVAP tube was

AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT

$1,183.82. Toyota refused to cover the repair under the NVLW. Due to the costly repair, Plaintiff Heber elected not to repair the EVAP tube at that time.

25.     In June 2014—with approximately 5,700 miles in the Class Vehicle—Plaintiff Heber brought his vehicle twice to the dealership due to numerous lights in the dashboard turning on. During the first visit, the SA found a broken and chewed through wiring harness and ground straps. The SA ordered a new wiring harness and Plaintiff Heber paid out of pocket $156.96 for the new wiring harness. During the second visit, the SA replaced the speed sensor harness and the SA advised Plaintiff Heber that the check engine light will continue to remain on until the gas tank harnesses, which were chewed through by rodents, are fixed. For this visit, Plaintiff Heber paid out of pocket $225.00. Toyota refused to cover any of the repairs under its Express Warranty, forcing Plaintiff Heber to pay a total $381.96 out of his own pocket.

26.     In or around June 2015—with roughly 7,400 miles in the Class Vehicle—Plaintiff Heber experienced more rodent damage to the wiring harnesses. Because he knew the Toyota dealer was not going to cover the repair, Plaintiff Heber brought his vehicle to a third-party repair shop with the hope that the cost of repair would be cheaper. The technician at the repair shop found numerous wiring problems in the Class Vehicle, including damage to the wiring connected to the ABS sensors, a hole in the fuel vapor hose, speed sensor wiring, passenger side oxygen sensor wiring harness, and front crash sensor. Due to the high cost to repair all the damage caused by the soy-based wiring harnesses, Plaintiff Heber chose, at that time, to repair the speed sensor wiring, oxygen sensor wiring and the airbag crash sensor for a total of $356.59. Plaintiff Heber did not have the chewed fuel vapor hose repaired at that time.

27.     Eventually, however, the chewed fuel vapor hose had to be repaired when the fuel gauge and the 4WD light in the Class Vehicle failed. The cost to repair amounted to $1,738.76. Plaintiff Heber submitted the repair to his automobile insurance company who paid for the repair, but Plaintiff Heber had to pay a $250 deductible. In total, Plaintiff Heber has paid out of pocket $988.55 to repair damages

AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT

caused by the Soy Wiring Defect.

28.     At no time prior to October 2013 did Plaintiff Heber know or suspect his Class Vehicle was manufactured with soy-based wiring harnesses or that the Soy Wiring Defect would manifest in his Class Vehicle. Plaintiff Heber reasonably expected that Toyota would not sell him a Class Vehicle with a latent defect and would disclose any such defect when it learns of it. Plaintiff Heber did not know, nor in the exercise of reasonable diligence, could have discovered his Class Vehicle contained soy-based wiring harnesses or about the Soy Wiring Defect until it manifested itself because the compositional makeup of Toyota's wiring harnesses is not a published specification available to the general public; thus, there was no way for Plaintiff Heber to affirmatively find out whether his Class Vehicle contained soy-based wiring harnesses. Moreover, Plaintiff Heber did not have access to Toyota's internal documents including, but not limited to, the hundreds of consumer complaints relating to the Soy Wiring Defect, Dealership Product Reports and Field Technical Reports provided to Toyota from its authorized dealers relating to the Soy Wiring Defect, and Toyota's material specifications relating to the wiring in the Class Vehicles or information and documents provided to Toyota by wire suppliers. In a nutshell, prior to purchasing his Class Vehicle in December 2012, Plaintiff Heber was kept in the dark about the makeup of the wiring in his Class Vehicle and was not informed that it contained soy-based wiring harnesses.

29.     Plaintiff Heber would not have purchased the Class Vehicle, or would have paid significantly less than retail price of $30,560.00, had Toyota told informed that his Class Vehicle contained soy-based wiring harnesses or informed him about the Soy Wiring Defect. As a result of the soy-based wiring harnesses in his Class Vehicle and the Soy Wiring Defect, Plaintiff Heber suffered an ascertainable loss including, but not limited to, out-of-pocket repair expenses, future repair costs, and diminished value of his Class Vehicle.

AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT

**Plaintiffs Joseph and Kim Lesko**

30.     Plaintiffs Lesko are citizens of Indiana and currently reside in Trafalgar, Indiana.

31.     On or about June 8, 2016, Plaintiffs Lesko purchased a new 2016 Toyota Tundra from O'Brien Toyota, an authorized Toyota dealer in Indianapolis, Indiana. When they purchased their vehicle, Toyota—through its authorized dealer—provided Plaintiffs Lesko with the NVLW. Plaintiffs Lesko use the Class Vehicle for personal, family, and/or household uses.

32.     On or about December 30, 2016, Mr. Lesko started his Class Vehicle and noticed that the check engine light illuminated in the dashboard and the display panel indicated that traction control was not operating. Plaintiffs Lesko contacted Carver Toyota in Columbus, Indiana immediately. They scheduled a morning appointment for January 2, 2017. Plaintiffs were informed by Carter Toyota that rodents had eaten the materials that cover the electrical wiring in his Class Vehicle. Specifically, Carver Toyota found that the check engine light illuminated because there was rodent damage to the knock sensor wires. At the time of this service appointment, the mileage on the Class Vehicle was 3,426 miles. An employee at Carver Toyota informed Plaintiffs Lesko that Toyota was experiencing rodent problems with the soy-based materials in the wiring and that he had seen this issue at another Toyota dealership. The employee also told Plaintiffs Lesko that the reason Toyota was making its wiring harnesses in smaller segments was to accommodate the ongoing rodent problem so that damage to one location on the wiring harness does not destroy the entire wiring harness. The Toyota service worker informed Mrs. Lesko that this was done to "save money" for consumers. The total repair cost for Plaintiffs Lesko's Class Vehicle was $599.67, which was covered by insurance, but Plaintiffs Lesko had to pay a $250 deductible. Plaintiffs Lesko also lost use of their Class Vehicle for a number of days while it underwent repairs.

///

AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT

33.     Plaintiffs Lesko would not have purchased the Class Vehicle, or would have paid significantly less than the retail price, had Toyota informed them that their Class Vehicle contained soy-based wiring harnesses or informed them about the Soy Wiring Defect. As a result of the soy-based wiring harnesses in their Class Vehicle and the Soy Wiring Defect, Plaintiffs Lesko suffered an ascertainable loss including, but not limited to, out-of-pocket repair expenses, future repair costs, and diminished value of their Class Vehicle.

**D.     Nebraska Plaintiff**

34.     Plaintiff Penny Porter is a citizen of Nebraska and currently resides in Ralston, Nebraska.

35.     On October 1, 2013, Plaintiff Porter purchased a new 2014 RAV4 from Village Point Toyota, formerly called Old Mill Toyota, which is an authorized Toyota dealer in Omaha, Nebraska. When she purchased her vehicle, Toyota—through its authorized dealer—provided Plaintiff Porter with the NVLW. Plaintiff Porter uses the Class Vehicle for personal, family, and/or household uses.

36.     On April 11, 2014, Plaintiff Porter was driving on the interstate when all lights on the dashboard came on. Her front head lights went out, except for one high beam. At one point the brakes locked up. Plaintiff Porter had her Class Vehicle towed to Omaha where a dealership discovered that rodents ate through the soy-based wiring harnesses and through the electrical wiring in her Class Vehicle. The mileage on her Class Vehicle at the time of service was 8,468 miles. As a result of this incident, Plaintiff Porter had to pay $1,680.00 in repairs. Plaintiff Porter had to use her automobile insurance to have the damage repaired and paid a $500.00 deductible.

37.     Plaintiff Porter would not have purchased the Class Vehicle, or would have paid significantly less than the retail price, had Toyota informed her that her Class Vehicle contained soy-based wiring harnesses or informed her about the Soy Wiring Defect. As a result of the soy-based wiring harnesses in her Class Vehicle and the Soy Wiring Defect, Plaintiff Porter suffered an ascertainable loss including, but

AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

not limited to, out-of-pocket repair expenses, future repair costs, and diminished value of her Class Vehicle.

### E.    New Jersey Plaintiff

38.    Plaintiff James Donoghue is a citizen of New Jersey and currently resides in Mt. Laurel, New Jersey.

39.    Plaintiff Donoghue purchased a 2013 Toyota Tacoma from an authorized Toyota dealer in New Jersey. When he purchased his vehicle, Toyota—through its authorized dealer—provided Plaintiff Donoghue with the NVLW. Plaintiff Donoghue uses his Class Vehicle for personal, family, and/or household uses.

40.    In or about January 2017, Plaintiff Donoghue experienced electrical wiring damage to his Class Vehicle as a result of rodents chewing or eating through the soy-based wiring harnesses and through the electrical wiring in his Class Vehicle. Plaintiff Donoghue took his Class Vehicle to Holman Toyota for repair. The cost to repair cost was $3,900, but Toyota refused to cover the repair under the NVLW. The mileage on Plaintiff Donoghue's Class Vehicle at the time of the repair was approximately 42,000 miles. Plaintiff Donoghue made a claim under his automobile insurance policy and had to pay a $750 insurance deductible, and had to rent a vehicle while his Class Vehicle was being repaired.

41.    Plaintiff Donoghue would not have purchased the Class Vehicle, or would have paid significantly less than the retail price, had Toyota informed him that his Class Vehicle contained soy-based wiring harnesses or informed him about the Soy Wiring Defect. As a result of the soy-based wiring harnesses in his Class Vehicle and the Soy Wiring Defect, Plaintiff Donoghue suffered an ascertainable loss including, but not limited to, out-of-pocket repair expenses, future repair costs, and diminished value of his Class Vehicle.

### F.    Oklahoma Plaintiff

42.    Plaintiff Leslie Cochrane is a citizen of Oklahoma and currently resides in Lexington, Oklahoma.

AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT

43.     On July 23, 2016, Plaintiff Cochrane leased a new 2016 Toyota Corolla from Fowler Toyota, which is an authorized Toyota dealer in Norman, Oklahoma. When she purchased her vehicle, Toyota—through its authorized dealer—provided Plaintiff Cochrane with the NVLW. She uses the Class Vehicle for personal, family, and/or household uses.

44.     On August 8, 2016, Plaintiff Cochrane had to take a business trip and left his Class Vehicle parked in a carport at his home.  A few days later, after returning from his business trip, Plaintiff Cochrane was driving his Class Vehicle when suddenly the check engine light illuminated. When this occurred, he could not make the car accelerate, and the car horn would not function. Plaintiff Cochrane had his Class Vehicle towed to Fowler Toyota where the dealership discovered that rodents ate through the soy-based wiring harness and through the electrical wiring in his Class Vehicle. Specifically, the dealer concluded that some horn and electronic fuses had "popped" because a rodent entered the junction block under the hood by the battery and chewed multiple wires. The mileage on his Class Vehicle at the time of service was 273 miles. As a result of this incident, Plaintiff Cochrane had to pay $623.97 in repairs. Plaintiff Cochrane was told by a service representative that Plaintiff he should (at his own cost) use mouse traps in his Class Vehicle.

45.     Plaintiff Cochrane would not have purchased the Class Vehicle, or would have paid significantly less than the retail price, had Toyota informed her that her Class Vehicle contained soy-based wiring harnesses or informed her about the Soy Wiring Defect. As a result of the soy-based wiring harnesses in her Class Vehicle and the Soy Wiring Defect, Plaintiff Cochrane suffered an ascertainable loss including, but not limited to, out-of-pocket repair expenses, future repair costs, and diminished value of her Class Vehicle.

## G.     Texas Plaintiff

46.     Plaintiff Heidi Browder is a citizen of Texas and currently resides in Burleson, Texas.

AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT

47.     In or about November 2015, Plaintiff Browder purchased a 2015 Toyota Avalon Hybrid from Family Toyota, an authorized Toyota dealer in Burleson, Texas. When she purchased her vehicle, Toyota—through its authorized dealer—provided Plaintiff Browder with the NVLW. She uses the Class Vehicle for personal, family, and/or household uses.

48.     On or about November 21, 2016, Plaintiff tried to start her Class Vehicle multiple times—which was parked in her garage, where she regularly parks her Class Vehicle—but the engine would not turn over and her Class Vehicle made no noise or sound. After Plaintiff Browder and her husband were unable to start the car, Plaintiff Browder's husband lifted the hood of the car and observed a rodent scurry across the top of the engine. They observed damage to the wires under the hood and took the following photograph:



49.     Her husband contacted Family Toyota and they instructed him to contact a roadside assistance company, which he did. The roadside assistance company came to their home and towed their Class Vehicle to Family Toyota. The mileage on the Class Vehicle at the time of this service appointment was 26,209 miles. A couple of hours later, a Family Toyota service technician, named Greg, called Plaintiff Browder to report that there was rodent damage to her Class Vehicle. Specifically, Family Toyota concluded that the main engine wiring harness had been compromised and that it would have to replace the harness, repair the wiring harness to the transmission, and replace the O2 sensor wires. Greg instructed Plaintiff Browder to contact her insurance

AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT

company to see if they would cover the rodent damage. Greg indicated that the damage would cost between $5,600 and $6,000 to repair. Plaintiff Browder contacted her insurance carrier to make a claim, and her Class Vehicle was repaired under insurance; however, Plaintiff was required to pay a $500 deductible. Plaintiff Browder later spoke to a service representative of Family Toyota named Richard. Richard stated that rodent damage is "not uncommon" and that it "happens a lot" with Toyota vehicles. Family Toyota informed Plaintiff that she should purchase, at her own cost, a spray to deter rodent attacks.

50.    Plaintiff Browder would not have purchased the Class Vehicle, or would have paid significantly less than the retail price, had Toyota informed her that her Class Vehicle contained soy-based wiring harnesses or informed her about the Soy Wiring Defect. As a result of the soy-based wiring harnesses in her Class Vehicle and the Soy Wiring Defect, Plaintiff Browder suffered an ascertainable loss including, but not limited to, out-of-pocket repair expenses, future repair costs, and diminished value of her Class Vehicle.

**H.    Toyota**

51.    Toyota is headquartered in Plano, Texas. Toyota is the authorized importer and distributor of the Class Vehicles in the United States. Toyota imports the Class Vehicles and then sells and distributes the Class Vehicles to its authorized dealers throughout the United States. Toyota's authorized dealers then sell or lease the Class Vehicles to consumers, such as Plaintiffs. When consumers purchase or lease the Class Vehicles from Toyota's authorized dealers, those consumers are provided a NVLW from Toyota. The warrantor for these limited warranties is Toyota. The warranty applies to all Class Vehicles distributed by Toyota and originally sold by a Toyota authorized dealer in the United States. The warranty coverage is automatically transferred to subsequent vehicle owners or lessees at no cost. The warranty period begins on the Class Vehicles' in-service date, which is the first date the vehicle is either delivered to the ultimate purchaser or lessor. Toyota recommends purchasers

AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

and lessees to have their Class Vehicles maintenance and service performed by its
authorized dealers because Toyota's dealership technicians are specially trained to
maintain and repair the Class Vehicles. Toyota's dealership technicians also stay
current on the latest service information through Toyota's technical bulletins service
publications and training courses, and many are also certified through the Toyota
Certification Program which involves series of rigorous written examinations. Toyota
claims that purchasers and lessees will get the best possible service when they take
their Class Vehicles to a Toyota dealership.

## IV.   FACTUAL BACKGROUND

### A.   Toyota imported, distributed, and sold Class Vehicles with soy-based wiring harnesses.

52.     In or about August 2008, Toyota began importing Class Vehicles into
the United States with soy-based wiring harnesses. Toyota sold and distributed these
Class Vehicles to its network of authorized dealers in the United States. Toyota's
authorized dealers then sold or leased the Class Vehicles to consumers, such as
Plaintiffs, with the soy-based wiring harnesses.

53.     The soy-based material attracts rodents into the engine compartments of
the Class Vehicles where rodents would chew through the soy-based wiring harnesses
and eventually chew through the electrical wiring. Although there have been instances
of rodents chewing traditional vinyl chloride wiring, the soy-based wiring material
made the wiring more attractive to rodents and therefore increased the probability of
rodent damage to the soy-based wiring in the Class Vehicles.

54.     As a result of the soy-based wiring in the Class Vehicles, buyers and
lessees, such as Plaintiffs, began to experience instances of rodent damage to the soy-
based wiring harnesses in their Class Vehicle. The damage to the soy-based wiring
would then cause the Class Vehicles to malfunction. The malfunctions included the
check engine lights turning on, vehicles not starting, or gears not shifting. The
resultant effect was a Soy Wiring Defect wherein the rodent damage to the soy-based

wiring in the Class Vehicles continued to increase at a steady rate.

55.     But when these consumers brought their Class Vehicles to the Toyota authorized dealers from which they purchased or leased their vehicles, the dealers—based on instructions from Toyota—refused to cover the repairs due to the Soy Wiring Defect  under the NVLW. The cost to repair ranged from hundreds to thousands of dollars. The consumers had to pay out of their own pockets for the cost of repairs and incidental costs, such as renting a vehicle while the Class Vehicle was being repaired. The damages caused by the Soy Wiring Defect has increased the cost of owning the Class Vehicles.

56.     In addition to economic damages, the  Soy Wiring Defect posed substantial safety hazards. The damaged wiring can cause catastrophic engine failure, including the gears being stuck, the gears not changing, or the vehicle not accelerating while driving. The failure caused by the Soy Wiring Defect jeopardizes the safety of drivers and passengers of the Class Vehicles, other drivers on the road, and pedestrians on the streets.

**B.     Toyota knew about the Soy Wiring Defect and actively concealed it.**

57.     Before the sale or lease of the Class Vehicles, neither Toyota nor its authorized dealers disclosed or warned consumers that the Class Vehicles contained soy-based wiring harnesses. Plaintiffs and other consumers had no way of knowing the Class Vehicles contained soy-based wiring harnesses before the sale or lease of the Class Vehicles because Toyota keeps the compositional makeup of its wiring from the purview of the public.

58.     Plaintiffs and other class members did not have access to Toyota's internal documents including, but not limited to, hundreds of consumer complaints made directly to Toyota and its authorized dealers, demonstrating Toyota knew that the Class Vehicles contained soy-based wiring, the increased attractiveness of the soy-based wiring to rodents, and the damages caused by the soy-based wiring.

59.     As evidenced by the hundreds of consumer complaints, Toyota knew of

AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT

widespread problems caused by the Soy Wiring Defect:

| Date | Consumer Complaint | Model/ Model Year | Component Part Damaged |
|---|---|---|---|
| 8/6/2008 | …Emailed Dated 8/6/08 … Thank you for your prompt response. ***My question was regarding the use of soy based product in the wires or wire coverings?*** I again look forward to your response. Thank you. Cathy H … 8/7/2008 … NCR Verbatim: "Dear Ms. H We are sorry, ***the compositional make-up of the wiring insulation used in Toyota vehicles is not a published specification***. … 08/06/2008 … email states we bough[t] our 2009 Cam[]ry in May. We have loved this vehicle! ***However the check engine light went on 2 days ago, took it to the dealership this morning the result was "mice have eaten the wiring to the purge valve and harness" I was told this is not covered under warranty***. We have lived in the same home for 20 years, have 8 different cars and (yes, an occasional mouse in the yard) … ***However my husband's car, parked right next to mine has not had any problems in 2 years, nor has any of the other car[]s had mice problems! I have hear[d] the wiring is made with soy, is this correct? This is very distressing***. Cathy H. … /6/08 … RBrowning NCR Verbatim: Dear Ms., Huffman; Thank you for contacting Toyota Motor Sales, U.S.A., Inc ***We are sorry to hear of your concerns with the wires of your Camry. … We have documented your comments at our National Headquarters, where they remain available for review from the appropriate departments***. | Camry/ 2009 | Wiring harness (CM220266-CM22071) |
| 9/10/2009 | … I enjoy my car but am very disturbed about a problem I had in May. After experiencing a problem driving my car, I took it to Iran Toyota in Danvers, Ma. They told me ***mice had eaten the coating on the wires under the hood***. This cost me over 2,000.00 to fix. Thankfully insurance picked up all but 300.00. ***I then found out that the wires are now being coated in soy product***. If this is the case, I would like to know how to protect my car in the future. ***I am concerned that this will happen again***. … NCR VERBATIM Ms. M We apologize for the concerns you have experienced with rodents entering your Camry. … Toyota does not have a prescribed course of action or other types of product or method to prevent this. Our best recommendation would be to contact a pest control specialist as mice or other rodents can enter any vehicle not just Toyotas. … ***Your email has been documented at*** | Camry/ 2009 | Wiring in engine bay (CM220282-CM220284) |

AMENDED CONSOLIDATED CLASS
                                                   ACTION COMPLAINT

| | | | |
|---|---|---|---|
| | *our National Headquarters…* | | |
| 11/2/2010 | … LETTER Date: 10/22/2010; Received: 0/26/2010 Letter sts: veh's check engine light came on along with other warning lights. Sts started driving on highway and veh would not shift gears so she drove in the emergency lane. ***Sts got to dlr and was adv that rodents had crawl[ed] into veh and eaten away a Wiring Harness.*** <span style="color:red">***Sts was adv that other Rav4 had the same problem because the wires contain soy bean extract***</span>. Sts insurance company paid for repair. Caller seeks to have Toy reimb her expense because this incident has caused a strike against her with the insurance company. | RAV4/ 2008 | Wiring harness (RV079335-RV079337) |
| 1/18/2011 | Caller states: veh has been to dlr re concern & ***per dlr the cond of the veh is due to a rodent chewing on the wires. Caller stated he feels this is unfair & that*** <span style="color:red">***he found info that Toy makes the wiring out of soy which can attract rodents***</span>. Caller stated he feels Toy is wrong for not covering this rpr or not working with him on the rpr. … | Corolla/ 2009 | Wiring in engine bay (MAT019958-MAT019959) |
| 2/5/2011 | Caller states wanted to doc that wiring harness was eaten by a mouse. ***Sts dlr said that toy uses a soy*** <span style="color:red">***based wiring covers and that's why eat the wires***</span>. S[t]s checked online. S[t]s will have to replace for $2800 … Caller seeks to doc concerns with Wiring Harness. NCR apol and adv cust will doc concerns and adv will doc concerns. | Tacoma/ 2011 | Wiring harness (SN050210-SN050212) |
| 10/19/2012 | Caller states she … is experiencing an infestation of mice in the vehicle. ***States she has spoken with her dealer and*** <span style="color:red">***Service Advisor Heather has indicated that mice are attracted to soy based wire coverings in the veh***</span>. … NCR adv will document concern thoroughly … | RAV4/ 2010 | Wiring in engine bay (RV079345-RV079346) |
| 10/31/2012 | ***… Cust … was adv that some rodents had gotten into his veh and ate the installation on the Wiring Harness.*** Cust sts while he was at Visalia Toy another cust had her veh towed in for the <span style="color:red">***same problem***</span>. Cust sts he paid $7,531.47 to have the Wiring Harness repaired. ***Cust sts he then began researching and*** <span style="color:red">***found that the Wiring Harness installation has a soy product on it that attracts rodents***</span>. ***… Cust Seeks: to get reimbursed since this is a problem that Toyota is*** <span style="color:red">***aware of***</span> *.* … ***NCR adv no CSP I SSC to address this concern wt; the Wiring Harness and the*** <span style="color:red">***soy product***</span>. NCR adv cust repair would not be reimbursed by Toy. ***NCR adv cust he could contact his Insurance Co to see if they would cover. NCR adv cust that information has been documented.*** … | Prius/ 2011 | Wiring harness (PR059830-PR059833) |
| 3/18/2013 | ***[C]ust sts she put $1,000 into the veh to replace the wire b/c PM rodent keep getting into the veh & chewing the harness.*** … NCR apol & adv concern | Sienna/ 2012 | Wiring harness (SN050217-SN050218) |

AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT

| | | | |
|---|---|---|---|
| | | has been documented. Adv Toy wont be able to assist w/repair cost b/c is not under defect warranty | | |
| | 11/19/2013 | **Cllr sts that she has[] spent $1000 in deductibles because something is chewing through the wires under the veh**. Cllr sts she has done some research and found that in these **newer veh the coating over the wires are like soy, which attracts animals**. The first time she had to have the wires replace, an animal had chewed through the wiring harness. This time the animal chewed through the wires in under the veh that make it start. Cllr sts she contacted the dfr with this concern and **they adv the material used to coat the wires may not be actual soy, but a product similar to it that is environmentally friendly**. **Cllr s[t]s she believes that because of the product, the animals are attracted to the wires which causes damage**. Cllr sks to be reimb for the c[]ost of repairing the wires, or sks Toyota to replace the existing wires with wires that are not coated in **soy-like product**. … **Customer's complaint is the product design**. J I **Cust sts because of the type of coating on … the wires (soy type product), it attracts animals**. OUTGOING CUST CALL - spoke to Travis, sts rabbits are chewing wires in veh and have damaged the veh twice. **sts he feels the soy based coating on the wiring is attracting the rabbits**. … | Camry/ 2013 | Wiring harness & wiring in engine bay (CM220324-CM220327) |
| | 1/22/2014 | Cllr sts wants to see if any help avail **re: rodents ate wiring harness and veh started, but could not move veh out of park**. S[t]s that she had multiple warning indicators on dash displayed. **S[t]s harness is made from soy based material & a lot of veh are being attacked by rodents**. Cust sis that estimate is $700 for rpr and veh is at dlr currently. **S[t]s that internet shows that rodents are attracted to the soy based material used in Wiring Harness material**. Cllr sks to see if there is any help from TOY w/rpr … NCR apol & adv cust TOY unable to assist cust w/Wiring Harness rpr. | 4Runner/ 2013 | Wiring harness (RU036405-RU036406) |
| | 11/20/2014 | **Cllr sts her veh was towed and taken to the dlr last week. Sts there is a rat that is chewing up her wires because they are co[at]ed with soy. Sts she has now taken the veh back to the dlr for the same exact issue**. Sts she has set out traps so the rats wont chew her wires. Sts she cannot continue to have this happen. Sts she thought she would be okay and she is in shock today b/c the more she reads about this she is angry. S**ts she is angry b/c this is an ongoing problem**. Sks to be reimbursed for the repairs that she had done replacing the wires totaling $1200. Cust sks to speak with a supervisor in regards to this matter. NCR apol and adv cust there's nothing Toyota can do regarding that issue. … ATS called | 4Runner/ 2013 | Wiring in engine bay (RU036418-RU036423) |

AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT

| | | | | |
|---|---|---|---|---|
| | | cust at Primary #. Sts a rodent chewed wire in veh. Adv no mention of issue and sts there is a mfr wide issue w/concern. ***Adv this is a material concern w/veh on wires. Sts material attracts rodents** and she read online concern that this is a known concern. Feels Toy should change material on wires of her veh*. ATS apol and adv cust concerns are documented. ATS adv cust there is no further asstnc Toy will provide. … 11/18/2014 08:45AM **I am on round 3 (2 in the last 7 days) of repairing chewed electrical wires in my 2013 4Runner**. UNACCEPTABLE. My vehicles are surrounded by and parked over baited traps, bordered by mothballs and diluted cayenne pepper spray. … Seriously shocked when Tawana, Toyota's CSR in Motor Sales, tells me there's nothing Toyota can do about it … **When I asked if Toyota has a tape similar to the one Honda has come up with as a possible solution, she replies no and maybe I could look for some of that tape?** | | |
| 3/30/2015 | | … Executive Office (EO) received a letter from Mr. Eric s **He states his vehicle was damaged by an animal chewing on the wiring harness in the engine compartment**. He towed the vehicle to the dealer on 1/27/15 and was told a Wiring Harness would not be available until 2/20/15. He was shocked at how long it would take to receive the part. He has since been told that the part will not be available until the end of March. He cannot understand how Toyota can take this long to deliver a part. … **Customer states he only had his vehicle three months when the incident occurred and had to wait two months for the new wiring harness to be installed**. … Case has been added to SharePoint. … | 4Runner/ 2015 | Wiring harness (RU036478-RU036485) |
| 7/6/2015 | | … Last month when I needed to use the air conditioning and there was only warm air being emitted out of the vents. The 2013 was taken to Heritage and I was told that it was not a mechanical problem **but rather mice had eaten through the wiring assembly along with some other parts that needed to be replaced**. The cost to repair would be $3,200. … I did some investigation and spoke with someone in the automotive business who has worked for practically all of the auto companies over the years. **He made me aware that at the time of assembly many manufacturers have used food based oil to grease the wires** so they ... ... could be pulled more effectively during the building of the vehicle. … **Would it not be reasonable to believe that … in frigid cold Vermont, hungry mice might be attracted to a warm car that smelled like something potentially edible? The service rep told** | RAV4/ 2013 | Wiring in engine bay (RV079402-RV079407) |

AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT

| | | | |
|---|---|---|---|
| | *me that this issue has happened to others in Vermont.* … Adv cust [that] … Toy is unable to assist with repairs. *Adv cust best recommendation would be to contact insurance company.* … | | |
| 8/14/2015 | … Ve[h] has warning light and took to dlr. D[l]r adv cust wires has been chewed. D[l]r adv was outside of the warr, and that it would cost $1000. … *NCR called the dlr and spoke to George (SM) whom[] adv the wires looks as if a rat or some type of rodent has chewed the wires on the veh. Adv the veh is still new. George states they have no issues if Toy were to provide assist[ance] to the repairs of the veh. NCR J adv that would be considered an outside influence, which it is not covered under warr.* | Prius V/ 2015 | Wiring in engine bay (PR059891-PR059893) |
| 4/6/2016 | … Ms. M s[t]ates on 2/14/16 her 2015 Sienna had the ABS, Skid Control and brake system lights on. … States Al Hendrickson Toyota advised the speed controller had malfunctioned … States they had to postpone their trip, as the dealer advised their vehicle was *not safe to drive.* … States they were then advised it may be the wiring harness. … States they went to Toyota of Cool Springs. *States the dealer identified rodent damage.* States dealer suggested they contact their insurance. Geico approved … repair [of] the wires as opposed to replacing them. This cost them almost $800. States they had a $500 deductible. … *Ms. M describes her concerns with* materials *used by Toyota which could* attract *rodents and seeks reimbursement of $526.* … *Executive Office (EO) contacted and advised … Toyota would not normally reimburse for deductible or for repairs related to rodent damage, however Toyota is willing to reimburse Ms. M for the $526 requested if she is willing to* sign a release. | Sienna/ 2015 | Wiring harness (SN050229-SN050241) |
| 7/11/2016 | … Ncr called dlr and spoke with Angel, Service Advisor. Sts veh was towed in due [to] check engine and traction control lights flashing on the dashboard. *Sts checked engine and found Wiring Harness had been chewed through by rodents.* … Replaced Wiring Harness and charged cust due to outside influence. … *Root Cause: Product-Wiring Harness- Damaged…* | 4Runner/ 2016 | Wiring harness (RU036541-RU036544) |
| 2/20/2017 | *Cllr states been hearing about rodents eating wires due to wires having* soy based wires. Cllr states neighbors have had … concerns with rodents and would like to know what Toyota is doing with this. *Cllr states feels this could be a* safety issue *down the line.* Seeks info on what can she do to prevent from rodents eating wires. NCR apol and adv that cllr's concern would be documented and | Camry/ 2015 | Wiring in engine bay (CM220363-CM330364) |

AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT

| | | | |
|---|---|---|---|
| | filed within Toy as a complaint. *NCR adv that Toy HQ does look for trends on cust complaints and veh issues and may or may not launch CSP's and or LSC's as a result.* … | | |
| 2/28/2017 | … Incoming Letter … Ltr sts: Purchased veh on 4/30/2015 and on 1/23/2016 cust heard a grinding noise and a thunk in the rear end and the dash lit up the ABS and AWD. Sts took to dlr immediately. … Sts later on the 23rd, *dlr called and adv her that rodents had caused damage to the Wiring Harness of the engine.* Sts dlr adv her that repairs would cost $3500. *Sts picked up veh and was adv by tech that Toy wires are notorious for being chewed by rodents but the repair was not covered under warranty.* … | RAV4/ 2015 | Wiring harness (RV079474-RV079476) |

60. Toyota was also aware of the Soy-Wiring Defect and its consequences because its authorized dealerships, with whom it regularly communicates, routinely and consistently received multitudes of requests to repair damage caused by the Soy Wiring Defect, and forwarded this information to Toyota as reflected below:

| Date | Rodent-Inflicted Damage Contained in Dealership Product Reports (Summary) | Model/ Model Year | Component Part Damaged |
|---|---|---|---|
| 3/10/2008 | Harness damage from *rodent*. Rodent chewed the knock sensor wires creating an open circuit. | Tundra/ 2007 | Knock Sensor Harness (TOY016978-TOY016980) |
| 10/8/2009 | Customer states that the check engine light ON. *Rodent damage*: knock sensor wire was *chewed* by a *rodent*. | RAV4/ 2008 | Knock Sensor Harness (TOY016908-TOY016909) |
| 11/24/2009 | Customer complains that the Check Engine Light is "ON" and the engine performance is lacking. *Rodent damage*. Entry to cavity between Main fold and Engine Block. Mice have "*EATEN*" the wire harness. | Camry/ 2009 | Wiring Harness (TOY016732-TOY016733) |
| 12/20/2010 | Customer states air bag light on. *Rodent damage* to headliner and wire harness. | RAV4/ 2010 | Wiring Harness (TOY016910-TOY016912) |
| 3/22/2011 | Customer states "While driving, check engine light came on and steam came out of hood." Cooling system/radiator concerns caused by *rodent damage*: heater hose has ruptured from mice chewing on it. | Prius/ 2010 | HVAC System (TOY016805-TOY016806) |
| 8/30/2011 | Customer stated check engine light on. *Rodent damage* to knock sensor wire bank 2, the wire harness had been chewed in half and a nest had been built under the air pumps as well. *This problem has been seen several times on other vehicles and time* | Tundra/ 2007 | Knock Sensor Harness (TOY016940-TOY016941) |

AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

| | | | |
|---|---|---|---|
| | *after time the only wires that are chewed are the ones that go to the* knock sensors. "**Probable Cause**: *Possibly the coating on the wires to the knock sensors are made from something that attracts the rodents to chew on them.*" | | |
| 2/2/2012 | MIL on. Code P0328 stored. Engine harness damage by rodents. "**Probable Cause:** *Rodents are attracted to the wire sheath.*" | Tundra/ 2011 | Engine Harness (TOY016994-TOY016995) |
| 4/17/2012 | Customer states that the check engine light, VSC light, and Skid Control light are all on and the 4lo light is flashing. ***Rodent damaged*** the sub engine harness for the knock sensors. "**Probable Cause:** *Rodents may be attracted to the … component parts in and around the engine.*" | Tundra/ 2008 | Knock Sensor Harness (TOY016945-TOY016946) |
| 2/6/2013 | Customer states there is a fluid leak under the vehicle and the transmission does not shift or engage properly. ***Rodent damage***: large rodent nest, rodent damage to several wire harnesses, washer tank, oil cap, and front under body splash shield. Total cost in damaged parts from rodent is $4,599.98. | Highlander/ 2009 | Wiring Harness (TOY016798-TOY016800) |
| 5/17/2013 | Customer states vehicle towed to dealership for no start condition. ***Rodent damages*** to wire harness & components E/G area. | Prius/ 2011 | Wiring Harness (TOY016869-TOY016872) |

**C.      Plaintiffs are the intended beneficiaries to the contracts between Toyota and its authorized dealers.**

61.      Even though Plaintiffs and members of the Classes (as defined below) did not purchase or lease the Class Vehicles directly from Toyota, they are third-party beneficiaries to the contracts between Toyota and its authorized dealers from which they purchased or leased their Class Vehicles. Toyota's authorized dealers are themselves agents of Toyota. The authorized dealers, who purchased the Class Vehicles from Toyota, were never intended to be the ultimate purchasers or lessees of the Class Vehicles. The intended ultimate purchasers or lessees of the Class Vehicles are Plaintiffs and the members of the Classes. Clearly, the Toyota dealers would not make any profit if they held onto the Class Vehicles and did not sell or lease the Class Vehicles to Plaintiffs and members of the Classes. In addition, the Toyota dealers passed on the warranties provided by Toyota under the New Car Warranty to the ultimate purchasers or lessees. The Toyota dealers had no rights or remedies under the NVLW provided with the Class Vehicles. The warranties under the NVLW were designed for and intended to benefit the ultimate purchasers and lessees. Indeed, the

warranties in the NVLW did not begin, nor took effect, until the Class Vehicles were delivered to ultimate purchasers or lessees (i.e., Plaintiffs and members of the Classes).

## V.   CLASS ALLEGATIONS

62.    Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring this lawsuit on behalf of themselves and all similarly situated individuals. Plaintiffs seek to represent the following independent, standalone state classes (the "Classes"):

**California Class:**

All California citizens who purchased or leased one or more of the Class Vehicles .

**Georgia Class:**

All Georgia citizens who purchased or leased one or more of the Class Vehicles.

**Indiana Class:**

All Indiana citizens who purchased or leased one or more of the Class Vehicles.

**Nebraska Class:**

All Nebraska citizens who purchased or leased one or more of the Class Vehicles.

**New Jersey Class:**

All New Jersey citizens who purchased or leased one or more of the Class Vehicles.

**Oklahoma Class:**

All Oklahoma citizens who purchased or leased one or more of the Class Vehicles.

**Texas Class:**

All Texas citizens who purchased or leased one or more of the Class Vehicles.

63.    The Classes are defined in terms of objective characteristics and common transactional facts; namely, the purchase or lease of the Class Vehicles. As set forth above, membership in the Classes will be readily ascertainable from Toyota's

and its authorized dealers' purchase or lease records.

64.    Excluded from the Classes are Toyota, its affiliates, subsidiaries, parents, successors, predecessors, any entity in which Toyota or its parents have a controlling interest; Toyota's current and former employees, officers and directors; the district court judge and magistrate judge assigned to this case; any person who properly obtains exclusion from the Classes; any person whose claims have been finally adjudicated on the merits or otherwise released; and the parties' counsel in this litigation. Plaintiffs reserve the right to modify, change, or expand the definition of the Classes based upon discovery and further investigation.

65.    **Numerosity:** Upon information and belief, the Classes are so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Classes are unknown at this time, such information being in the sole possession of Toyota and its authorized dealers, Plaintiffs allege that the members of the Classes number in the thousands, if not hundreds of thousands.

66.    **Existence and Predominance of Common Questions of Fact and Law:** Common questions of law and fact exist as to all members of the Classes. These questions predominate over the questions affecting individual members in the Classes. These common legal and factual questions include, but are not limited to:

a)    Whether the soy-based wiring is a defect that existed at the time the Class Vehicles were purchased or leased by consumers from Toyota's authorized dealers;

b)    Whether the Class Vehicles are fit for the ordinary purpose for which such goods are used, which means the Class Vehicles are in a safe condition and substantially free of defects;

c)    Whether Toyota violated the implied warranty of merchantability of the states alleged herein;

d)    Whether Toyota violated the unlawful prong of California's Unfair Competition Law (UCL) by breaching the implied warranty of

merchantability under California's Song-Beverly Consumer Warranty Act (the Song-Beverly Act);

e) What are the damages owed to members of the Classes who purchased or leased one or more of the Class Vehicles; and

f) Whether members of the Classes are entitled to equitable relief including, but not limited to, restitution or injunctive relief.

67. **Typicality:** Plaintiffs' claims are typical of the claims of the members of the Classes since they were all damaged by the soy-based wiring in the Class Vehicles and as alleged herein. Plaintiffs and members of the Classes have the same claims against Toyota relating to the conduct alleged herein, and the same events giving rise to Plaintiffs' claims for relief are identical to those giving rise to the claims of members of the Classes. Plaintiffs and members of the Classes sustained monetary injuries including, but not limited to, ascertainable losses arising out of Toyota's wrongful conduct as alleged herein. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and absent members of the Classes.

68. **Adequacy:** Plaintiffs are adequate representatives for the Classes because their interests do not conflict with absent members of the Classes. Plaintiffs have also retained counsel competent and highly experienced in complex class litigation, and as they have already shown, counsel intends to prosecute this action vigorously. The interests of the Classes will be fairly and adequately protected by Plaintiffs and their counsel.

69. **Superiority:** A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Classes. As alleged above, the injury suffered by each member ranges from a couple hundred to thousands of dollars. It would be virtually impossible for members of the Classes to effectively redress the wrongs done to them by Toyota and deter wrongful conduct on an individual basis. Even if members of the Classes could afford such individual litigation, the court system could not. Individualized litigation presents a potential for

AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT

inconsistent or contradictory judgments. Individualized litigation also increases the delay and expense to all parties and to the court system. By contrast, the class-action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Given that Toyota has engaged in a common course of conduct as to Plaintiffs and the members of the Classes, the class device is the superior method of efficiently and fairly adjudication this action.

## VI.    CLAIMS FOR RELIEF

### A.    California

**COUNT I**

**Breach of the Implied Warranty of Merchantability in Violation of California's
Song-Beverly Consumer Warranty Act
(Cal. Civ. Code §§ 1791.1 & 1792)
(On Behalf of the California Plaintiffs and the California Class)**

70.    Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

71.    This claim is brought by the California Plaintiffs on behalf of themselves and the California Class under the Song-Beverly Act for breach of the implied warranty of merchantability.

72.    The California Plaintiffs and members of the California Class are "buyers" within the meaning of the Song Beverly Act and parties to the original sale. *See* Cal. Civ. Code § 1791(b).

73.    The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

74.    Toyota is a "distributor" within the meaning of Cal. Civ. Code § 1791(e).

75.    Plaintiffs and members of the California Class bought or leased one or more of the Class Vehicles distributed by Toyota and sold and leased by its authorized dealers.

///

76.     Toyota impliedly warranted to the California Plaintiffs and the members of the California Class that its Class Vehicles are "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) and 1792. Section 1791.1(a) defines "implied warranty of merchantability" or "implied warranty that goods are merchantable" to mean "that the consumer goods meet each of the following: (1) Pass without objection in the trade under the contract description. (2) Are fit for the ordinary purposes for which such goods are used. (3) Are adequately contained, packaged, and labeled. (4) Conform to the promises or affirmations of fact made on the container or label."

77.     Toyota breached the implied warranty of merchantability because it distributed and sold the Class Vehicles to its authorized dealers with the soy-based wiring harnesses. The soy-based wiring attracts rodents and increases the probability that the wiring will be eaten or chewed by rodents, resulting in costly damage to the wiring harnesses and other wire components in the Class Vehicles. The soy-based wiring harnesses have not only increased the cost of owning or leasing the Class Vehicles, but the damaged wiring has resulted in substantial safety hazards including, among other things, the vehicles not starting, the electrical system and other components not working, or the vehicles not being able to change gears. Members of the Classes have expressed safety concerns about the Class Vehicles and do not feel safe driving their own Class Vehicle.

78.     As a result of the soy-based wiring harnesses in the Class Vehicles, the California Plaintiffs and members of the California Class received goods—at the point of sale or lease—that contains a defect which substantially impairs the value of their Class Vehicles, poses a substantial safety hazard, and has caused them to incur out-of-pocket expenses relating to the repair of the damaged wiring.

79.     Pursuant to Cal. Civ. Code §§ 1791.1(d), 1793.2 and 1794, the California Plaintiffs and members of the California Class are entitled to damages and other legal and equitable relief, including, at their election, the purchase price or buyback of their Class Vehicles, or the overpayment, or diminution in value of their

Class Vehicles.

80.     Pursuant to Cal. Civ. Code § 1794, the California Plaintiffs and members of the California Class are also entitled to costs and reasonable attorneys' fees.

## COUNT II
### Violation of the Unlawful Prong of California's Unfair Competition Law
### (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)
### (On Behalf of the California Plaintiffs and the California Class)

81.     Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

82.     This claim is brought by the California Plaintiffs on behalf of themselves and the California Class for violating the unlawful prong of the UCL.

83.     The UCL broadly prohibits acts of "unfair competition," including any "unlawful … business act or practice[.]" Cal. Bus. & Prof. Code § 17200.

84.     A business act or practice is "unlawful" under the UCL if it violates any other law or regulation. As alleged above, Toyota violated the Song-Beverly Act. Toyota has therefore engaged in "unlawful" business acts or practices under the UCL. Through its unlawful business acts and practices, Toyota has improperly obtained money from the California Plaintiffs and the members of the California Class. The California Plaintiffs seek to enjoin further unlawful business acts or practices by Toyota relating to the Soy Wiring Defect and from violating the UCL in the future by continuing to sell the Class Vehicles with the soy-based wiring harnesses. The California Plaintiffs also seek to obtain restitutionary disgorgement of all monies and revenues generated as a result of Toyota's unlawful business acts or practices, all other relief allowed under Cal. Bus. & Prof. Code §§ 17200, *et seq.*, including attorneys' fees and costs.

### B.     Georgia

## COUNT III
### Breach of the Implied Warranty of Merchantability
### (Ga. Code Ann. § 11-2-314)
### (On Behalf of Plaintiff York and the Georgia Class)

AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT

85.     Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

86.     This claim is brought by Plaintiff York on behalf of himself and the Georgia Class.

87.     Toyota is and was at all relevant times a merchant with respect to motor vehicles.

88.     A warranty that the Class Vehicles are in merchantable condition is implied by law.

89.     As alleged previously, Plaintiffs and Class Members are the intended third-party beneficiaries of any implied warranty of merchantability.

90.     The Class Vehicles, at the point of sale or lease, were not merchantable or unfit for the ordinary purpose for which cars are used because the Class Vehicles contained soy-based wiring that made them more attractive to rodents and therefore increased the probability the soy-based wiring would experience rodent damage, thereby rendering the Class Vehicles partially or wholly inoperable. The damaged soy-based wiring also rendered the Class Vehicles unusable, unreliable and unsafe to drive.

91.     As a direct and proximate result of Toyota's breach of the implied warranty of merchantability, Plaintiff York and members of the Georgia Class have been damaged in an amount to be proven at trial.

C.     **Indiana**

**COUNT IV**
**Breach of the Implied Warranty of Merchantability**
**(Ind. Code § 26-1-2-314)**
**(On Behalf of the Indiana Plaintiffs and the Indiana Class)**

92.     Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

93.     This claim is brought by the Indiana Plaintiffs on behalf of themselves and the Indiana Class.

94.     Toyota is and was at all relevant times a merchant with respect to motor

AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT

1  vehicles.

2      95.   A warranty that the Class Vehicles are in merchantable condition is

3  implied by law.

4      96.   As alleged previously, Plaintiffs and Class Members are the intended

5  third-party beneficiaries of any implied warranty of merchantability.

6      97.   The Class Vehicles, at the point of sale or lease, were not merchantable

7  or unfit for the ordinary purpose for which cars are used because the Class Vehicles

8  contained soy-based wiring that made them more attractive to rodents and therefore

9  increased the probability the soy-based wiring would experience rodent damage,

10 thereby rendering the Class Vehicles partially or wholly inoperable. The damaged soy-

11 based wiring also rendered the Class Vehicles unusable, unreliable and unsafe to drive.

12     98.   As a direct and proximate result of Toyota's breach of the implied

13 warranty of merchantability, the Indiana Plaintiffs and members of the Indiana Class

14 have been damaged in an amount to be proven at trial.

15     **D.   Nebraska**

16                    <u>**COUNT V**</u>
17        **Breach of the Implied Warranty of Merchantability**
             **(Neb. Rev. Stat. § 2-314)**
18       **(On Behalf of Plaintiff Porter and the Nebraska Class)**

19     99.   Plaintiffs repeat and reallege the allegations above as if fully set forth

20 herein.

21     100.  This claim is brought by Plaintiff Porter on behalf of herself and the

22 Nebraska Class.

23     101.  Toyota is and was at all relevant times a merchant with respect to motor

24 vehicles.

25     102.  A warranty that the Class Vehicles are in merchantable condition is

26 implied by law.

27     103.  As alleged previously, Plaintiffs and Class Members are the intended

28 third-party beneficiaries of any implied warranty of merchantability.

AMENDED CONSOLIDATED CLASS
                                          ACTION COMPLAINT

104.   The Class Vehicles, at the point of sale or lease, were not merchantable or unfit for the ordinary purpose for which cars are used because the Class Vehicles contained soy-based wiring that made them more attractive to rodents and therefore increased the probability the soy-based wiring would experience rodent damage, thereby rendering the Class Vehicles partially or wholly inoperable. The damaged soy-based wiring also rendered the Class Vehicles unusable, unreliable and unsafe to drive.

105.   As a direct and proximate result of Toyota's breach of the implied warranty of merchantability, Plaintiff Porter and members of the Nebraska Class have been damaged in an amount to be proven at trial.

**E.     New Jersey**

**COUNT VI**
**Breach of the Implied Warranty of Merchantability**
**(N.J.S.A. § 12A:2-314)**
**(On Behalf of Plaintiff Donoghue and the New Jersey Class)**

106.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

107.   This claim is brought by Plaintiff Donoghue on behalf of himself and the New Jersey Class.

108.   Toyota is and was at all relevant times a merchant with respect to motor vehicles.

109.   A warranty that the Class Vehicles are in merchantable condition is implied by law.

110.   As alleged previously, Plaintiffs and Class Members are the intended third-party beneficiaries of any implied warranty of merchantability.

111.   The Class Vehicles, at the point of sale or lease, were not merchantable or unfit for the ordinary purpose for which cars are used because the Class Vehicles contained soy-based wiring that made them more attractive to rodents and therefore increased the probability the soy-based wiring would experience rodent damage, thereby rendering the Class Vehicles partially or wholly inoperable. The damaged soy-

AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT

1    based wiring also rendered the Class Vehicles unusable, unreliable and unsafe to drive.

2    112.   As a direct and proximate result of Toyota's breach of the implied

3    warranty of merchantability, Plaintiff Donoghue and members of the New Jersey

4    Class have been damaged in an amount to be proven at trial.

5    **F.    Oklahoma**

6                              **COUNT VII**
7              **Breach of the Implied Warranty of Merchantability**
                        **(Okla. Stat. tit. 12A, § 2-314)**
8       **(On Behalf of Plaintiff Cochrane and the Oklahoma Class)**

9    113.   Plaintiffs repeat and reallege the allegations above as if fully set forth

10   herein.

11   114.   This claim is brought by Plaintiff Cochrane on behalf of herself and the

12   Oklahoma Class.

13   115.   Toyota is and was at all relevant times a merchant with respect to motor

14   vehicles.

15   116.   A warranty that the Class Vehicles are in merchantable condition is

16   implied by law.

17   117.   As alleged previously, Plaintiffs and Class Members are the intended

18   third-party beneficiaries of any implied warranty of merchantability.

19   118.   The Class Vehicles, at the point of sale or lease, were not merchantable

20   or unfit for the ordinary purpose for which cars are used because the Class Vehicles

21   contained soy-based wiring that made them more attractive to rodents and therefore

22   increased the probability the soy-based wiring would experience rodent damage,

23   thereby rendering the Class Vehicles partially or wholly inoperable. The damaged soy-

24   based wiring also rendered the Class Vehicles unusable, unreliable and unsafe to drive.

25   119.   As a direct and proximate result of Toyota's breach of the implied

26   warranty of merchantability, Plaintiff Cochrane and members of the Oklahoma Class

27   have been damaged in an amount to be proven at trial.

28   ///

**G.     Texas**

## COUNT VIII
### Breach of the Implied Warranty of Merchantability
### (Tex. Bus. & Com. Code § 2.314)
### (On Behalf of the Texas Plaintiff and the Texas Class)

120.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

121.   This claim is brought by the Texas Plaintiff on behalf of herself and the Texas Class.

122.   Toyota is and was at all relevant times a merchant with respect to motor vehicles.

123.   A warranty that the Class Vehicles are in merchantable condition is implied by law.

124.   As alleged previously, Plaintiffs and Class Members are the intended third-party beneficiaries of any implied warranty of merchantability.

125.   The Class Vehicles, at the point of sale or lease, were not merchantable or unfit for the ordinary purpose for which cars are used because the Class Vehicles contained soy-based wiring that made them more attractive to rodents and therefore increased the probability the soy-based wiring would experience rodent damage, thereby rendering the Class Vehicles partially or wholly inoperable. The damaged soy-based wiring also rendered the Class Vehicles unusable, unreliable and unsafe to drive.

126.   As a direct and proximate result of Toyota's breach of the implied warranty of merchantability, the Texas Plaintiff and members of the Texas Class have been damaged in an amount to be proven at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Classes, respectfully request the Court to:

1)     Certify the Classes as defined herein under Rule 23, appoint Plaintiffs

AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT

1  |  as the class representatives for their respective Classes, and appoint their
2  |  counsel as Class Counsel;

3  2)  Award all actual, general, special, incidental, statutory, punitive and
4  consequential damages to which Plaintiffs and the members of the
5  Classes are entitled;

6  3)  Award pre-judgment and post-judgment interest on such monetary
7  relief;

8  4)  Grant appropriate injunctive and/or declaratory relief including, without
9  limitation, an order requiring Toyota to repair, recall, and/or replace the
10  soy-based wiring harnesses in the Class Vehicles and to extend the
11  applicable warranties to a reasonable period of time, or, at a minimum,
12  to provide Plaintiffs and members of the Classes with appropriate notice
13  regarding the existence of the soy-based wiring harnesses and the Soy
14  Wiring Defect;

15  5)  Award Plaintiffs and members of the Classes their reasonable costs and
16  expenses incurred in this action, including attorneys' fees and expert
17  fees; and

18  6)  Award such other and further relief as the Court may deem just and
19  proper.

20  **DEMAND FOR JURY TRIAL**

21  Plaintiffs respectfully demand a jury trial for all claims so triable.

22  Dated: January 22, 2021                    Respectfully submitted,
23                                              **KABATECK BROWN KELLNER LLP**

24                                              By: */s/ Brian S. Kabateck*
25                                              Brian S. Kabateck
                                                Anastasia K. Mazzella
26                                              633 West Fifth St., Suite 3200
                                                Los Angeles, CA 90071
27                                              Telephone: (213) 217-5000
                                                Fax: (213) 217-5010
28                                              Email: bsk@kbklawyers.com
                                                Email: am@kbklawyers.com

AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT

1

2

3

4

5

    Brian D. Chase
    Jerusalem F. Beligan
    **BISNAR | CHASE LLP**
    1301 Dove Street, Suite 120
    Newport Beach, CA 92626
    Telephone: (949) 752-2999
    Fax: (949) 752-2777
    Email: bchase@bisnarchase.com
    Email: jbeligan@bisnarchase.com

6

7

8

9

10

11

Benjamin F. Johns (*pro hac vice*)
Andrew W. Ferich  (*pro hac vice*)
**Chimicles Schwartz Kriner
& Donaldson-Smith LLP**
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Fax: (610) 649-3633
Email: BFJ@chimicles.com
Email: AWF@chimicles.com

    Jonathan A. Michaels
    Thomas S. Van
    Audrey L. Beck
    **MLG, APLC**
    600 Anton Blvd., Suite 1240
    Costa Mesa , CA 92626
    Telephone: (949) 581-6900
    Fax: (949) 581-6908
    Email: jmichaels@mlgaplc.com

12

13

14

Scott C. Harris (*pro hac vice*)
**WHITFIELD BRYSON LLP**
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Fax: (919) 600-5035
Email: scott@whitfieldbryson.com

    Robert B. Brown III
    **PENNEKAMP LAW, PA**
    2811 SW 3rd Avenue
    Miami, FL 33129
    Telephone: (305) 709-1749
    Email: bob@pennekamplaw.com

15

*Counsel for Plaintiffs and the Putative Classes*

16

17

18

19

20

21

22

23

24

25

26

27

28

AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT